# Exhibit A
# Part 1

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

---

ARGONAUT INSURANCE COMPANY )
                             )
      Petitioner,            )
                             )
vs.                            )     Index No.: 602016/2007
                             )
GLOBAL REINSURANCE       )
CORPORATION – U.S. BRANCH   )     **ORDER TO SHOW CAUSE**
                             )
      Respondent          )

---

Upon the reading and filing of the annexed Petition to Confirm the Arbitral

Award and the exhibits attached thereto, the supporting affidavit of Christopher

Hollender dated May 16, 2007 and exhibits attached thereto, the affirmation of

Thomas E. Brennan dated June 18, 2007, the Panel Confidentiality Order dated

March 29, 2006, the affidavit of Christopher Hollendar dated June 15, 2007, the

Memorandum of Law in Support of Motion to Stay Arbitration or for Alternative

Relief dated June 18, 2007 and all other pleadings and prior proceedings herein,

it is hereby

ORDERED that the Respondent Global Reinsurance Corporation – U.S.

Branch show cause before this Court at IAS Part ___, Room ____ thereof, at the

Courthouse located at 60 Centre Street, New York, New York, on the 2ⁿᵈ day of

July, 2007 at 1:00 p.m., or as soon thereafter as counsel may be heard, why

an Order should not be entered pursuant to § 7510 of the Civil Practice Law and

Rules confirming the arbitration award dated January 10, 2007 and granting such other relief the court deems just and proper, and further

ORDERED that the Respondent Global Reinsurance Corporation – U.S. Branch show cause before this Court at IAS Part ___, Room 146 thereof, at the Courthouse located at 60 Centre Street, New York, New York, on the 19th day of June, 2007 at 1:00 p.m., or as soon thereafter as counsel may be heard, why an Order should not be entered pursuant to Rule 216.1 of the Uniform Rules sealing all pleadings and papers filed or to be filed with the Court in the instant proceeding and restricting access to the Court file to the parties, counsel and court personnel and granting such other and further relief as the Court may deem just and proper; and it is further

ORDERED that the County Clerk is hereby directed to restrict all pleadings and papers filed or to be filed with the Court in the instant action and to restrict access to the Court file to the parties, counsel and court personnel pending hearing on the motion for a permanent sealing order; and it is further

ORDERED that the Respondent Global Reinsurance Corporation – U.S. Branch show cause before this Court at IAS Part ___, Room ____ thereof, at the Courthouse located at 60 Centre Street, New York, New York, on the 7th day of July, 2007 at 1:00 p.m., or as soon thereafter as counsel may be heard, why an Order should not be entered pursuant to § 7503 (b) of the Civil Practice Law and Rules staying the pending arbitration between the parties and/or granting alternative relief; and it is further

ORDERED that, sufficient reason appearing therefore, let service of a copy of this Order, together with the papers upon which it is granted, upon the Respondent on or before the 16th day of June, 2007 shall be deemed good and sufficient service.

ENTER

_____

J.S.C.

1002331_1 DOC

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

---------------------------------------------

ARGONAUT INSURANCE COMPANY )
                         )
     Petitioner,           )
                         )
vs.                     )    Index No.: 602016/2007
                         )
GLOBAL REINSURANCE     )
CORPORATION – U.S. BRANCH  )
                         )
     Respondent        )

---------------------------------------------

## AFFIRMATION OF THOMAS E. BRENNAN

       Thomas E. Brennan, Esq., an attorney duly admitted to practice before this Court, hereby affirms the following to be true under penalty of perjury:

1.     I am an associate at Halloran & Sage LLP, counsel for Petitioner Argonaut Insurance Company and, as such, I am familiar with the facts and circumstances of this special proceeding.

2.     I submit this Affirmation in support of Argonaut's Application, brought on by Order to Show Cause, for the issuance of an Order pursuant to Rule 216.1 of the Uniform Rules sealing the file in the instant proceeding and restricting access

to all pleadings and papers filed and to be filed in this proceeding to the parties, their counsel and Court personnel.

3.      This is a special proceeding pursuant to C.P.L.R. § 7510 to confirm an arbitration award.  A copy of the Petition and supporting affidavit is on file with the Court.

4.      In the arbitration proceeding, the arbitration panel issued a Confidentiality Order binding the parties to its terms.  See Hollender Affidavit.  The Confidentiality Order is annexed hereto as Exhibit A.

5.      The Confidentiality Order provides that disclosures of "Arbitration Information" may be made "in connection with Court proceedings."  The Confidentiality Order also states that "the parties agree, subject to Court approval, that all submissions of Arbitration Information to a Court shall be sealed."  Consistent with the terms of Confidentiality Order, Argonaut has brought a motion by Order to Show Cause seeking a sealing order.  Argonaut recognizes, as does the panel's Confidentiality Order, that whether to seal this matter is at the Court's discretion.

WHEREFORE, I respectfully request that the Court grant Argonaut's application and direct the County Clerk to seal the file in the instant proceeding, that all pleadings and papers filed and to be filed remain under seal and that access to the file be restricted to the parties, their counsel and court personnel and that the Court grant such other and further relief as the Court deems just and proper.

Dated at Westport, Connecticut, June 18, 2007

Thomas E. Brennan

1002548

Phone (203) 227-2855

**Bailey, Rebecca**

| | |
|---|---|
| **From:** | NANANDED@aol.com |
| **Sent:** | Wednesday, March 29, 2006 4:47 PM |
| **To:** | Hajost, Theresa W.; Jleonard@budd-larner.com; Vpallotto@budd-larner.com |
| **Cc:** | abrotter@socal.rr.com; deputy@iicil.org |
| **Subject:** | (no subject) |

In the Matter of the Arbitration Between

Global Reinsurance Corporation - U.S. Branch,

                            Petitioner,

     – and –

Argonaut Insurance Company,

                            Respondent.

