# Exhibit A
# Part 2

Jan-11- 2005  7-08AM    ARGONAUT INSURANCE                     No.0588   P. 3/02

# BUDD LARNER

A PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

150 JOHN F. KENNEDY PARKWAY, CN 1000
SHORT HILLS, NJ 07078-0999
973.379.4800
FAX 973.379.7734
www.buddlarner.com

Direct Dial: 573-315-4434
E-mail: JLennard@budd-larner.com

January 10, 2005

## AMENDED DEMAND FOR ARBITRATION

BY TELECOPIER AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Argonaut Insurance Co.
c/o Insurance Runoff Consultants
8750 West Bryn Mawr, Suite 1300
Chicago, Illinois  60631

Attention:  Mr. Donald J. Buyck

> Re:  In the Matter of the Arbitration Between Gerling
> Global Reinsurance Corp. – U.S. Branch and
> Argonaut Insurance Co.
> Retrocessional billings in respect of AIG and
> Home Commutations
> Excess Per Risk Facultative Casualty Contract
> First Excess Facultative Casualty Contract
> Fourth Excess Facultative Casualty Contract
> First Surplus Contract
> Quota Share Contract

Dear Mr. Buyck:

This firm is counsel to Gerling Global Reinsurance Corp. –
U.S. Branch ("U.S. Branch"), located at 1345 Avenue of the
Americas, New York, New York. U.S. Branch hereby gives notice of
its intent to arbitrate against Argonaut Insurance Co. ("Argonaut")
all disputed issues relating to U.S. Branch's claims for payments
of outstanding retrocessional balances owed to it by Argonaut in
connection with U.S. Branch's commutations with its cedents, the
American International Group Companies ("AIG") and Home Insurance

NEW YORK          CHERRY HILL          SHORT HILLS          PHILADELPHIA          ATLANTA

1 Jan-11- 2005  7-00AM   ARGONAUT INSURANCE                         NO-0388   P. 4/00

## BUDD LARNER
### A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
January 10, 2005
Page 2

Company ("Home"). The outstanding balances owed to U.S. Branch by Argonaut in respect of the AIG commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $491,048.99 |
| First Excess Facultative Casualty Contract | $302,863.55 |
| Fourth Excess Facultative Casualty Contract | $ 37,270.63 |
| First Surplus Contract | $ 96,118.81 |
| Total in respect of AIG Commutation | $927,301.98 |

The outstanding balances owed to U.S. Branch by Argonaut in respect of the Home commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $   692,471.64 |
| Quota Share Contract | $   239,022.79 |
| First Excess Facultative Casualty Contract | $1,402,970.52 |
| Fourth Excess Facultative Casualty Contract | $    26,729.75 |
| First Surplus Facultative Casualty Contract | $  159,457.48 |
| Total in respect of Home Commutation | $2,520,652.18 |
| Grand total in respect of both commutations | $3,447,954.16 |

U.S. Branch will also seek pre-hearing security for the full amount due and an award of interest, attorney's fees and other appropriate relief.

Unless Argonaut applies to stay this arbitration within twenty (20) days after service of this demand, Argonaut shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.

U.S. Branch hereby appoints Richard L. White as its arbitrator. Mr. White's CV is attached.

Received Time Jan.10.  5:10PM

Received Time Jan. 11.  9:18AM

JAN-11- 2005  7:05AM   ARGONAUT INSURANCE                   No.0588   P. 5/4

**BUDD LARNER**
A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
January 10, 2005
Page 3

     U.S. Branch hereby demands that Argonaut appoint and identify
its arbitrator within thirty (30) days.  In the event that Argonaut
fails to appoint and identify its arbitrator within that time, U.S.
Branch will appoint Argonaut's arbitrator on its behalf.

                              Very truly yours,

                              Jeffrey A. Leonard

JBL/pl:333392w
Enclosure
cc:   Joseph J. Schiavone, Esq.
      Marc I. Brasseman, Esq.
      Mr. Richard L. White

Received Time Jan.10.  5:10PM

Received Time Jan. 11.  9:18AM

# GERLING GLOBAL REINSURANCE CORPORATION
## U. S. BRANCH
### 717 FIFTH AVENUE
### NEW YORK 22, NEW YORK
#### TELEPHONE: PLAZA 2-8900

# REINSURANCE AGREEMENT

WITH

### GUARANTY REINSURANCE CO.
### Chicago, Illinois

COVERING **Quota Share Retrocessions Agreement for Facultative Casualty Business**

EFFECTIVE **July 26, 1963**

AGREEMENT NO. 4158



## GERLING GLOBAL REINSURANCE CORPORATION
## U. S. BRANCH
## NEW YORK, N. Y.

### QUOTA SHARE RETROCESSIONS AGREEMENT FOR
### FACULTATIVE CASUALTY BUSINESS

### INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH (hereinafter called the "Reinsurer"), of the one part, and

GUARANTY REINSURANCE COMPANY, CHICAGO, ILLINOIS

(hereinafter called the "SUBSCRIBING RETROCESSIONAIRE"), of the other part, that the SUBSCRIBING RETROCESSIONAIRE shall have a 10 % share in the interests and liabilities of the "RETROCESSIONAIRES" as set forth in the document attached hereto, entitled "QUOTA SHARE RETROCESSION AGREEMENT FOR FACULTATIVE CASUALTY BUSINESS." The share of the SUBSCRIBING RETROCESSIONAIRE shall be separate and apart from the share of the other RETROCESSIONAIRES and shall not be joint with those of the other RETROCESSIONAIRES and the SUBSCRIBING RETROCES-SIONAIRE shall in no event participate in the interests and liabilities of the other RETROCESSIONAIRES.

This Agreement shall become effective July 26, 1963
and is cancellable in the manner set forth in ARTICLE XII of the attached Retrocession Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement in duplicate, as of the dates under-mentioned.