The Panel, having considered the submissions and arguments of Counsel hereby adopts the following Order:

## CONFIDENTIALITY ORDER

1. The parties bound by this Order are:

    a. Global Reinsurance Corporation - U.S. Branch ("Global") and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

    b. Argonaut Insurance Company ("Argonaut") and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

2. Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, the Panel orders that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Order will remain in effect even after conclusion of the arbitration proceedings.

3. Disclosure of Arbitration Information may be made: (a) to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings and/or in connection with other arbitrations between the parties; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. Any disclosures pursuant to subparagraphs (a) or (c) shall be accompanied by a copy of this Confidentiality Order and an instruction to any recipient to maintain the confidentiality of all Arbitration Information. In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed. If any party is requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other as soon as possible after the subpoena, discovery request or court order is received. In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4. For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

    a. the arbitration panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

    b . counsel for a party or employees of counsel's law firm who are assisting counsel;

    c. employees and agents of the parties for purposes consistent with this order;

    d. any party's deposition or trial witness;

    e. any person retained by counsel for a party to assist in this arbitration; provided, however that such person shall agree to be bound by the terms of this Confidentiality Order as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A; or

f. any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Order as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A.

5. If a party is requested or required to disclose Arbitration Information, subject to applicable legal restrictions, that Party will: 1) notify the other party in writing as soon as possible after the subpoena, request or court order is received, to permit the other party to seek legal protection against any such disclosure; and 2) tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand.  Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or court order to the extent required by law.  If requested by any other party, the obligated party will cooperate (at the expense of the requesting other party) in the defense of a demand.

6.       The Parties recognize that serious Injury could result to any Party and its business if the other Party breaches its obligation under this Order. Therefore, each Party will be entitled to seek a restraining order, injunction or other equitable relief if another Party breaches its obligations under this Order in addition to any other remedies and damages that would be available at law or equity.


Members of the Panel:


Arbitrator:       Arthur Brotter


Arbitrator:       Richard L. White


Umpire:          Edmond F. Rondepierre
-
-
-
Dated: 29 March 2006

EXHIBIT A

In the Matter of the Arbitration Between

Global Reinsurance Corporation - U.S. Branch,

Petitioner,

- and -

Argonaut Insurance Company,

Respondent.

**AFFIDAVIT**

_____, being duly sworn, deposes and says:

1. I live at _____
_____

2. I am employed as (position) by (name and address of employer), _____
_____

3. I am aware that the Panel in the Matter of the Arbitration Between Global Reinsurance Corporation — U.S. Branch and Argonaut Insurance Company has entered a Confidentiality Order dated _____
I have received and read a copy of that Confidentiality Order.

4. I agree to review or otherwise use the material produced in the instant arbitration by _____
_____
only under supervision of a party's counsel and only in connection with arbitration(s) between these parties.

5. I agree that I am bound by the terms of the Confidentiality Order as though I were a party to the arbitration, and I will not disclose or discuss material produced by _____
_____
or _____
to or with any person other than those permitted access to such material under the Confidentiality Order.

(Signature) _____

Sworn to before me this _____ day of _____, 20___.

_____
Notary Public (SEAL)

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

 

_____
ARGONAUT INSURANCE COMPANY )
                                 )
      Petitioner,             )        Index No.: 602016/2007
                                 )
  - against -             )        **PETITION TO CONFRIM**
                                 )          **ARBITAL AWARD**
GLOBAL REINSURANCE       )
CORPORATION – U.S. BRANCH   )
                                 )
      Respondent         )
_____ )

        Petitioner Argonaut Insurance Company ("Argonaut"), by and

through its attorneys, Halloran & Sage LLP, alleges as follows:

<u>NATURE OF THE PROCEEDING</u>

1.     This is a petition pursuant to N.Y. C.P.L.R. 7510 to confirm the final

       award (the "Final Award") issued by an arbitration panel (the

       "Panel") on January 10, 2007 in a reinsurance arbitration captioned

       <u>Global Reinsurance Corporation – U.S Branch v. Argonaut</u>

       <u>Insurance Company</u> (the "Arbitration"). A true and correct copy of

       the Panel's Final Award is annexed hereto as Exhibit A.

2.     This action arises under the N.Y. C.P.L.R. article 75, as the

       agreements at issue are (i) commercial agreements between

       Argonaut Insurance Company ("Argonaut") and Global Reinsurance

Corporation – US Branch ("Global"), and (ii) provide for arbitration in New York, where the arbitration was held.

<u>PARTIES, JURISDICTION AND VENUE</u>

3.  Global is the United States branch office of a German entity, with its principal place of business at 1345 Avenue of the Americas, New York, New York.

4.  Argonaut Insurance Company is a corporation incorporated under the laws of the State of California, having its principal place of business at 250 Middlefield Road, Menlo Park, California.

5.  This Court has jurisdiction over this action pursuant to N.Y. C.P.L.R. 301 because Global's principal place of business is in New York County. The Court also has jurisdiction through N.Y. C.P.L.R. 7501 as the Arbitration hearing took place in Manhattan.

6.  Venue is proper in New York County under N.Y. C.P.L.R. 503(c) because Global's principal place of business is located in New York County and the Arbitration hearing took place in Manhattan.

<u>FACTUAL BACKGROUND</u>

7.  Argonaut and Global (or their predecessors in interest) entered into two quota share retrocessional reinsurance contracts numbered QS31/4158, effective July 26, 1963 through December 31, 1965, and QS73/6103, effective July 1, 1973 through December 31, 1975. (the "Retrocessional Agreements.") Copies of the contracts are annexed hereto as Exhibits B and C respectively.

8.    Contract number QS31/4158 (Exhibit B, Article IX) contains an

arbitration clause that provides:

1) As a precedent to any right of action hereunder if disputes arise out of this Agreement, as well as differences, concerning the validity of this Agreement, the dispute shall be referred to two arbitrators, one to be chosen by each party.  In the event of either party failing to appoint its arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate both arbitrators.