At New York, N. Y., this 15th        day of August,            19 63
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
by
GERLING GLOBAL OFFICES INC. - U. S. MANAGER

Stig Winberg, President
and at                            this        day of                    19

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Reinsurance Clause | Article I | Page 1 |
| Exclusions | Article II | Page 4 |
| General Provisions | Article III | Page 5 |
| Excess of Loss for Joint Account | Article IV | Page 6 |
| Premium and Commissions | Article V | Page 6 |
| Accounts and Statistics | Article VI | Page 8 |
| Loss Settlements | Article VII | Page 8 |
| Access to Records | Article VIII | Page 9 |
| Arbitration | Article IX | Page 9 |
| Insolvency | Article X | Page 10 |
| Alterations | Article XI | Page 11 |
| Term and Cancellation | Article XII | Page 11 |

QUOTA SHARE RETROCESSION AGREEMENT
FOR FACULTATIVE CASUALTY BUSINESS

between

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH, New York, N. Y.
(hereinafter called the "Reinsurer")

and

the Companies specified in the respective Interests and Liabilities
Agreement to which this Agreement is attached (hereinafter called
the "Retrocessionaires").

## ARTICLE I

1.   The Reinsurer undertakes to retrocede and the Retrocessionaire
     agrees to accept under this Agreement the quota share percentage
     participation set forth in the Interests and Liabilities Agreement
     of limits totalling up to Two Million Dollars ($2,000,000) in
     respect of any one risk covered under policies issued by the
     Reinsurer coming within the scope of this Agreement. The
     Reinsurer shall retain net for his own account the remaining
     twenty per cent (20%). The Reinsurer undertakes to arrange
     excess of loss protection for account of its Retrocessionaires and
     itself in respect of losses exceeding $500,000 for the following
     $1,500,000 any one event.

2.   The classes of business covered by this Agreement shall be those
     normally written in the Reinsurer's Facultative Casualty Depart-
     ment as hereinafter defined and subject to specified exclusions.
     The reinsurance policies underwritten by the Reinsurer shall be
     reinsurance of other companies operating in the United States of
     America, its territories and possessions, retrocessions shall
     follow the territorial provisions of the policies retroceded.

3.   The Reinsurer will issue reinsurance policies covering excess
     limits in respect of:

     a.   Bodily Injury and/or Personal Injury Liability and Property
          Damage Liability, and

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

-2-

b.  Employers' Liability and/or Workmen's Compensation
    Insurance, and

c.  Liabilities assumed by the Reinsurer under so-called
    "Umbrella" policies,

of every description with various limits of liability, but no policy
shall be ceded under this Agreement where the underlying amounts
are less than:

| | | |
|---|---|---|
| $10,000 any one person | ) | In respect of Liability |
| $20,000 any one accident | | for Bodily Injury |
| or occurrence | ) | |
| | | |
| $ 5,000 any one accident | | In respect of Liability |
| or occurrence | ) | for Property Damage |

or

$25,000 combined single limit over both Liability for Bodily
        Injury and Liability for Property Damage.

Where Employers' Liability and/or Workmen's Compensation is
written separately no risk shall be ceded under this Agreement where
the underlying limits in respect of Employers' Liability and/or
Workmen's Compensation are less than:

a.  $25,000 each employee, $25,000 any one disaster,
    Workmen's Compensation and/or Employers' Liability;

b.  $25,000 each employee, occupational diseases, with
    respect to multiple limit policies;

c.  $25,000 any one disaster, Workmen's Compensation and/or
    Employers' Liability and/or each employee, occupational
    diseases, with respect to combined single limit policies.

Where the Reinsurer writes excess of a combined single limit reten-
tion covering Property Damage, Bodily Injury and/or Personal
Injury, Workmen's Compensation and/or Employers' Liability, this
reinsurance Agreement shall provide for a combined minimum
retention of $50,000.

-3-

Where any policy of the underlying insurers, or any policy of another insurance carrier reinsured by the Reinsurer contains an aggregate limit, the coverage provided by the Reinsurer's policy is understood to be in excess of such aggregate limit, and an aggregate limit shall be applied to the amount of excess coverage provided under this Agreement.

4.  This Agreement shall apply up to the limits stated in Article I, 1, irrespective of whether the Reinsurer issues its reinsurance policies covering:

   a.  Liability for Bodily Injury and/or Personal Injury Liability only, or

   b.  Liability for Property Damage only, or

   c.  Liability for Bodily Injury and/or Personal Injury and Liability for Property Damage with separate limits, or

   d.  Liability for Bodily Injury and/or Personal Injury and Liability for Property Damage with one combined single limit, or

   e.  Liability for Employers' Liability and/or Workmen's Compensation Insurance, or

   f.  Liability for Employers' Liability and/or Workmen's Compensation Insurance written in conjunction with Bodily Injury and/or Personal Injury Liability and/or Property Damage with one combined single limit.

5.  The Reinsurer shall be the sole judge as to what constitutes one risk.

6.  The Reinsurer shall have the right to place facultative retrocessions outside of this Agreement when in the judgment of the Reinsurer such retrocessions will be in the interest of Retrocessionaires and such facultative retrocessions shall be deducted from the amount of reinsurance written by the Reinsurer for the purpose of determining the amount of liability which the Reinsurer is obligated to retrocede hereunder.



-4-

## ARTICLE II

1. This Agreement shall specifically exclude coverage in respect of policies of reinsurance issued by the Reinsurer in respect of the following classes or classifications:

   a. Aviation Liability risks, except in cases where such Aviation Liability risks are incorporated in a policy covering comprehensive or general liability.

   b. Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, policies issued by the Reinsurer in respect of railroads covering contractual liability or railroads' protective, or owners' protective, or owners' and contractors' protective insurance.

   c. Excess catastrophe reinsurance treaties of insurance companies.

   d. Ocean Marine business when written as such.

   e. Nuclear risks as per attached wording.

   f. Underground Coal Mining - but only as respects Excess Workmen's Compensation.

   g. Operation of Aircraft - but only as respects Excess Workmen's Compensation.

   h. Fireworks Manufacturers - but only as respects Excess Workmen's Compensation.

   i. Fuse Manufacturers - but only as respects Excess Workmen's Compensation.

   j. Explosive Risks - but only as respects Excess Workmen's Compensation.

   k. Risk of War, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause.