2) Prior to entering into arbitration, the two arbitrators shall appoint an umpire within thirty (30) days of their nomination.  In the event of the two arbitrators failing to agree upon the appointment of an umpire, within the prescribed thirty (30) days, each of them shall then name three, of whom the other shall decline two and the decision shall be made by drawing lots. The arbitrators, as well as the umpire, must be active or retired, disinterested executive officers of Insurance or Reinsurance Companies.

3) The arbitrator and/or the umpire shall consider this contract as an honorable agreement rather than merely as a legal obligation and they are relieved of all judicial formalities and may abstain from following the strict rules of law and shall make their decision according to the practice of reinsurance business only. Each party shall submit its case to the arbitrators within thirty (30) days after their appointment.  The arbitrators shall make their decision within four (4) months after the appointment of the umpire.  The decision of the arbitrators shall be final and binding on both parties and not subject to appeal.

4) Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other the expense of the arbitration.  Arbitration shall take place in New York, N.Y., unless some other location is mutually agreed upon.

9.    Contract number QS73/6103 (Exhibit C, Article XIII) contains an

arbitration clause that provides:

1) As a condition precedent to any right of action hereunder, in the event of any dispute or difference of opinion hereafter arising with respect to this Contract, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration. One Arbiter shall be chosen by the company, the other by the Retrocessionaire, and an Umpire shall be chosen by the two Arbiters before they enter upon arbitration, all of

whom shall be active or retired disinterested executive officers of insurance or reinsurance companies. In the event that either party should fail to choose an Arbiter within 30 days following a written request by the other party to do so, the requesting party may chose between two Arbiters who shall in turn choose an Umpire before entering upon arbitration. If the two Arbiters fail to agree upon the selection of an Umpire within 30 days following their appointment, each Arbiter shall name three nominees, of whom the other shall decline two, and the decision shall be made by drawing lots.

2) Each party shall present its case to the Arbiters within 30 says following the date of appointment of the Umpire. The Arbiters shall consider this Contract as an honorable engagement rather than merely as a legal obligation and they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of the Arbiters shall be final and binding on both parties but failing to agree, they shall call in the Umpire and the decision of the majority shall be final and binding upon both parties.

3) If more than one retrocessionaires is involved in the same dispute, all such retrocessionaires shall constitute and act as one party for the purposes of the Article and communications shall be made by the Company to each of the retrocessionaires constituting one party, provided, however, that nothing herein shall impair the rights of such retrocessionaires to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the retrocessionaires participating under the terms of this Contract from several to joint.

4) Each party shall bear the expense of its own Arbiter, and shall jointly and equally bear with the other the expense of the Umpire and of the arbitration. In the event that the two Arbiters are chosen by one party, as above provided, the expense of the Arbiters, the Umpire and the arbitration shall be equally divided between the two parties.

5) Any arbitration proceedings shall take place at New York, New York.

10.    The governing arbitration clauses both provide that the arbitrators' award shall be final and binding upon the parties.

11.    By demand dated December 30, 2004, and amended demand dated January 10, 2005 Global initiated arbitration seeking recovery of amounts that Global ceded Argonaut under the Retrocessional

Agreements for payments that Global had made to members of the American International Group ("AIG") and the Home Insurance Company ("Home") in commutation of its contracts with those entities. Copies of these demands are annexed hereto as Exhibit D.

12. The Panel in the Arbitration was agreed to be duly constituted by stipulation of the parties.

13. During the arbitration proceeding, the parties took discovery and filed pre-hearing briefs with the Panel.

14. A four and a half day hearing was held in New York, New York, on December 11 – 15, 2006. During the hearing, both parties submitted argument, exhibits as well as expert and fact witness testimony to the Panel.

15. After deliberation, on January 10, 2007, the umpire on behalf of a majority of the Panel issued a written award. (Exhibit A Hereto.)

16. The Panel ruled:

Having considered the submissions and arguments of Counsel, the testimony of witnesses at the hearing and the record in this arbitration a majority of the Panel rules as follows:

The commutation payments that Gerling seeks to cede to Argonaut are not claims, losses nor settlements within the terms or the meaning of the retrocessional agreements. The agreements make no provision for claims submitted in bulk or blanket form, nor for payments on a non risk – specific basis or an estimated basis. The agreements provide no authority for the unilateral acceleration of the retrocessionaires obligations. Argonaut is not required to pay the amounts sought by Global in this arbitration.

5

This order does not alter Argonaut's obligations under the retrocessional agreements. Argonaut may be obligated to pay claims submitted in the form required by those agreements. (Id.)

17.    On or about February 12, 2007, Global submitted a motion to

"clarify" the Panel's January 10, 2007 Award. The majority of the

Panel responded on March 1, 2007, stating that no mistake or

ambiguity existed in the award. A copy of the Panel's response is

annexed hereto as Exhibit E.

18.    Argonaut is entitled to confirmation of the Final Award and entry of

judgment under N.Y. C.P.L.R. 7510 and 7514.

19.    More than ninety (90) days has passed since the Panel issued its

Final Award and neither party has filed a motion to vacate or modify

the award.

20.    No grounds exist under N.Y. C.P.L.R. 7511 for refusing to

recognize and confirm the Final Award.


WHEREFORE, in accordance with the terms of the Final Award

and N.Y. C.P.L.R. 7510 and 7514, Argonaut requests that this

Court (1) enter judgment in favor of Argonaut and against Global

upon each ruling and the terms contained in the Final Award; and

(2) such other and further relief as the Court may deem just and

proper.