-5-

2.  In the event the Reinsurer becomes interested in a prohibited risk
    as described above, without his knowledge, in respect of which no
    other reinsurance arrangements are available to the Reinsurer,
    either by an existing insured extending its operations or by an
    inadvertent acceptance by an agent or otherwise of a reinsured
    company, this Agreement shall attach in respect to such prohibited
    risks but only until discovery by the Reinsurer and for not exceeding
    thirty (30) days thereafter.


## ARTICLE III

1.  It is the intention of this Agreement that the Retrocessionaires
    shall share to the extent of their interest in this Agreement the
    fortunes of the Reinsurer.

2.  The liability of the Retrocessionaires on any one risk retroceded
    under this Agreement shall commence and expire simultaneously
    with that of the Reinsurer, it being understood that all retrocessions
    shall be subject to the same clauses and conditions as the original
    reinsurances.

3.  Any inadvertent errors or omissions on the part of the Reinsurers
    shall not relieve the Retrocessionaires of any liability hereunder
    but shall be rectified immediately upon discovery.

4.  The Reinsurer shall have the right at any time to reduce, increase,
    revise, cancel or alter in any manner he may deem advisable
    any retrocession to the Retrocessionaires under this Agreement
    provided that the share of the Retrocessionaires remains within
    the limits stipulated in Article I, 1., of this Agreement and to
    credit or debit the Retrocessionaires with their appropriate share
    of premiums.

- 6 -

## ARTICLE IV

The Reinsurer undertakes to maintain the excess of loss reinsurance for the joint account of itself and the quota share Retrocessionaire mentioned in Article I above and to give the Retrocessionaire all particulars concerning this reinsurance when so requested. Further, the Reinsurer shall consult the Retrocessionaire prior to effecting any change in this reinsurance protection.

The Reinsurer will credit the Retrocessionaire with its pro rata share of all recoveries under this reinsurance and the Retrocessionaire agrees to reimburse the Reinsurer for its pro rata share of the reinsurance premium payable for the said reinsurance.

## ARTICLE V

1. The consideration paid by the Reinsurer to the Retrocessionaires shall be the gross net written premiums (i. e., gross premiums less return premiums) applicable to the share retroceded less the Retrocessionaire's pro rata share of the reinsurance premiums payable by the Reinsurer for the excess of loss reinsurance arranged for joint account of the Reinsurer and the Retrocessionaires as set out in Articles I and IV, less reinsurance premiums ceded in accordance with Article I, 6., and less commission and taxes as follows:

   a. Commissions payable by the Retrocessionaires to the Reinsurer shall be the amount of commission allowed by the Reinsurer plus an overriding commission of seven and one-half (7 1/2%) percent of the gross net written premiums. Such commissions include provision for all commissions, brokerages, premium taxes, Board Exchange or Bureau assessments and for all other expenses of whatever nature excepting loss adjustment expenses.

2. In addition to the foregoing commission, the Retrocessionaires shall pay the Reinsurer a contingent commission of twenty-five per cent (25%) of the net annual profit resulting from this Agreement, such profit being arrived at as follows:

   a. Net Premiums Earned to be:

      (1)   The unearned premium reserve at the close of the previous year.

      (2)   Plus the net premiums ceded during the current year.

- 7 -

    (3)   Less the unearned premium reserve at the close of the current year.

b. Net Losses Incurred to be:

    (1)   Losses and loss adjustment expenses paid during the current year less recoveries under excess of loss protection for common account.

    (2)   Plus the reserve for outstanding losses and loss adjustment expenses at the close of the current year

    (3)   Less the reserve for outstanding losses and loss adjustment expenses at the close of the previous year.

    (4)   Plus fifteen per cent (15%) of the reserve for outstanding losses at the close of the current year.

    (5)   Less fifteen per cent (15%) of the reserve for outstanding losses at the close of the previous year.

c. Net Expenses Incurred to be:

    (1)   Commissions allowed as computed in Article V, 1. a.

    (2)   Retrocessionaires' management expenses of seven and one-half per cent (7 1/2%) of net written premium ceded

    (3)   Pro rata share of premium for excess of loss protection for common account

    (4)   Deficit, if any, from the preceding year's contingent commission statement.  No deficit to be carried forward for more than three years.

The amount by which the net premiums earned under a. exceed the total amount of net losses incurred and net expenses incurred under b. and c. shall be the net profit.

This calculation shall be made annually on a calendar year basis.  The calculation of the contingent commission shall be prepared by the Reinsurer

- 9 -

as soon as possible after year-end and shall be forwarded to the
Retrocessionaires without delay.

In case of cancellation of this Agreement in accordance with Section 4 a.
of Article XII, no contingent commission statement shall be rendered
until after the expiration of all risks and the settlement of all losses
applying to this Agreement .

## ARTICLE VI

1. The Reinsurer shall furnish the Retrocessionaires as soon as practic-
   able after the close of each quarter with accounts in original currency
   summarizing:

   (a)  Gross net written premiums.

   (b)  Commissions applicable as mentioned in Article V - 1. a.

   (c)  Overriding commission as mentioned in Article V - 1 a.

   (d)  Loss and loss expense paid.

   The balance due by either party shall be paid within sixty (60) days
   of the close of the account quarter

2. When rendering the quarterly accounts as per March 31, June 30 and
   September 30, the Reinsurer shall also report the Retrocessionaires'
   portion of the unearned premiums and outstanding losses as far as
   available from original ceding companies

3. As soon as possible after the end of each calendar year, the Reinsurer
   shall also furnish the Retrocessionaires with the statistical informa-
   tion necessary for their annual statements, e.g. premiums, premiums
   in force by term and year of expiration, losses paid, loss adjustment
   expenses, estimate of outstanding losses and unearned premiums by
   major class.

## ARTICLE VII

1. The Reinsurer alone will settle all claims and such settlements shall
   under all circumstances be binding on the Retrocessionaires in accord-

- 9 -

ance with the terms of this Agreement.