Respectfully submitted,

Dan E. LaBelle  DL2779
HALLORAN & SAGE LLP
315 Post Road West
Westport, CT  06880
(T)    (203) 227-2855
(F)    (203) 227-6992
Counsel for Defendant Argonaut
      Insurance Company

*Of counsel:*
Theresa W. Hajost
Daniel A. Blumenthal
HALLORAN & SAGE LLP
1730 Pennsylvania Avenue, NW
Suite 800
Washington, DC  20006
(T)    (202) 496-9270
(F)    (202) 496-9279

---

In the Matter of the Arbitration Between

Global Reinsurance Corporation
    - U.S. Branch,

                Petitioner,

   - and -

Argonaut Insurance Company,

                Respondent.

Arthur Brotter

Richard L. White

Edmond F. Rondepierre
             Umpire

---

## AWARD

Having considered the submissions and arguments of Counsel, the testimony of witnesses at the hearing and the record in this arbitration a majority of the Panel rules as follows:

The commutation payments that Gerling seeks to cede to Argonaut are not claims, losses nor settlements within the terms or the meaning of the retrocessional agreements. The agreements make no provision for claims submitted in bulk or blanket form, nor for payments on a non risk – specific basis or an estimated basis. The agreements provide no authority for the unilateral acceleration of the retrocessionaires obligations. Argonaut is not required to pay the amounts sought by Global in this arbitration.

This order does not alter Argonaut's obligations under the retrocessional agreements. Argonaut may be obligated to pay claims submitted in the form required by those agreements.

Arthur Brotter

Edmond F. Rondepierre
Umpire

10 January 2007

## DISSENT OF ARBITRATOR RICHARD L. WHITE

Re: Quota Share Retrocession Agreement for Facultative Casualty Business #4158/QS31 ("Quota Share") and First Surplus Facultative Casualty Retrocession Contract #6103/QS73 ("Surplus") [collectively the "Retrocessional Agreements"]

With this Award the majority affirms that the commutation payments which Global seeks to cede to Argonaut are not settlements within the terms or the meaning of the Retrocessional Agreements; I disagree. In my view, the majority's ruling is incorrect because it does not comport with (1) the nature, i.e., the characteristics, of quota share reinsurance generally, (2) the language of the Retrocessional Agreements specifically, in particular the Quota Share agreement, and (3) reinsurance custom and practice.

Quota share reinsurance is proportional reinsurance in which the reinsurer assumes an agreed percentage of each risk insured. Because these parties are reinsurers, the agreed percentage would apply to each facultative risk reinsured. Absent some provision in the contract to the contrary, the loss experience of the reinsurer and retrocessionaire is intended to be proportionally identical.

So congruent is quota share reinsurance that such contracts need only have an accounts and reporting provision to effect payment between contracting parties. In contrast, these Retrocessional Agreements include a Loss Settlements provision which underscores the parties' intention that this reinsurance protection will be something more than the standard "follow the liability of the reinsured" coverage.

Indeed, the coverage augmentation of these loss settlement clauses provides: that the reinsurer (here, the retrocedent, Global), "...**alone** will settle all claims and such settlements shall **under all circumstances** be binding on the Retrocessionaires in accordance with the terms of this Agreement." (Quota Share Article VII, 1.) and "**All** payment of claims made by the Company [Global] will be binding upon the Retrocessionaires." (Surplus Article VIII, B.) [Emphasis added]

Now it is true that unlike the typical commercial contract, reinsurance contract provisions often rely for their understanding on the trade usage and practice of the reinsurance industry. Such custom and practice, however, may amplify contract provisions but it may not contradict those provisions. Consider the Retrocessional Agreements in this dispute. Argonaut presented evidence at the Hearing (albeit disputed by Global) that notice of the commutations was not provided, or if arguably provided, such notice was insufficient. This lack (or insufficiency) and the related retrocessionaire concurrence, it was argued, was fatal to Global's ability to cede the commutation payments.

Evidence was provided that at least twenty-two retrocessionaires reinsured Global on the affected contracts. The majority's ruling doesn't indicate whether a substantial concurrence, say, 25% would have been sufficient to permit billing or if a majority or indeed a supermajority concurrence would have done the job. A fair reading of our Award is that unanimity would be required for Global to successfully bill the commutation payments. This principle of collegiality, as it were, is nowhere in the Retrocessional Agreements. Moreover, there is nothing in the record that remotely suggested custom and practice embraced such unanimity. Indeed, independent of the record in this dispute, it is difficult to imagine a situation where trade usage for a ceded commutation transaction, would require the unanimity of retrocessionaire concurrence and the inevitable Babel-like communication of so many voices.

The commutation payments in this arbitration, paid in connection with an arms length transaction between Global and certain ceding companies, relieved Global and its retrocessionaires of all liability pursuant to the subject facultative certificates. Despite this extraordinary relief and the explicit loss settlement provisions of the Retrocessional Agreements, our Award sanctions Argonaut's refusal to pay its proportion of the commutation payments. Notwithstanding the high personal regard I have for my co-panelists, I respectfully dissent.

Richard L. White, Arbitrator

Dated: January 10, 2007

# GERLING GLOBAL REINSURANCE CORPORATION

U. S. BRANCH

### 717 FIFTH AVENUE

### NEW YORK 22, NEW YORK

TELEPHONE: PLAZA 2-8900

# REINSURANCE AGREEMENT

WITH

## GUARANTY REINSURANCE CO.
### Chicago, Illinois

COVERING Quota Share Retrocessions Agreement for
Facultative Casualty Business

EFFECTIVE July 26, 1963

AGREEMENT NO. 4158

TR 00145



# GERLING GLOBAL REINSURANCE CORPORATION
## U. S. BRANCH
## NEW YORK, N. Y.

## QUOTA SHARE RETROCESSIONS AGREEMENT FOR
## FACULTATIVE CASUALTY BUSINESS

### INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH (hereinafter called the "Reinsurer"), of the one part, and

GUARANTY REINSURANCE COMPANY, CHICAGO, ILLINOIS

(hereinafter called the "SUBSCRIBING RETROCESSIONAIRE"), of the other part, that the SUBSCRIBING RETROCESSIONAIRE shall have a 10 % share in the interests and liabilities of the "RETROCESSIONAIRES" as set forth in the document attached hereto, entitled "QUOTA SHARE RETROCESSION AGREEMENT FOR FACULTATIVE CASUALTY BUSINESS." The share of the SUBSCRIBING RETROCESSIONAIRE shall be separate and apart from the share of the other RETROCESSIONAIRES and shall not be joint with those of the other RETROCESSIONAIRES and the SUBSCRIBING RETROCES-SIONAIRE shall in no event participate in the interests and liabilities of the other RETROCESSIONAIRES.