2. The Retrocessionaires shall likewise pay their pro rata share of all expenses connected with the settlement of losses and any resistance to an negotiations concerning them. The Retrocessionaires shall participate in any sums which may be recovered either as salvage or otherwise and shall benefit proportionately in all discounts.

3. In the event that any loss recoverable by the Reinsurer under this Agreement is in excess of Ten Thousand Dollars ($10,000), the Retrocessionaires shall upon demand forthwith remit their share of such loss.

## ARTICLE VIII

The Retrocessionaires shall at all reasonable times have the right to inspect at the offices of the Reinsurer the records, documents and reports referring to any business transacted under this Agreement.

## ARTICLE IX

1. As a precedent to any right of action hereunder if disputes arise out of this Agreement, as well as differences, concerning the validity of this Agreement, the dispute shall be referred to two arbitrators, one to be chosen by each party   In the event of either party failing to appoint its arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate both arbitrators.

2. Prior to entering into arbitration, the two arbitrators shall appoint an umpire within thirty (30) days of their nomination. In the event of the two arbitrators failing to agree upon the appointment of an umpire within the prescribed thirty (30) days, each of them shall then name three, of whom the other shall decline two and the decision shall be made by drawing lots. The arbitrators, as well as the umpire, must be active or retired, disinterested executive officers of Insurance or Reinsurance Companies.

3. The arbitrator and/or the umpire shall consider this contract as an honorable agreement rather than merely as a legal obligation and they

- 10 -

are relieved of all judicial formalities and may abstain from following
the strict rules of law and shall make their decision according to the
practice of reinsurance business only. Each party shall submit its case
to the arbitrators within thirty (30) days after their appointment. The
arbitrators shall make their decision within four (4) months after the
appointment of the umpire. The decision of the arbitrators shall be
final and binding on both parties and not subject to appeal; but failing
to agree, they shall call in the umpire and the decision of the majority
shall be final and binding on both parties and not subject to appeal.

4. Each party shall bear the expense of its own arbitrator and shall joint-
ly and equally bear with the other the expense of the arbitration. Arbi-
tration shall take place in New York, N.Y., unless some other location
is mutually agreed upon

## ARTICLE X

1. In the event of insolvency of the Reinsurer, retrocessions under this
Agreement shall be payable by the Retrocessionaires on the basis of
the liability of the Reinsurer under the policies retroceded without
diminution because of the insolvency of the Company, to the Reinsurer
or its liquidator, receiver, or statutory successor, except as provided
by Section 315 of the New York Insurance Law or except (a) where the
contract specifically provides another payee of such reinsurance in the
event of the insolvency of the Reinsurer, and (b) where the Retrocession-
aires, with the consent of the ceding company or companies, has assumed
such policy obligations of the Reinsurer as direct obligations of the Retro-
cessionaires to the payees under such policy and in substitution for the
obligations of the Reinsurer to such payees

2. It is further understood and agreed that in the event of the insolvency
of the Reinsurer, the liquidator, receiver or statutory successor of
the Reinsurer shall give written notice to the Retrocessionaires of the
pendency of a claim against the insolvent Reinsurer on the policy retro-
ceded within a reasonable time after such claim is filed in the insolvency
proceeding and that during the pendency of such claim the Retrocession-
aires may investigate such claim and interpose, at their own expense, in
the proceeding where such claim is to be adjudicated, any defense or
defenses which it may deem available to the Reinsurer or its liquidator,
receiver or statutory successor. The expense thus incurred by the
Retrocessionaires shall be chargeable, subject to court approval, against

- 11 -

the insolvent Reinsurer as part of the expense of the liquidation to
the extent of a proportionate share of the benefits which may accrue
to the Reinsurer solely as a result of the defense undertaken by the
Retrocessionaires.

3.  Where two or more Retrocessionaires are involved in the same claim
and a majority in interest elect to interpose defense to such claim, the
expense shall be apportioned in accordance with the terms of the Retro-
cession Agreement as though such expense had been incurred by the
Reinsurer.

## ARTICLE XI

Alterations to this Agreement shall be made by correspondence or Addendum.
The correspondence or Addendum relating to such alterations shall be taken
as forming part of this Agreement and become equally binding.

## ARTICLE XII

1.  This Agreement shall take effect on the date set forth in the Interests
and Liabilities Agreement of which this Agreement forms part and is
concluded for an indefinite period

2.  This Agreement may be cancelled at Midnight any December 31st by either
party giving the other at least three (3) months notice in advance by
registered mail,

3.  The Retrocessionaires shall continue to participate in retrocessions
falling within the terms of this Retrocession Agreement during the said
period of three (3) months. .

4.  In the event of cancellation of this Agreement, the Reinsurer shall have
the option of terminating the liability in force at the date of cancellation
as follows:

    a.  The Retrocessionaires shall remain liable for all retrocessions
    in force at date of termination of this Retrocession Agreement
    until their natural expiry date and for all outstanding losses at
    date of termination until their final settlement.

- 12 -

b.  The Retrocessionaires shall be relieved of all liability hereunder and in consideration of this shall return their proportionate shares of the unearned premiums less commissions and taxes in accordance with Section 1 of Article V to the Reinsurer.

5. Either party may cancel this Treaty forthwith by giving notice in writing by registered letter, should the other party at any time:

a.  Lose the whole or any part of its paid-up capital.

b.  Go into liquidation, whether voluntary or compulsory, or suffer a receiver to be appointed.

c.  Amalgamate with or pass under the control of any other Company or Corporation.

In addition, should any law or regulation become operative which may prohibit or render illegal any part of the arrangements made under this Treaty, the Reinsurer may forthwith terminate this Treaty insofar as it relates to the business to which such law or regulation may apply

**U.S.A.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I. Nuclear reactor power plants including all auxiliary property on the site, or

    II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

    III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

    IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

    (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

    (a) substantial quantities, and

    (b) the extent of installation, plant or site.

Note.—Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

    (b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1 separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

    (a) become effective on or after 1st May, 1960, or

    (b) become effective before that date and contain the Broad Exclusion Provision set out above:

provided this paragraph (3) shall not be applicable to

    (i) Garage and Automobile Policies issued by the Company(ies) on New York risks, or

    (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Company(ies), for those classes of policies

    (a) described in Clause II of paragraph (2) effective before 1st June, 1958, or

    (b) described in paragraph (3) effective before 1st March, 1958,

shall be free until their natural expiry dates or 1st June, 1963, whichever first occurs, from the application of the other provisions of this Clause.