This Agreement shall become effective July 26, 1963 and is cancellable in the manner set forth in ARTICLE XII of the attached Retrocession Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement in duplicate, as of the dates under-mentioned.

At New York, N. Y., this 15th          day of August,                    19 63
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
by
GERLING GLOBAL OFFICES INC. - U. S. MANAGER

_____

Stig Winberg, President

and at                              this          day of                    19

_____

TR 00146

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Reinsurance Clause | Article I | Page 1 |
| Exclusions | Article II | Page 4 |
| General Provisions | Article III | Page 5 |
| Excess of Loss for Joint Account | Article IV | Page 6 |
| Premium and Commissions | Article V | Page 6 |
| Accounts and Statistics | Article VI | Page 8 |
| Loss Settlements | Article VII | Page 8 |
| Access to Records | Article VIII | Page 9 |
| Arbitration | Article IX | Page 9 |
| Insolvency | Article X | Page 10 |
| Alterations | Article XI | Page 11 |
| Term and Cancellation | Article XII | Page 11 |

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

## QUOTA SHARE RETROCESSION AGREEMENT
## FOR FACULTATIVE CASUALTY BUSINESS

between

### GERLING GLOBAL REINSURANCE CORPORATION
### U. S. BRANCH, New York, N. Y.
(hereinafter called the "Reinsurer")

and

the Companies specified in the respective Interests and Liabilities Agreement to which this Agreement is attached (hereinafter called the "Retrocessionaires").

### ARTICLE I

1. The Reinsurer undertakes to retrocede and the Retrocessionaire agrees to accept under this Agreement the quota share percentage participation set forth in the Interests and Liabilities Agreement of limits totalling up to Two Million Dollars ($2,000,000) in respect of any one risk covered under policies issued by the Reinsurer coming within the scope of this Agreement. The Reinsurer shall retain net for his own account the remaining twenty per cent (20%). The Reinsurer undertakes to arrange excess of loss protection for account of its Retrocessionaires and itself in respect of losses exceeding $500,000 for the following $1,500,000 any one event.

2. The classes of business covered by this Agreement shall be those normally written in the Reinsurer's Facultative Casualty Department as hereinafter defined and subject to specified exclusions. The reinsurance policies underwritten by the Reinsurer shall be reinsurance of other companies operating in the United States of America, its territories and possessions, retrocessions shall follow the territorial provisions of the policies retroceded.

3. The Reinsurer will issue reinsurance policies covering excess limits in respect of:

   a. Bodily Injury and/or Personal Injury Liability and Property Damage Liability, and

-2-

b.   Employers' Liability and/or Workmen's Compensation
     Insurance, and

c.   Liabilities assumed by the Reinsurer under so-called
     "Umbrella" policies,

of every description with various limits of liability, but no policy
shall be ceded under this Agreement where the underlying amounts
are less than:

| | | |
|---|---|---|
| $10,000 any one person | } | In respect of Liability |
| $20,000 any one accident | | for Bodily Injury |
| or occurrence | } | |
| | | |
| $ 5,000 any one accident | } | In respect of Liability |
| or occurrence | } | for Property Damage |

<u>or</u>

$25,000 combined single limit over both Liability for Bodily
        Injury and Liability for Property Damage.

Where Employers' Liability and/or Workmen's Compensation is
written separately no risk shall be ceded under this Agreement where
the underlying limits in respect of Employers' Liability and/or
Workmen's Compensation are less than:

a.   $25,000 each employee, $25,000 any one disaster,
     Workmen's Compensation and/or Employers' Liability;

b.   $25,000 each employee, occupational diseases, with
     respect to multiple limit policies;

c.   $25,000 any one disaster, Workmen's Compensation and/or
     Employers' Liability and/or each employee, occupational
     diseases, with respect to combined single limit policies.

Where the Reinsurer writes excess of a combined single limit reten-
tion covering Property Damage, Bodily Injury and/or Personal
Injury, Workmen's Compensation and/or Employers' Liability, this
reinsurance Agreement shall provide for a combined minimum
retention of $50,000.

-3-

Where any policy of the underlying insurers, or any policy of another insurance carrier reinsured by the Reinsurer contains an aggregate limit, the coverage provided by the Reinsurer's policy is understood to be in excess of such aggregate limit, and an aggregate limit shall be applied to the amount of excess coverage provided under this Agreement.

4.  This Agreement shall apply up to the limits stated in Article I, 1, irrespective of whether the Reinsurer issues its reinsurance policies covering:

    a.  Liability for Bodily Injury and/or Personal Injury Liability only, or

    b.  Liability for Property Damage only, or

    c.  Liability for Bodily Injury and/or Personal Injury and Liability for Property Damage with separate limits, or

    d.  Liability for Bodily Injury and/or Personal Injury and Liability for Property Damage with one combined single limit, or

    e.  Liability for Employers' Liability and/or Workmen's Compensation Insurance, or

    f.  Liability for Employers' Liability and/or Workmen's Compensation Insurance written in conjunction with Bodily Injury and/or Personal Injury Liability and/or Property Damage with one combined single limit.