(5) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Company(ies); provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provisions.

2/4/60
#1255

# NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

Q5

TERMINATION ADDENDUM
to the
QUOTA SHARE RETROCESSIONS AGREEMENT
FOR FACULTATIVE CASUALTY BUSINESS
between
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
and
GUARANTY REINSURANCE COMPANY
("Retrocessionaire")



IT IS HEREBY UNDERSTOOD AND AGREED the the Retrocessionaire's participation
of ten (10%) percent in attached contract is terminated as of Midnight,
December 31, 1965.

In accordance with ARTICLE XII, paragraph 4 b., the Retrocessionaire shall
be relieved of all liability thereafter and in consideration of this shall
return its proportionate share of the unearned premiums less commissions
and taxes.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Termination Addendum in duplicate.

At New York, N. Y., this 19th day of February, 1965.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH
By GERLING GLOBAL OFFICES INC.,
U. S. MANAGER

_____
Senior Vice President

_____
Secretary

and at Chicago, Illinois, this 12th day of March 1965.

GUARANTY REINSURANCE COMPANY

By _____

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH
NEW YORK, N. Y.

## QUOTA SHARE RETROCESSIONS AGREEMENT FOR FACULTATIVE CASUALTY BUSINESS

### INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between **GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH** (hereinafter called the "Reinsurer"), of the one part, and

GUARANTY REINSURANCE COMPANY, CHICAGO, ILLINOIS

(hereinafter called the "SUBSCRIBING RETROCESSIONAIRE"), of the other part, that the SUBSCRIBING RETROCESSIONAIRE shall have a 10 % share in the interests and liabilities of the "RETROCESSIONAIRES" as set forth in the document attached hereto, entitled "QUOTA SHARE RETROCESSION AGREEMENT FOR FACULTATIVE CASUALTY BUSINESS." The share of the SUBSCRIBING RETROCESSIONAIRE shall be separate and apart from the share of the other RETROCESSIONAIRES and shall not be joint with those of the other RETROCESSIONAIRES and the SUBSCRIBING RETROCES-SIONAIRE shall in no event participate in the interests and liabilities of the other RETROCESSIONAIRES.

This Agreement shall become effective July 26, 1963 and is cancellable in the manner set forth in ARTICLE XII of the attached Retrocession Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement in duplicate, as of the dates under-mentioned.

At New York, N. Y., this 15th day of August, 19 63
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
by
GERLING GLOBAL OFFICES INC. - U. S. MANAGER

_____
Stig Winberg, President

and at Chicago, Illinois this 30th day of August, 1963
GUARANTY REINSURANCE COMPANY

_____
John J. Hagerty, President

GERLING GLOBAL REINSURANCE CORPORATION

U. S.  BRANCH

FIRST SURPLUS FACULTATIVE CASUALTY
RETROCESSION CONTRACT

Effective:  July 1, 1973

between

GERLING GLOBAL REINSURANCE CORPORATION,  U. S. BRANCH,
New York, New York, including reinsurances to other members of the
Gerling Group of insurance companies (hereinafter referred to as the
"Company")  of the one part

and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND
LIABILITIES AGREEMENT TO WHICH THIS CONTRACT IS ATTACHED
(hereinafter referred to as the "RETROCESSIONAIRE") of the other
part.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 2 -

## ARTICLE I

### Classes of Business Reinsured

By this contract the Retrocessionaire obligates itself to accept as reinsurance of the Company and the Company obligates itself to cede to the Retrocessionaire the whole of its First Surplus Liability, as hereinafter defined, under all policies, binders, contracts, and certificates of reinsurance (hereinafter referred to as "certificates") for casualty excess of loss facultative reinsurance assumed through the Company's casualty facultative department as reinsurance of other companies domiciled in the United States of America, its territories and possessions, and Canada.

The liability of the Retrocessionaire as respects each such cession shall commence and expire obligatorily and simultaneously with that of the Company, subject to the following terms and conditions contained herein.

## ARTICLE II

### Exclusions

This Contract shall specifically exclude coverage in respect of certificates of reinsurance issued by the Company in respect of the following classes or classifications:

A.  Aviation Liability risks, except in cases where such Aviation Liability risks are incorporated in a certificate covering Comprehensive or General Liability;

B.  Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Contract to cover, but not by way of limitation, certificates issued by the Company in respect of railroads covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective Insurance;

C.  Obligatory Reinsurance Treaties of insurance companies;

D.  Ocean Marine business when written as such;

E.  Directors' and Officers' Legal Liability;

F.  Underground Coal Mining  -  but only as respects Excess Workmen's Compensation;

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 3 -

G.  Operation of Aircraft  -  but only as respects Excess Workmen's Compensation;

H.  Fireworks Manufacturers  -  but only as respects Excess Workmen's Compensation;

I.  Fuse Manufacturers  -  but only as respects Excess Workmen's Compensation;

J.  Explosive Risks  -  but only as respects Excess Workmen's Compensation;

K.  Risk of war, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause;

L.  Nuclear risks as defined in the "Nuclear Incident Exclusion Clause  - Liability  -  Reinsurance" which is attached to this Contract.

The above-mentioned exclusions other than C, D, K, and L shall not apply to reinsurances covering original insureds regularly engaged in other operations which involve only incidental operations in any of the above exclusions. For purposes of this Contract, "incidental operations" shall be deemed to mean that not more than 10 % of the annual revenue from all operations is derived from operations in any of the above exclusions.

In the event the Company becomes interested in a prohibited risk other than Exclusion L described above, without its knowledge, in respect of which no other reinsurance arrangements are available to the Company, either by an existing insured extending its operations or by an inadvertent acceptance by an agent or otherwise of a reinsured company, this Contract shall attach in respect to such prohibited risks but only until discovery by the Company and for not exceeding thirty (30) days thereafter.