5.  The Reinsurer shall be the sole judge as to what constitutes one risk.

6.  The Reinsurer shall have the right to place facultative retrocessions outside of this Agreement when in the judgment of the Reinsurer such retrocessions will be in the interest of Retrocessionaires and such facultative retrocessions shall be deducted from the amount of reinsurance written by the Reinsurer for the purpose of determining the amount of liability which the Reinsurer is obligated to retrocede hereunder.

-4-

## ARTICLE II

1. This Agreement shall specifically exclude coverage in respect of policies of reinsurance issued by the Reinsurer in respect of the following classes or classifications:

    a.   Aviation Liability risks, except in cases where such Aviation Liability risks are incorporated in a policy covering comprehensive or general liability.

    b.   Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, policies issued by the Reinsurer in respect of railroads covering contractual liability or railroads' protective, or owners' protective, or owners' and contractors' protective insurance.

    c.   Excess catastrophe reinsurance treaties of insurance companies.

    d.   Ocean Marine business when written as such.

    e.   Nuclear risks as per attached wording.

    f.   Underground Coal Mining - but only as respects Excess Workmen's Compensation.

    g.   Operation of Aircraft - but only as respects Excess Workmen's Compensation.

    h.   Fireworks Manufacturers - but only as respects Excess Workmen's Compensation.

    i.   ~~Fuse Manufacturers - but only as respects Excess Workmen's Compensation.~~

    j.   Explosive Risks - but only as respects Excess Workmen's Compensation.

    k.   Risk of War, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause.

TR 00151

-5-

2.  In the event the Reinsurer becomes interested in a prohibited risk
    as described above, without his knowledge, in respect of which no
    other reinsurance arrangements are available to the Reinsurer,
    either by an existing insured extending its operations or by an
    inadvertent acceptance by an agent or otherwise of a reinsured
    company, this Agreement shall attach in respect to such prohibited
    risks but only until discovery by the Reinsurer and for not exceeding
    thirty (30) days thereafter.

## ARTICLE III

1.  It is the intention of this Agreement that the Retrocessionaires
    shall share to the extent of their interest in this Agreement the
    fortunes of the Reinsurer.

2.  The liability of the Retrocessionaires on any one risk retroceded
    under this Agreement shall commence and expire simultaneously
    with that of the Reinsurer, it being understood that all retrocessions
    shall be subject to the same clauses and conditions as the original
    reinsurances.

3.  Any inadvertent errors or omissions on the part of the Reinsurers
    shall not relieve the Retrocessionaires of any liability hereunder
    but shall be rectified immediately upon discovery.

4.  The Reinsurer shall have the right at any time to reduce, increase,
    revise, cancel or alter in any manner he may deem advisable
    any retrocession to the Retrocessionaires under this Agreement
    provided that the share of the Retrocessionaires remains within
    the limits stipulated in Article I, 1., of this Agreement and to
    credit or debit the Retrocessionaires with their appropriate share
    of premiums.

TR 00152

- 6 -

## ARTICLE IV

The Reinsurer undertakes to maintain the excess of loss reinsurance for the joint account of itself and the quota share Retrocessionaire mentioned in Article I above and to give the Retrocessionaire all particulars concerning this reinsurance when so requested. Further, the Reinsurer shall consult the Retrocessionaire prior to effecting any change in this reinsurance protection.

The Reinsurer will credit the Retrocessionaire with its pro rata share of all recoveries under this reinsurance and the Retrocessionaire agrees to reimburse the Reinsurer for its pro rata share of the reinsurance premium payable for the said reinsurance .

## ARTICLE V

1. The consideration paid by the Reinsurer to the Retrocessionaires shall be the gross net written premiums (i. e., gross premiums less return premiums) applicable to the share retroceded less the Retrocessionaire's pro rata share of the reinsurance premiums payable by the Reinsurer for the excess of loss reinsurance arranged for joint account of the Reinsurer and the Retrocessionaires as set out in Articles I and IV, less reinsurance premiums ceded in accordance with Article I, 6., and less commission and taxes as follows:

   a. Commissions payable by the Retrocessionaires to the Reinsurer shall be the amount of commission allowed by the Reinsurer plus an overriding commission of seven and one-half (7 1/2%) percent of the gross net written premiums. Such commissions include provision for all commissions, brokerages, premium taxes, Board Exchange or Bureau assessments and for all other expenses of whatever nature excepting loss adjustment expenses.

2. In addition to the foregoing commission, the Retrocessionaires shall pay the Reinsurer a contingent commission of twenty-five per cent (25%) of the net annual profit resulting from this Agreement, such profit being arrived at as follows:

   a. Net Premiums Earned to be:

      (1)  The unearned premium reserve at the close of the previous year.

      (2)  Plus the net premiums ceded during the current year.

TR 00153

- 7 -

(3)   Less the unearned premium reserve at the close of the current year.

b. Net Losses Incurred to be:

(1)   Losses and loss adjustment expenses paid during the current year less recoveries under excess of loss protection for common account.

(2)   Plus the reserve for outstanding losses and loss adjustment expenses at the close of the current year

(3)   Less the reserve for outstanding losses and loss adjustment expenses at the close of the previous year.

(4)   Plus fifteen per cent (15%) of the reserve for outstanding losses at the close of the current year.

(5)   Less fifteen per cent (15%) of the reserve for outstanding losses at the close of the previous year.

c. Net Expenses Incurred to be:

(1)   Commissions allowed as computed in Article V, 1. a.

(2)   Retrocessionaires' management expenses of seven and one-half per cent (7 1/2%) of net written premium ceded

(3)   Pro rata share of premium for excess of loss protection for common account

(4)   Deficit, if any, from the preceding year's contingent commission statement.   No deficit to be carried forward for more than three years.

The amount by which the net premiums earned under a. exceed the total amount of net losses incurred and net expenses incurred under b. and c. shall be the net profit.