## ARTICLE III

### Definition of First Surplus Liability

A.  The term "First Surplus Liability" shall mean that portion of the gross liability of the Company as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured which exceeds the amount of its net retention.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 4 -

B.  The Company is granted permission to carry excess of loss reinsurance covering the classes of business covered hereunder, recoveries under which shall inure solely to the benefit of the Company, and such reinsurance shall not reduce the Company's "net retention" for purposes of this Contract. It is warranted, however, that the Company's pure net retention under such excess of loss reinsurance shall not be less than $250,000 as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured.

C.  It is understood that multiple layers of excess facultative reinsurance written on the same risk and for the same line of business will be aggregated for purposes of determining gross liability for which cessions under this reinsurance are based.

## ARTICLE IV

### Retention and Limit

A.  The Company's net retention with respect to business ceded to this Contract shall not be less than Two Hundred and Fifty Thousand Dollars ($250,000) as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured. Cessions to the Contract shall not exceed an amount equal to the Company's net retention hereunder as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured, and shall be subject to a maximum cession to the Contract of $2,500,000 as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured.

B.  If, in the underwriting judgement of the Company, it appears to be to the benefit of the Retrocessionaire, the Company has the right to restrict allotments with respect to any one cession hereunder in such a manner that the liability of the Retrocessionaire thereon shall be less than the maximum provided for in this Contract.

## ARTICLE V

### Loss Adjustment or Claims Expense

A.  In the event of loss hereunder, the Retrocessionaire shall bear its proportionate share of any allocated adjustment expenses incurred by the Company, whether on its own account or as reimbursement to companies reinsured by the Company for adjustment of expenses under

- 5 -

the terms of its reinsurance certificate. Such expenses shall include expenses of litigation, if any, and all other allocated loss expenses of the Company and/or reinsured company (except those of their salaried employees and home office expenses) incurred in connection therewith. As respects expenses incurred by the Company for internal claims auditing purposes, only expenses in excess of $1,000 as respects any one loss will be allocated to this Contract and subject to recovery hereunder.

B.  The Retrocessionaire's contribution for such adjustment expenses shall be in addition to the Retrocessionaire's liability set forth in Article IV.

## ARTICLE VI

### Ceding Commission

The Company shall receive a ceding commission equal to the original acquisition cost on all written premium ceded under the Contract plus an override of 7.5 % on all earned premiums under the Contract. Return commission shall be allowed on return premiums at the same rate previously allowed. It is expressly agreed that this ceding commission includes provision for all dividends, commissions, brokerages, taxes, board exchange or bureau assessments, and for all other expenses of whatever nature (excepting loss adjustment expenses).

## ARTICLE VII

### Reports and Remittances

A.  Quarterly

1.  Within 60 days following the end of each calendar quarter, the Company shall provide a report to the Retrocessionaire, on forms mutually acceptable, setting forth:

    a)  Net written premiums ceded;
    b)  Ceding commission broken down between acquisition cost on ceded written premium and override on earned premium;
    c)  Net paid losses.

    The balance, if any, of (a) less (b) and (c) shall be remitted by the Company concurrently with the report. Any balance due the Company shall be remitted by the Retrocessionaire as promptly as possible following receipt and verification of the Company's report. It is agreed, however, that when the amount due from the Retrocessionaire

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 6 -

as a result of loss or losses arising out of or caused by one event exceeds $50,000, the Retrocessionaire will, at the option and upon the demand of the Company, pay by special remittance the amount due immediately upon receipt of a special loss account from the Company containing all relevant details in connection with the loss or losses.

2.  Within sixty (60) days following the end of each calendar quarter, the Company shall compute and report summary figures for ceded unearned premium and outstanding losses at the end of the quarter.

B.  **Annually**

The Company shall furnish annually at December 31 to the Retro-cessionaire such information as may be required by the Retrocessionaire for preparation of its annual convention statements.

## ARTICLE VIII

**Loss Settlement**

A.  Losses shall be reported as hereinbefore provided except that the Company shall, as promptly as possible, advise the Retrocessionaire of specific cases involving unusual circumstances or large loss possibili-ties.

B.  All payment of claims made by the Company will be binding upon the Retrocessionaire. However, the Retrocessionaire may, at its own expense, participate in an advisory capacity in the defense of any claim.

C.  The Retrocessionaire shall receive its proportionate share of all salvages received by the Company.

## ARTICLE IX

**Original Conditions**

All reinsurance falling under this Contract shall be subject to the same rates, terms, conditions and waivers, and to the same modifications, alterations and cancelments as the respective reinsurance certificate of the Company. The Retrocessionaire shall be credited with its exact proportion of the premiums received by the Company prior to any disbursement of dividend.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 7 -

## ARTICLE X

### Errors and Omissions

The position of the Company shall not be prejudiced by any error or omission in reporting cessions or cancellations under this Contract or in claiming losses collectible hereunder.

## ARTICLE XI

### Access to Records

The Retrocessionaire by its duly appointed representatives shall have the right at any reasonable time to examine all papers in the possession of the Company referring to business effected hereunder.

## ARTICLE XII

### Insolvency

A.  In the event of the insolvency of the reinsured Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Retrocessionaire of the pendency of a claim against the Company indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Retrocessionaire within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Retrocessionaire may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses that it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Retrocessionaire shall be chargeable, subject to the approval of the Court, against the Company as part of the expense of the conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Retrocessionaire.

B.  Where two or more retrocessionaires are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Contract as though such expense had been incurred by the Company.

- 8 -

C. It is further understood and agreed that, in the event of insolvency of the Company, the reinsurance under this Contract shall be payable directly by the Retrocessionaire to the Company or to its liquidator, receiver or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the Contract specifically provides another payee of such reinsurance in the event of the insolvency of the Company and (b) where the Retrocessionaire with the consent of the direct insured or insureds has assumed such policy obligations of the Company as direct obligations of the Retrocessionaire to the payees under such policies and in substitution for the obligations of the Company to such payees.