This calculation shall be made annually on a calendar year basis.   The calculation of the contingent commission shall be prepared by the Reinsurer

- 8 -

as soon as possible after year-end and shall be forwarded to the Retrocessionaires without delay.

In case of cancellation of this Agreement in accordance with Section 4 a. of Article XII, no contingent commission statement shall be rendered until after the expiration of all risks and the settlement of all losses applying to this Agreement .

## ARTICLE VI

1. The Reinsurer shall furnish the Retrocessionaires as soon as practicable after the close of each quarter with accounts in original currency summarizing:

    (a)  Gross net written premiums.

    (b)  Commissions applicable as mentioned in Article V - 1. a.

    (c)  Overriding commission as mentioned in Article V - 1. a.

    (d)  Loss and loss expense paid.

    The balance due by either party shall be paid within sixty (60) days of the close of the account quarter

2. When rendering the quarterly accounts as per March 31, June 30 and September 30, the Reinsurer shall also report the Retrocessionaires' portion of the unearned premiums and outstanding losses as far as available from original ceding companies

3. As soon as possible after the end of each calendar year, the Reinsurer shall also furnish the Retrocessionaires with the statistical information necessary for their annual statements, e. g. premiums, premiums in force by term and year of expiration, losses paid, loss adjustment expenses, estimate of outstanding losses and unearned premiums by major class.

## ARTICLE VII

1. The Reinsurer alone will settle all claims and such settlements shall under all circumstances be binding on the Retrocessionaires in accord-

- 9 -

ance with the terms of this Agreement.

2. The Retrocessionaires shall likewise pay their pro rata share of all expenses connected with the settlement of losses and any resistance to an negotiations concerning them. The Retrocessionaires shall participate in any sums which may be recovered either as salvage or otherwise and shall benefit proportionately in all discounts.

3. In the event that any loss recoverable by the Reinsurer under this Agreement is in excess of Ten Thousand Dollars ($10,000), the Retrocessionaires shall upon demand forthwith remit their share of such loss.

## ARTICLE VIII

The Retrocessionaires shall at all reasonable times have the right to inspect at the offices of the Reinsurer the records, documents and reports referring to any business transacted under this Agreement.

## ARTICLE IX

1. As a precedent to any right of action hereunder if disputes arise out of this Agreement, as well as differences, concerning the validity of this Agreement, the dispute shall be referred to two arbitrators, one to be chosen by each party   In the event of either party failing to appoint its arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate both arbitrators.

2. Prior to entering into arbitration, the two arbitrators shall appoint an umpire within thirty (30) days of their nomination. In the event of the two arbitrators failing to agree upon the appointment of an umpire within the prescribed thirty (30) days, each of them shall then name three, of whom the other shall decline two and the decision shall be made by drawing lots. The arbitrators, as well as the umpire, must be active or retired, disinterested executive officers of Insurance or Reinsurance Companies.

3. The arbitrator and/or the umpire shall consider this contract as an honorable agreement rather than merely as a legal obligation and they

- 10 -

are relieved of all judicial formalities and may abstain from following
the strict rules of law and shall make their decision according to the
practice of reinsurance business only. Each party shall submit its case
to the arbitrators within thirty (30) days after their appointment. The
arbitrators shall make their decision within four (4) months after the
appointment of the umpire. The decision of the arbitrators shall be
final and binding on both parties and not subject to appeal; but failing
to agree, they shall call in the umpire and the decision of the majority
shall be final and binding on both parties and not subject to appeal.

4. Each party shall bear the expense of its own arbitrator and shall joint-
   ly and equally bear with the other the expense of the arbitration. Arbi-
   tration shall take place in New York, N.Y., unless some other location
   is mutually agreed upon

## ARTICLE X

1. In the event of insolvency of the Reinsurer, retrocessions under this
   Agreement shall be payable by the Retrocessionaires on the basis of
   the liability of the Reinsurer under the policies retroceded without
   diminution because of the insolvency of the Company, to the Reinsurer
   or its liquidator, receiver, or statutory successor, except as provided
   by Section 315 of the New York Insurance Law or except the
   contract specifically provides another payee of such reinsurance in the
   event of the insolvency of the Reinsurer, and (b) where the Retrocession-
   aires, with the consent of the ceding company or companies, has assumed
   such policy obligations of the Reinsurer as direct obligations of the Retro-
   cessionaires to the payees under such policy and in substitution for the
   obligations of the Reinsurer to such payees

2. It is further understood and agreed that in the event of the insolvency
   of the Reinsurer, the liquidator, receiver or statutory successor of
   the Reinsurer shall give written notice to the Retrocessionaires of the
   pendency of a claim against the insolvent Reinsurer on the policy retro-
   ceded within a reasonable time after such claim is filed in the insolvency
   proceeding and that during the pendency of such claim the Retrocession-
   aires may investigate such claim and interpose, at their own expense, in
   the proceeding where such claim is to be adjudicated, any defense or
   defenses which it may deem available to the Reinsurer or its liquidator,
   receiver or statutory successor. The expense thus incurred by the
   Retrocessionaires shall be chargeable, subject to court approval, against

TR 00157

3.      Prior to December 2004, disputes arose between Argonaut and Global concerning the application of certain retrocessional reinsurance agreements between the parties. The dispute concerned billings ceded by Global to Argonaut for commutation payments that Global had made to members of the American International Group ("AIG") and the Home Insurance Company ("Home").

4.      On or about December 30, 2004, Global demanded arbitration against Argonaut, pursuant to the terms of the retrocessional agreements between Global and Argonaut (or their predecessors in interest) (the "Arbitration").  *See* Exhibit 1.  This demand was amended by Global on or about January 10, 2005.  *See* Exhibit 1.  The amounts of the billings at issue in the arbitration were in excess of $480,000.  The retrocessional contracts at issue in the arbitration from which Argonaut is seeking to confirm the Final Award were:

- Quota Share QS31/4158
- First Surplus QS73/6103

Copies of the contracts are attached hereto as Exhibits 2 and 3, respectively.