## ARTICLE XIII

### Arbitration

A. As a condition precedent to any right of action hereunder, in the event of any dispute or difference of opinion hereafter arising with respect to this Contract, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration. One Arbiter shall be chosen by the Company, the other by the Retrocessionaire, and an Umpire shall be chosen by the two Arbiters before they enter upon arbitration, all of whom shall be active or retired disinterested executive officers of insurance or reinsurance companies. In the event that either party should fail to choose an Arbiter within 30 days following a written request by the other party to do so, the requesting party may choose two Arbiters who shall in turn choose an Umpire before entering upon arbitration. If the two Arbiters fail to agree upon the selection of an Umpire within 30 days following their appointment, each Arbiter shall name three nominees, of whom the other shall decline two, and the decision shall be made by drawing lots.

B. Each party shall present its case to the Arbiters within 30 days following the date of appointment of the Umpire. The Arbiters shall consider this Contract as an honorable engagement rather than merely as a legal obligation and they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of the Arbiters shall be final and binding on both parties but failing to agree, they shall call in the Umpire and the decision of the majority shall be final and binding upon both parties.

C. If more than one retrocessionaire is involved in the same dispute, all such retrocessionaires shall constitute and act as one party for purposes of this Article and communications shall be made by the Company to each of the

- 9 -

retrocessionaires constituting one party, provided, however, that nothing herein shall impair the rights of such retrocessionaires to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the retrocessionaires participating under the terms of this Contract from several to joint.

D.  Each party shall bear the expense of its own Arbiter, and shall jointly and equally bear with the other the expense of the Umpire and of the arbitration. In the event that the two Arbiters are chosen by one party, as above provided, the expense of the Arbiters, the Umpire and the arbitration shall be equally divided between the two parties.

E.  Any arbitration proceedings shall take place at New York, New York.

### ARTICLE XIV

Unlicensed Retrocessionaires

Retrocessionaires not registered or licensed in the State of New York agree to receive premiums on an earned basis and to deposit with the Company the proportionate share of outstanding losses in either cash, securities or Letter of Credit acceptable to the Company. Such request shall be completed within ten (10) days after notification.

### ARTICLE XV

Commencement and Termination

A.  This Contract shall become effective at 12:01 A.M., July 1, 1973, with respect to business issued or renewed at or after that time and date, and shall remain in force until terminated as provided in paragraph B.

B.  Either party may terminate this Contract at any December 31 by giving to the other party not less than ninety (90) days prior notice by registered letter, stating the effective time and date of termination.

C.  Unless otherwise mutually agreed, reinsurance hereunder shall remain in full force and effect on all business in force at the effective time and date of termination until expiration, cancellation, or next premium anniversary date of such business, but in no event exceeding twelve (12) months following the date of termination. However, the Company may, by notifying the Retrocessionaire prior to the date of termination, exercise

- 10 -

the option of reassuming the in force liability at the date of termination
Should this option be exercised, the Retrocessionaire shall return to the
Company the unearned premium at the date of termination, computed on
a monthly pro rata basis, less a ceding commission equal to the following:

Acquisition cost, determined by dividing the commission paid for the last
twelve (12) months by the premiums written for the last twelve (12) months.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

<u>U.S.A.</u>

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.***

I. It is agreed that the policy does not apply under any liability coverage, to { injury, sickness, disease, death or destruction, with respect to which an insured under { bodily injury or property damage the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
    (a) become effective on or after 1st May, 1960, or
    (b) become effective before that date and contain the Limited Exclusion Provision set out above;
provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:
Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)
shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.***

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to { injury, sickness, disease, death or destruction { bodily injury or property damage
    (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to { immediate medical or surgical relief, to expenses incurred with respect { first aid. to { bodily injury, sickness, disease or death { bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to *injury, sickness, disease, death or destruction* bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the *injury, sickness, disease, death or destruction* bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories, or possessions or Canada, this exclusion (c) applies only to *injury to or destruction of property at such nuclear facility.* property damage to such nuclear facility and any property thereat.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*With respect to injury to or destruction of property, the word "injury" or "destruction"* "property damage" *includes all forms of radioactive contamination of property.* includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Reassured on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

---

*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

21/9/67
N.M.A. 1590

CANADA

## NUCLEAR INCIDENT EXCLUSI... CLAUSE—LIABILITY—REINSURANCE

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

1. This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsuror of any such member, subscriber or association.

2. Without in any way restricting the operation of paragraph 1 of this clause it is agreed that for all purposes of this reinsurance all the original liability contracts of the Reassured, whether new, renewal or replacement, of the following classes, namely,

Personal Liability,
Farmers Liability,
Storekeepers Liability,

which become effective on or after 31st December 1962, shall be deemed to include, from their inception dates and thereafter, the following provision:—

Limited Exclusion Provision

This Policy does not apply to injury, sickness, disease, death, damage or destruction with respect to which an Insured under this Policy is also insured under a contract of nuclear energy liability insurance (whether the Insured is named in such contract or not and whether or not it is legally enforceable by the Insured) issued by the Nuclear Insurance Association of Canada or any other group or pool of insurers or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability.

With respect to property, loss of use of such property shall be deemed to be damage to or destruction of property.

3. Without in any way restricting the operation of paragraph 1 of this clause it is agreed that for all purposes of this reinsurance all the original liability contracts of the Reassured, whether new, renewal or replacement, of any class whatsoever (other than Personal Liability, Farmers Liability, Storekeepers Liability or Automobile Liability contracts), which become effective on or after 31st December 1962, shall be deemed to include, from their inception dates and thereafter, the following provision:—

Broad Exclusion Provision.

This Policy does not apply to injury, sickness, disease, death, damage or destruction

(a) with respect to which an Insured under this Policy is also insured under a contract of nuclear energy liability insurance (whether the Insured is named in such contract or not and whether or not it is legally enforceable by the Insured) issued by the Nuclear Insurance Association of Canada or any other group or pool of insurers or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability, or

(b) resulting directly or indirectly from the nuclear energy hazard arising from:
(1) the ownership, maintenance, operation or use of a nuclear facility by or on behalf of an Insured;
(2) the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; and
(3) the transportation, consumption, possession, handling, disposal or use of radioactive material (other than radioisotopes away from a nuclear facility) sold, handled, used or distributed by an Insured.