5.      Each of the retrocessional agreements contains a written provision expressing the parties' agreement to submit disputes under the contracts to binding arbitration. *See* Exhibit 2 at Article IX and Exhibit 3 at Article XIII.

6.      On or about March 9, 2006, Argonaut and Global had an Organizational Meeting before the Arbitration Panel consisting of Mr. Edmond F. Rondepierre, Mr. Richard L. White, and Mr. Arthur Brotter ("the Arbitration Panel" or "the Panel").  The Panel in the Arbitration was agreed to be duly constituted by stipulation of the parties.

7.      The Panel issued a limited Confidentiality Order in the arbitration.  A true and correct copy of that order is attached hereto as Exhibit 4.

8.      Under the Panel's supervision, the parties conducted discovery and presented briefs and evidentiary exhibits to the Panel in furtherance of the resolution of their dispute.

9.      At a four and a half day hearing held in New York, New York, on December 11-15, 2006, both parties submitted argument, exhibits, as well as fact and expert witness testimony to the Panel.

10.      On or about January 10, 2007, after deliberation, the umpire on behalf of a majority of the Panel issued a written final Arbitration Award.  A true and correct copy of the Panel's January 10, 2007 Arbitration Award is attached hereto as Exhibit 5.

11.      On or about February 12, 2007, Global submitted a motion to "clarify" the Panel's January 10, 2007 Award.  The majority of the Panel responded on March 1, 2007 stating that there was no mistake or ambiguity in the award and that the order clearly and accurately states the conclusions reached by the Panel.  A true and correct copy of the Panel's March 1, 2007 response to Global's motion to clarify is attached hereto as Exhibit 6.

12.      The January 10, 2007 Final Arbitration Award has not been vacated or modified.

13.      As of the date of this Affidavit, Global has not served Argonaut with a court filing seeking to vacate, modify, or correct the January 10, 2007 Final Arbitration Award.

I declare under penalty of perjury, pursuant to New York Penal Law Article 210, that the foregoing is true and correct.

3

Executed on May 16th, 2007

Christopher Hollender
Senior Vice President
Insurance Run-Off Consultants,
A Division of Argonaut Insurance Company

OFFICIAL SEAL
GENEVIEVE B CORPUZ
Notary Public - State of Illinois
My Commission Expires May 31, 2010

5/16/07

Notary Public
My Commission Expires:

# BUDD LARNER

### A PROFESSIONAL CORPORATION

### COUNSELLORS AT LAW

150 JOHN F. KENNEDY PARKWAY, CN 1000
SHORT HILLS, NJ 07078-0999
973.379.4800
FAX 973.379.7734
www.buddlarner.com

Direct Dial: 973-315-4434
E-mail: JLeonard@budd-larner.com

December 30, 2004

### DEMAND FOR ARBITRATION

BY TELECOPIER AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED.

Argonaut Insurance Co.
c/o Insurance Runoff Consultants
8750 West Bryn Mawr, Suite 1300
Chicago, Illinois  60631

Attention:  Mr. Donald J. Buyck

    Re:  In the Matter of the Arbitration Between Gerling
        Global Reinsurance Corp. – U.S. Branch and
        Argonaut Insurance Co.
        Retrocessional billings in respect of AIG and
        Home Commutations
        Excess Per Risk Facultative Casualty Contract
        First Excess Facultative Casualty Contract
        Fourth Excess Facultative Casualty Contract
        First Surplus Contract
        Quota Share Contract

Dear Mr. Buyck:

    This firm is counsel to Gerling Global Reinsurance Corp. –
U.S. Branch ("U.S. Branch"), located at 1345 Avenue of the
Americas, New York, New York.  U.S. Branch hereby gives notice of
its intent to arbitrate against Argonaut Insurance Co. ("Argonaut")
all disputed issues relating to U.S. Branch's claims for payments
of outstanding retrocessional balances owed to it by Argonaut in
connection with U.S. Branch's commutations with its cedents, the
American International Group Companies ("AIG") and Home Insurance

**BUDD LARNER**

A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
December 30, 2004
Page 2

Company ("Home").  The outstanding balances owed to U.S. Branch by Argonaut in respect of the AIG commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $491,048.99 |
| First Excess Facultative Casualty Contract | $302,863.55 |
| Fourth Excess Facultative Casualty Contract | $ 37,270.63 |
| First Surplus Contract | $ 96,118.81 |
| | |
| Total in respect of AIG Commutation | $927,301.98 |

The outstanding balances owed to U.S. Branch by Argonaut in respect of the Home commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $  692,471.64 |
| Quota Share Contract | $  239,022.79 |
| First Excess Facultative Casualty Contract | $1,402,970.52 |
| Fourth Excess Facultative Casualty Contract | $   26,729.75 |
| First Surplus Facultative Casualty Contract | $  159,457.48 |
| | |
| Total in respect of Home Commutation | $2,520,652.18 |
| | |
| Grand total in respect of both commutations | $3,447,954.16 |

U.S. Branch will also seek pre-hearing security for the full amount due and an award of interest, attorney's fees and other appropriate relief.

    Unless Argonaut applies to stay this arbitration within twenty (20) days after service of this demand, Argonaut shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.

**BUDD LARNER**
A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
December 30, 2004
Page 3

U.S. Branch hereby demands that Argonaut appoint and identify its arbitrator within thirty (30) days. In the event that Argonaut fails to appoint and identify its arbitrator within that time, U.S. Branch will appoint Argonaut's arbitrator on its behalf.

Very truly yours,

Jeffrey S. Leonard

JSL/pl:531592w

cc:   Joseph J. Schiavone, Esq.
      Marc I. Bressman, Esq.