As used in this Endorsement:

(i) The term " nuclear energy hazard " means the radioactive, toxic, explosive or other hazardous properties of radioactive material;

(ii) The term " radioactive material " means uranium, thorium, plutonium, neptunium, their respective derivatives and compounds, radioactive isotopes of other elements and any other substances that the Atomic Energy Control Board may, by regulation, designate as being prescribed substances capable of releasing atomic energy, or as being requisite for the production, use or application of atomic energy;

(iii) The term " nuclear facility " means:
(a) any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of plutonium, thorium and uranium or any one or more of them;
(b) any equipment or device designed or used for (i) separating the isotopes of plutonium, thorium and uranium or any one or more of them, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging waste;
(c) any equipment or device used for the processing, fabricating or alloying of plutonium, thorium and uranium or any one or more of them if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste radioactive material;
and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations.

(iv) With respect to property, loss of use of such property shall be deemed to be damage to or destruction of property.



## CANCELLATION ADDENDUM

### INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY AGREED by and between GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New York, N.Y., and

**ARGONAUT INSURANCE COMPANIES, Menlo Park, California**

(hereinafter referred to as the "Subscribing Retrocessionaire") that the Sub-scribing Retrocessionaire's **7.5** % (**seven point five percent** ---------------- ) share in the interests and liabilities of the "Retrocessionaire", as set forth in the attached Contract entitled "FIRST SURPLUS FACULTATIVE CASUALTY RETROCESSION CONTRACT", shall be cancelled effective at midnight December 31, 1975.

In accordance with Article XV, paragraph C, second sentence, the Subscribing Retrocessionaire shall be relieved of all liability for business in force at the date of termination against return of the unearned premium, but shall be liable for all losses occurring on or before the date of termination until their final settlement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates under-mentioned.

At New York, N.Y., this **16th** day of **March,** 1976

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice President                    Vice President & Secretary

and at *Menlo Park, Ca.* this *22ND* day of *March,* 1976

_____          _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

## INTERESTS AND LIABILITIES AGREEMENT

### IT IS HEREBY AGREED

by and between

**GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH**
**New York, N.Y.**

and

**ARGONAUT INSURANCE COMPANIES, Menlo Park, California**

(hereinafter referred to as the "SUBSCRIBING RETROCESSIONAIRE")

that the SUBSCRIBING RETROCESSIONAIRE shall have a **7.5%** share in the interests and liabilities of the "Retrocessionaire" as set forth in the attached Contract entitled:

**FIRST SURPLUS FACULTATIVE CASUALTY**
**RETROCESSION CONTRACT**
**Effective: July 1, 1973**

This Agreement shall become effective at July 1, 1973, and shall continue in force until terminated in accordance with the provisions of the attached Contract.

The share of the SUBSCRIBING RETROCESSIONAIRE in the interests and liabilities of the Retrocessionaire with respect to said Contract shall be separate and apart from the shares of the other retrocessionaires and the interests and liabilities of the SUBSCRIBING RETROCESSIONAIRE shall not be joint with those of the other retrocessionaires and the SUBSCRIBING RETROCESSIONAIRE shall in no event participate in the interests and liabilities of the other retrocessionaires.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement in duplicate as of the dates undermentioned at:

New York, N.Y., this        25th           day of    October                1973

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____                    _____
Vice President                              Vice President & Secretary

and at Menlo Park this 28th        day of November        1973

_____
GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

**Bailey, Rebecca**

**From:** NANANDED@aol.com
**Sent:** Wednesday, March 29, 2006 4:47 PM
**To:** Hajost, Theresa W.; Jleonard@budd-larner.com; Vpallotto@budd-larner.com
**Cc:** abrotter@socal.rr.com; deputy@iicil.org
**Subject:** (no subject)

In the Matter of the Arbitration Between

Global Reinsurance Corporation - U.S. Branch,

                            Petitioner,

    - and -

Argonaut Insurance Company,

                            Respondent.

The Panel, having considered the submissions and arguments of Counsel hereby adopts the following Order:

## CONFIDENTIALITY ORDER

1. The parties bound by this Order are:

     a. Global Reinsurance Corporation - U.S. Branch ("Global") and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

     b. Argonaut Insurance Company ("Argonaut") and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

2. Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, the Panel orders that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Order will remain in effect even after conclusion of the arbitration proceedings.

3. Disclosure of Arbitration Information may be made: (a) to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings and/or in connection with other arbitrations between the parties; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. Any disclosures pursuant to subparagraphs (a) or (c) shall be accompanied by a copy of this Confidentiality Order and an instruction to any recipient to maintain the confidentiality of all Arbitration Information. In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed. If any party is requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other as soon as possible after the subpoena, discovery request or court order is received. In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4. For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

     a. the arbitration panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

     b . counsel for a party or employees of counsel's law firm who are assisting counsel;

     c. employees and agents of the parties for purposes consistent with this order;

     d. any party's deposition or trial witness;

     e. any person retained by counsel for a party to assist in this arbitration; provided, however that such person shall agree to be bound by the terms of this Confidentiality Order as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A; or

f. any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Order as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A.

5. If a party is requested or required to disclose Arbitration Information, subject to applicable legal restrictions, that Party will: 1) notify the other party in writing as soon as possible after the subpoena, request or court order is received, to permit the other party to seek legal protection against any such disclosure; and 2) tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand. Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or court order to the extent required by law. If requested by any other party, the obligated party will cooperate (at the expense of the requesting other party) in the defense of a demand.

6.    The Parties recognize that serious Injury could result to any Party and its business if the other Party breaches its obligation under this Order. Therefore, each Party will be entitled to seek a restraining order, injunction or other equitable relief if another Party breaches its obligations under this Order in addition to any other remedies and damages that would be available at law or equity.

Members of the Panel:


Arbitrator:    Arthur Brotter


Arbitrator:    Richard L. White


Umpire:    Edmond F. Rondepierre
    -
    -
    -
Dated: 29 March 2006