# Exhibit C
# Part 1

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

| | |
|---|---|
| ARGONAUT INSURANCE COMPANY ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| - against - ) | Index No.: 602016/2007 |
| ) | |
| GLOBAL REINSURANCE ) | |
| CORPORATION – U.S. BRANCH ) | |
| ) | |
| Respondent ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO STAY ARBITRATION OR FOR ALTERNATIVE RELIEF**

## TABLE OF CONTENTS

Page

PREMLIMINARY STATEMENT    ...........................................................    1

STATEMENT OF FACTS    ...........................................................    1

ARGUMENT    ...................................................................................    5

CONCLUSION    ...............................................................................    16

i

## PRELIMINARY STATEMENT

Argonaut Insurance Company, by its attorneys, Halloran & Sage, LLP, respectfully submits this memorandum of law in support of its petition pursuant to N.Y. C.P.L.R. 7510 and 7514 to permanently stay the arbitration demanded by Global Reinsurance Corp. – US Branch or, in the alternative, to disqualify the arbitrator appointed by Global Reinsurance Corp. – US Branch.

## STATEMENT OF FACTS

Argonaut Insurance Company ("Argonaut") and Global Reinsurance Corporation – U.S. Branch ("Global") (or their predecessors in interest) entered into two quota share retrocessional reinsurance contracts numbered QS31/4158, effective July 26, 1963 through December 31, 1965, and QS73/6103, effective July 1, 1973 through December 31, 1975 (hereinafter the "Retrocessional Agreements").   True and correct copies of the Retrocessional Agreements are attached to the Affidavit of Christopher Hollender ("Hollender Aff.") as Exhibit Nos. 3 (Q31/4158) and 4 (QS73/6103) respectively.

By demand dated December 30, 2004, and amended demand dated January 10, 2005, Global initiated arbitration (the "Quota Share Arbitration") under the Retrocessional Agreements seeking payment of amounts that Global had ceded to Argonaut arising from payments Global had made to members of the American International Group ("AIG") and to The Home Insurance Company ("Home") in commutation of its contracts with those entities.  Global's commutations with those entities extinguished "all current and future exposures"

for any claims that those entities might develop and for which they might seek reimbursement from Global under various reinsurance contracts that Global had issued to AIG and/or Home.   (See Hollender Aff. ¶3, Ex.1).  Global's arbitration demand stated it was seeking to arbitrate "all disputed issues relating to the U.S. Branch's claims for payments of outstanding retrocessional balances owed it by Argonaut in connection with U.S. Branch's commutations with its cedents, the American International Group Companies ("AIG") and Home Insurance Company ("Home")."  (See Hollender Aff. ¶4, Ex.2).

During the Quota Share Arbitration, the parties exchanged documents, took depositions and filed pre-hearing briefs.  (See Hollender Aff. ¶9).  An evidentiary hearing was held in New York, New York, on December 11 – 15, 2006, during which both parties submitted argument, exhibits, as well as fact and expert witness testimony to the Panel.  (See Hollender Aff. ¶10.)  After deliberation, on January 10, 2007, the umpire on behalf of a majority of the Panel issued a written award ("Quota Share Award"). (See Hollender Aff. ¶12; Ex. 7.) The Panel ruled:

> Having considered the submissions and arguments of Counsel, the testimony of witnesses at the hearing and the record in this arbitration a majority of the Panel rules as follows:
>
> The commutation payments that Gerling seeks to cede to Argonaut are not claims, losses nor settlements within the terms or the meaning of the retrocessional agreements. The agreements make no provision for claims submitted in bulk or blanket form, nor for payments on a non risk – specific basis or an estimated basis. The agreements provide no authority for the unilateral acceleration of the retrocessionaires obligations. Argonaut is not required to pay the amounts sought by Global in this arbitration.

> This order does not alter Argonaut's obligations under the retrocessional agreements. Argonaut may be obligated to pay claims submitted in the form required by those agreements.

(Id.)

Global's party-appointed arbitrator, Richard L. White, issued a dissenting opinion. (Id.)

On February 12, 2007, Global submitted a motion asking the Panel to "clarify" the Quota Share Award. Hollender Aff. ¶8. On March 1, 2007, the Panel responded that, "[b]arring mistake or ambiguity, the Panel lacks authority to 'clarify' its order." (See Hollender Aff. ¶8; Ex. 8.) The Panel went on to state that, "the order clearly and accurately states the conclusions reached by the Panel." (Id.) Richard L. White again issued a dissenting opinion, which stated in part that his dissent from the Panel's Award "did not mean that relief from the responsibility by virtue of the Panel's Award, permanently relieved Argonaut of responsibility for the actual value of the AIG and Home future claim payments and settlements billed by Global pursuant to the provisions of the Retrocessional Agreements." (Id.)

Global has not challenged the Quota Share Award in court. (Hollender Aff. ¶14.) The statutory time for Global to challenge the Quota Share Award has run. N.Y. C.P.L.R. 7510 and 7514. Argonaut is filing a Petition to Confirm the Quota Share Award concurrently with these papers.

On March 14, 2007, Global served another arbitration demand under the Quota Share contracts seeking again to recover from Argonaut a portion of the payments it had made to AIG and Home in its commutations with those entities.

(See Hollender Aff. ¶15, Ex. 9.)  Global's March 14, 2007 demand listed the

following issues for arbitration:

1. Whether, pursuant to the 10 January 2007 Award in the Quota Share Arbitration between the parties, U.S. Branch is entitled to bill Argonaut in the future as claims actually develop on the underlying reinsurance agreements between U.S. Branch and AIG and between U.S. Branch and Home;

2. Whether Argonaut is obliged to process and pay such billings in accordance with the Protocols attached hereto; and

3. Whether Argonaut acted in bad faith by asserting that (a) the 10 January 2007 Award means that U.S. Branch is forever and conclusively foreclosed from seeking any recovery from Argonaut under the retrocessional agreements for any loss of any kind relating to AIG or Home, and (b) it is not obliged to process and pay AIG and Home-related billings in accordance with the Protocols.

(Id.)

On April 11, 2007, Argonaut specifically reserved its rights to contest the

arbitrability of the issues in Global's March 14, 2007 demand, while appointing

Paul C. Thomson, III as its party-appointed arbitrator in order to preserve its

rights.  (Hollender Aff. ¶16, Ex. 10.)  On April 26, 2007, Global appointed Richard

L. White as its arbitrator again. (Hollender Aff. ¶17, Ex. 11.)   On May 14, 2007,

Argonaut sent a letter to Global continuing to reserve its rights as to the

arbitrability of Global's second arbitration demand on the Quota Share contracts,

advising that Richard L. White was not an appropriate arbitrator selection, and

demanding that Global name a new arbitrator within thirty days.  (Hollender Aff.

¶18, Ex. 12.)  Argonaut's letter stated that, in accordance with the terms of the

contracts, it would appoint an arbitrator for Global if Global did not do so.

Argonaut's letter also continued to reserve its rights to have a court determine

the arbitrability of Global's second arbitration demand. (Id.)  On June 15, 2007,

Argonaut appointed Ronald S. Gass to serve as Global's arbitrator. (Hollender

Aff. ¶20, Ex. 15.)

## ARGUMENT

I.    **GLOBAL'S March 14, 2007 Arbitration Demand is Barred by Res Judicata**

### A. The Elements of Res Judicata are Clearly Satisfied.

There were two contracts at issue in the Quota Share arbitration.

Contract number QS31/4158 provides that the decision "shall be final and

binding on both parties and not subject to appeal."  QS73/6103 states that the

decision of the arbitrators is "final and binding upon both parties."  Global's

arbitration demand stated it was seeking to arbitrate "all disputed issues relating

to the U.S. Branch's claims for payments of outstanding retrocessional balances

owed it by Argonaut in connection with U.S. Branch's commutations with its

cedents, the American International Group Companies ("AIG") and Home

Insurance Company ("Home")."  An arbitration panel was selected, document

and deposition discovery was conducted by the parties, the parties filed pre-

hearing briefs, a four and one half day evidentiary hearing, with both fact and

expert witnesses, was held before the arbitration panel and the panel issued a

written, reasoned award on the recoverability of the amounts paid by Global for

its commutations with AIG and Home.  That award is final and binding on the

parties.

The U.S. District Court for the Southern District of New York addressed the application of res judicata to a second arbitration demand arising out of the same transaction as a previously concluded arbitration in *In Re: Arbitration betw. Burmah Oil Tankers v. Trisun Tankers*, 687 F.Supp. 897 (S.D.N.Y. 1988).

In *Burmah*, the parties had arbitrated, pursuant to a charter party contract, the alleged conversion of 9,000 barrels of oil during a 1984 charter. Trisun had demanded arbitration because Burmah had refused to pay freight on the oil that it alleged Trisun had converted, and Burmah counterclaimed for the conversion of the oil. Following the confirmation of an award in favor of Burmah, Trisun demanded arbitration for unpaid demurrage arising out of the same charter.[1] Just as in this case, upon receipt of the arbitration demand, Burmah appointed an arbitrator while reserving its rights to oppose arbitration, and then moved for a permanent stay of the second arbitration, arguing that the first arbitration award comprised all rights and obligations under the charter party contract. *Id.* at 898.

The court first addressed the jurisdictional question, and concluded that – even in a Federal Court which must adhere to the Federal Arbitration Act – a petition to stay arbitration falls within the general equity power of the court, reasoning that since a "federal court may enjoin state court actions that threaten to relitigate and impair a federal judgment... [i]t would be incongruous if the federal court could not exercise the same power to protect judgments against later arbitration proceedings." *Burmah*, 687 F.Supp. at 899.

The *Burmah* court set forth the standard for res judicata as follows:

---

[1] Demurrage payments are payments made by the charterer to the owner of a vessel for delays in loading or unloading the charterer's cargo. *Id.* at 900.

6

The modern test for determining whether causes of action are the same for purposes of res judicata is the "transactional approach" adopted by the Restatement (Second) of Judgments § 24 (1981): Dimensions of "Claim" for Purposes of Merger or Bar--General Rule Concerning "Splitting"
(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claims pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
(2) What factual grouping constitutes a "transaction," and what grouping constitutes a "series," are to be determined pragmatically, giving weight to such considerations as to whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Addressing the merits and applying the transactional test cited above, the *Burmah* court reasoned that the "key question for our consideration, then, is whether Trisun's demurrage claim constitutes part of the same cause of action as its claim against Burmah for withheld freight and Burmah's counterclaim for conversion.... If so, then Trisun's attempt to arbitrate demurrage claims separately splits its cause of action and should be stayed." *Id.* at 899.

The *Burmah* court also noted that despite a trend towards the transactional approach that it applied, some courts still use other tests. Other standards, which the court ruled would have been met by Burmah, and clearly would also be met in our case, include "whether a different judgment in the second action would impair rights or interests created by the first judgment, whether the same evidence is necessary to support both claims, and whether the essential facts in the second were present in the first." *Id.* at 901 (internal cites omitted). Global's second arbitration demand would clearly impair the first

judgment. Global's second arbitration demand for the same commutations under the same contracts is an attempted "end-around" for Global to recover balances that the Quota Share panel stated were not recoverable. Global's second arbitration demand also asks for reformation of the contracts, which the Quota Share panel specifically stated remained unchanged. It is undisputed that the same evidence would need to be presented by Global to support its first and second demands, and that the essential facts would be nearly identical – the only difference being the form of relief requested – relief which Global could have requested in the first arbitration proceeding.

Because "the facts are 'related in time, space, origin, or motivation,' because they arise out of the same document and same transaction previously examined at length by the arbitrators," and noting that "[i]n contract disputes involving two claims under the same contract, the parties would be required to litigate both claims in the same cause of action," the court granted Burmah's motion and permanently stayed the arbitration. *Id.* at 900.

The relief requested in Global's first and second arbitration demands are even more difficult to separate than the two different categories of damages sought by Trisun. Global is essentially demanding the *same* relief that it was denied by the Quota Share panel, only using a different theory or strategy to reach it in the second arbitration.

> 1.   The identical issues were decided in the Quota Share arbitration.

Global's first arbitration demand was broad and encompassed "all disputed issues relating to the U.S. Branch's claims for payments of outstanding

retrocessional balances owed it by Argonaut in connection with U.S. Branch's commutations with its cedents, the American International Group Companies ("AIG") and Home Insurance Company ("Home")." (Hollender Affidavit ¶4, Ex. 2.) In its second arbitration demand Global is again seeking to recover a portion of its commutation payments to AIG and Home. In its demand, Global has raised a subset of the issues that it did bring or could have brought before the Quota Share Arbitration panel.

The Court need to inquire no further than to compare the two arbitration demands. Both demands arise under the same contracts. (*Cf.* Hollender Aff. ¶4, Ex. 2 with ¶15, Ex. 9.) In its first demand Global is seeking to recover from Argonaut under the same contracts, portions of the commutation amounts it paid to AIG and Home. In the first arbitration, Global sought to arbitrate "all disputes" arising out of its commutation payments to AIG and Home. Global's second arbitration demand, seeks again to recover a portion of its commutation payments to AIG and Home under the same quota share contracts at issue in the first arbitration. Global cannot pursue serial arbitrations seeking to recover portions of its commutation payments to AIG and Home. Global has already had a full and fair opportunity to pursue those balances in the first Quota Share arbitration. The Quota Share Arbitration panel has ruled that "there is no mistake or ambiguity and that the order clearly and accurately states the conclusions reached by the Panel." (Hollender Aff. ¶13, Exh. 8). Nor did Global challenge the Quota Share Award in court within the statutory time period for such a challenge. (Hollender Aff. ¶14.) That award is "final and binding" on Global and

Argonaut and not subject to appeal, under the terms of the contracts between the parties. The Court may end its analysis here; however, in the event the Court would like to look further into the proceedings in the Quota Share arbitration, below is an analysis of how each of the "issues" in Global's second arbitration demand were addressed, or could have been had Global raised them, in the first arbitration.

### B. The Issues Global Seeks to Arbitrate in Its Second Demand Were Before the First Panel, or Could Have Been Raised Before the First Panel

Global's first issue is "[w]hether, pursuant to the 10 January 2007 Award in the Quota Share Arbitration between the parties, U.S. Branch is entitled to bill Argonaut in the future as claims actually develop on the underlying reinsurance agreements between U.S. Branch and AIG and between U.S. Branch and Home." The issue of future billings on such potential future claims was addressed at the Quota Share hearing. (Hollender Aff. ¶11; Ex. 6.)[2] Not only was Global's first "issue" raised at the arbitration, it was rejected by Global prior to the arbitration demand, and dismissed by Global as "not realistic" at the arbitration hearing. (Id.) Global made a conscious decision *not* to pursue this form of relief.

The second "issue" raised by Global is "[w]hether Argonaut is obliged to process and pay such billings in accordance with the Protocols attached" to its arbitration demand. This is a rehash of Global's first issue, as the "protocols" are designed to set forth Global's non-negotiated unilateral framework for reformation

---

[2] Subsequent to the Quota Share Arbitration, Global demanded payment for some of same billings that were before the Quota Share Panel. (Hollender Aff. ¶19, Ex. 13.) Argonaut has declined to pay those billings. (Id. at ¶19, Ex. 14.)

of the contracts to implement Global's first "issue." Since res judicata precludes

the re-litigation of Global's first "issue," the second "issue" becomes moot.

Further, the relief sought by Global in the "protocols" is of a nature that exceeds

the power of an arbitration panel. Absent agreement of the parties to submit

reformation to the panel, a panel exceeds the scope of its authority by reforming

rather than interpreting the contract containing the arbitration clause from which

their power arises. *Reliastar Life Ins. Co. of New York v. EMC National Life Ins.

Co.*, No. 06 Civ. 10186 (LAK), (S.D.N.Y., February 18, 2007).

Global's third and final issue is "[w]hether Argonaut acted in bad faith by

asserting that (a) the 10 January 2007 Award means that U.S. Branch is forever

and conclusively foreclosed from seeking any recovery from Argonaut under the

retrocessional agreements for any loss of any kind relating to AIG or Home, and

(b) it is not obliged to process and pay AIG and Home-related billings in

accordance with the Protocols." Because the first issue was decided in the

Quota Share arbitration, and because the second issue was also accordingly

argued and decided, and otherwise not arbitrable, an arbitration panel could not

reach the third issue.

A New York state court recently applied the "identical issues" prong of a

collateral estoppel analysis where a party to an arbitration challenged the opinion

of a neutral appraiser on which the arbitration decision relied[3]. In *Davison v.

Margolin Winer & Evans, LLP*, 2007 WL 703108, Slip Copy, 14 Misc.3d 1240(A)

(N.Y. Sup., Nassau Cty., March 8, 2007) the underlying arbitration was brought

---

[3] Although the cited case is a collateral estoppel case, and not a res judicata case, the due process aspect of the analysis is analogous to the instant matter.

seeking the dissolution of a medical practice.  After the parties' appraisers concluded vastly different amounts for value of the goodwill of the practice, the arbitrator appointed a third-party appraiser.  After the arbitration, one of the parties challenged the third-party appraiser's qualifications and methods in a malpractice suit against the appraiser.

The court ruled that collateral estoppel barred the suit, stating that "the place to make this argument was before the arbitrator," and that the case was "nothing more than a collateral attack on the arbitration award."  The court reasoned that the complaining party "had a full and fair opportunity to litigate this issue in the arbitration and … is collaterally estopped from relitigating these issues in this malpractice action."

Similarly, even though Global may argue that the "identical" issues were not argued because it did not seek its "protocols" at the arbitration, that argument is not applicable, because Global had a "full and fair opportunity" to arbitrate any relief if sought at the arbitration, just as it had an opportunity to pursue such an avenue prior to demanding arbitration.

2.    Global had a full and fair opportunity to assert its arguments in the prior arbitration.

The party challenging the application of res judicata or estoppel bears the burden of showing that it did not have a full and fair opportunity to assert its arguments at arbitration.  *See, e.g., Harper v. National Kidney* Foundation, 2005 WL 43774 (W.D.N.Y. 2005).  Global cannot show that it did not have such an opportunity.

As stated above, Global was presented with the possibility of continued billings by Argonaut's offer in a letter dated October 22, 2004.  Global rejected this offer and demanded arbitration.  At the arbitration, Global's Vice President of Claims, Barry Keogh, testified regarding the concept of continued billings, and specifically that Global did not consider the possibility, and that it was not feasible.  (Hollender Aff. ¶11, Ex. 6.)  Global had full opportunity to ask several questions regarding the concept in its cross-examination of Argonaut witnesses, and spoke of the worthlessness of the concept to Global in its closing statement. (Hollender Aff. Ex. 6.)

### B. **This Court has the Authority to Permanently Stay the Arbitration.**

The Southern District of New York has stated unequivocally that "an asserted res judicata bar is appropriate for consideration by the court in a motion to compel (or to stay) arbitration." *National Shipping & Trading Corp. v. Buck Shipping International Ltd.*, 1985 WL 495 (S.D.N.Y. 1985) (court declined to apply res judicata argument because specific disputes were not addressed in prior arbitration).  The Southern District followed this decision in *Burmah, supra*.

### II. **If the Arbitration Commences, Arbitrator White Should be Disqualified from Serving on the Panel**

A.   It is appropriate for the Court to address a pre-arbitration petition to disqualify an arbitrator.

As a threshold matter, it is appropriate for the Court to address prior to an arbitration the issue of whether an arbitrator should be permitted to serve rather than wait until after the arbitration has concluded.  Under New York law, where a party to an arbitration becomes aware of a reason that an arbitrator should not be

13

permitted to serve, the court should exercise its equitable jurisdiction at any time during the proceeding, rather than require the party to wait for the award, and then move to vacate. *Jules Belanger v. State Farm Mutual Auto. Ins. Co.*, 74 A.D.2d 938 (Sup. Ct. App. Div. 3d Dep. 1980). The same outcome was more recently reached in *Matter of Excelsior 57th Corp. (Kern)*, 218 A.D.2d 528, 630 N.Y.S.2d 492 (1995), in which the Appellate Division reversed the Supreme Court's dismissal of a Motion to Stay an arbitration and remove an arbitrator who had "displayed extreme partisanship with respect to the issues still to be determined in [the] arbitration." *In Re Excelsior,* 218 A.D.2d at 530. In that case, the court exercised its "inherent power to disqualify an arbitrator before an award has been rendered ... where there is 'a real possibility that injustice will result.'" *Id., quoting Matter of Astoria Med. Group [Health Ins. Plan]*, 11 N.Y.2d at 137, 227 N.Y.S.2d 401 and *Matter of Siegel (Lewis)*, 40 N.Y.2d 687, 691, 389 N.Y.S.2d 800. *Accord Nat. Union Fire Ins. Co. of Pittsburgh v. Dyneer Corp.,* 798 N.Y.S.2d 346 (Sup. Ct. New York County 2004) (Court has power to disqualify an arbitrator in advance of the arbitration proceedings.); *Uniformed Firefighters Assoc., Local 287 v. Long Beach*, 762 N.Y.S.2d 819, 307 A.D.2d 365 (Sup. Ct. App. Div. 2d Dept. 2003) (The Supreme Court has the discretion to consider an application challenging bias of the arbitrator during the pendency of arbitration proceeding) *citing Blistein v. Felderman*, 154 A.D.2d 416, *Shalatsk v. England*, 248 A.D.2d 373; *Santana v. Country-Wide Ins. Co.,* 675 N.Y.S.2d 817 (Civil Ct., City of N.Y. 1998) ("It is well settled that a party wishing to object to an

arbitrator's purported partiality should do so immediately and not wait for the award.")

The merits of this issue were recently addressed by the Supreme Court of Wisconsin, which arrived at the same conclusion because "pre-arbitration challenges promote efficiency in the arbitration process when a party reasonably objects to the use of an arbitrator selected by the opposing party...." *Borst v. Allstate Insurance Co.*, 717 N.W.2d 42, 52 (Wisc. 2006). Other courts have also entertained pre-hearing challenges to arbitrators. *See, e.g., Evanston Ins. Co. v. Kansa General Int'l Ins. Co.,* No. 94-C-4957 (N.D. Ill. Oct. 17, 2004); *Metro. Prop. & Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co.,* 780 F.Supp. 885 (D. Conn. 1991); *Hartford Steamboiler Inspection Co. v. Industrial Risk Insurers,* No. CV94-705105, 1995 WL 645971 (Conn. Super. Ct. Oct. 26, 1995).

    B.    Richard L. White should be disqualified because he will be unable to hear and examine the matters in controversy without partiality.

Argonaut means no disrespect in its challenge to Mr. White's service as an arbitrator in this matter; however, it would take super-human powers to view without partiality the future application of an award on which he entered two dissenting opinions. Neither Mr. White, nor Argonaut, should be placed in this situation.

"The standard of review for the disqualification of arbitrators is whether the arbitration process is free of the appearance of bias." *Uniformed Firefighters, supra,* 307 A.D.2d at 365, *quoting Blistein v. Felderman*, 154 A.D.2d 416. As set forth above and below, Arbitrator White's participation in this arbitration would

create such an appearance, as he has already opined, in his dissents on the very issues that Global now seeks to arbitrate.  In Mr. White's second dissent, he clarifies his first dissent as follows: "The Dissent did not mean that relief from the responsibility by virtue of the Panel's Award, permanently relieved Argonaut of responsibility for the actual value of the AIG and Home future claim payments and settlements billed by Global pursuant to the provisions of the Retrocessional Agreements." (See Hollender Aff. ¶13, Ex.8.)  This is exactly the issue that Global seeks to arbitrate in its second arbitration demand:  "Whether, pursuant to the 10 January 2007 Award in the Quota Share Arbitration between the parties, U.S. Branch is entitled to bill Argonaut in the future as claims actually develop on the underlying reinsurance agreements between U.S. Branch and AIG and between U.S. Branch and Home." (See Hollender Aff. ¶15, Ex. 9.)

With respect, Mr. White has already made up his mind on this issue and expressed his opinion in writing.  With facts very similar to those in this case, the *In Re Excelsior (Kern)* court relied upon the party-appointed arbitrator's "comments concerning the prior arbitration … and his precarious position of having already heard the evidence" in determining that "he [could] not fairly hear the evidence" *Id.* at 531.

Under New York law, an arbitrator should be disqualified if he will be unable to "faithfully and fairly hear and examine the matters in controversy [because of] evident partiality." *In Re Excelsior (Kern),* 218 A.D.2d at 531, *quoting Matter of Astoria Med Group [Health Ins. Plan], supra*, 11 N.Y.2d at 137. The *Excelsior* court applied this standard even to a party-designated arbitrator

reasoning that "such arbitrators are [not] excused from ... the obligation to participate in the arbitration process in a fair, honest and good faith manner." *Id.* quoting *Metropolitan Prop. & Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co.*, 780 F.Supp. 885, 892.

As set forth above, Richard White served as an arbitrator in the underlying Quota Share arbitration, the award from which Global seeks to have reviewed in its subsequent arbitration, and issued written dissenting opinions that clearly reflect a predisposition towards the positions Global is advancing in the subsequent arbitration. He has already heard the evidence presented in the Quota Share arbitration, and cannot view a subsequent arbitration with disregard of that evidence, especially in light of the fact that he has already issued written opinions that address the issues that Global seeks to raise in the subsequent arbitration. Further, if Global's arbitration, which seeks to interpret the award of the Quota Share panel, is allowed to go forward in spite of the fact that the issues have already been litigated, Mr. White may be a potential fact witness. If confidentiality concerns prevent Mr. White and the other arbitrators from testifying regarding the deliberations of the Quota Share panel, then it is inherently unfair for Mr. White, with a monopoly on first-hand knowledge of that panel's deliberations, to serve as a party-appointed arbitrator in the subsequent arbitration.

C.   As Global Failed to Name a Replacement For Mr. White Within the Time Period Provided by the Contracts, The Arbitrator Argonaut Named for Global Should Be Named to the Panel.

As set forth above, on May 14, 2007, Argonaut sent a letter to Global continuing to reserve its rights as to the arbitrability of Global's second arbitration demand on the Quota Share contracts, advising that Richard L. White was not an appropriate arbitrator selection, and demanding that Global name a new arbitrator within thirty days. Argonaut's letter stated that, in accordance with the terms of the contracts, it would appoint an arbitrator for Global if Global did not do so. Both contracts provide that if a party does not appoint an arbitrator within 30 days of a demand to do so, the other party may appoint an arbitrator for the non-responsive party. (Hollender Aff. Ex. 3 at Article IX (1) and Ex. 4 at Article XIII (1).) When Global did not appoint a replacement for Mr. White, Argonaut waited several days and on June 15, 2007, Argonaut appointed Ronald S. Gass to serve as Global's arbitrator. (Hollender Aff. ¶20, Ex. 15.) By the terms of the contracts, Mr. Gass should be confirmed as Global's arbitrator.

## Conclusion

For all the foregoing reasons, the Court should enter an Order permanently staying the arbitration proceedings associated with Global's March 14, 2007 demand and should permanently enjoin Global from seeking arbitration regarding the issues resolved by the Quota Share Award. In the absence of such relief, the Court should enter an Order Disqualifying Arbitrator White from serving on the arbitration panel that will hear the arbitration demanded in Global's March 14, 2007 demand letter and confirm the appointment of Ronald S. Gass.

Respectfully submitted,

_____

Dan E. LaBelle
Thomas E. Brennan
HALLORAN & SAGE LLP
315 Post Road West
Westport, CT  06880
(T)    (203) 227-2855
(F)    (203) 227-6992
Counsel for Defendant Argonaut
    Insurance Company

*Of counsel:*
Theresa W. Hajost
Daniel A. Blumenthal
HALLORAN & SAGE LLP
1730 Pennsylvania Avenue, NW
Suite 800
Washington, DC  20006
(T)    (202) 496-9270
(F)    (202) 496-9279

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _____ day of June, 2007, a copy of the foregoing Memorandum of Law was forwarded, postage pre-paid, via First Class mail, to the following:

Jeffrey S. Leonard, Esquire
Budd Larner
150 John F. Kennedy Parkway
CN 1000
Short Hills, NJ  07078-0999
*Counsel for Global Reinsurance Corporation – U.S. Branch*

Global Reinsurance Corporation – U.S. Branch
1345 Avenue of the Americas
New York, New York 10105
(via Certified Mail/Return Receipt Requested)

_____

Dan E. LaBelle
Thomas E. Brennan
HALLORAN & SAGE, LLP
315 Post Road West
Westport, CT  06880
(T)   (203) 227-2855
(F)   (203) 227-6992
*Counsel for Argonaut Insurance Company*

1001939-1(HSFP)

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

---

ARGONAUT INSURANCE COMPANY )
                               )
      Petitioner,         )
                               )
vs.                                )     Index No.: 602 016/2007
                               )
GLOBAL REINSURANCE        )
CORPORATION – U.S. BRANCH   )
                               )
      Respondent      )
                               )

---

### AFFIDAVIT OF CHRISTOPHER HOLLENDER IN SUPPORT OF ARGONAUT'S MOTION TO STAY ARBITRATION OR FOR ALTERNATIVE RELIEF

Christopher Hollender, under penalty of perjury, hereby declares:

1.      My name is Christopher Hollender. I have personal knowledge of the matters contained herein and am competent to testify to the same.

2.      I am a Senior Vice President for Insurance Run-off Consultants, a division of Argonaut Insurance Company ("Argonaut"). I am familiar with the matters contained herein by virtue of my responsibilities at Argonaut, including responsibilities for the Global Reinsurance Corporation – U.S. Branch ("Global") account and the arbitration between Global and Argonaut during the time periods pertinent to the matters discussed herein.

3.      Prior to December 2004, disputes arose between Argonaut and Global concerning the application of certain retrocessional reinsurance agreements between

the parties. The dispute concerned billings ceded by Global to Argonaut for commutation payments that Global had made to members of the American International Group ("AIG") and the Home Insurance Company ("Home"). Global's commutations with those entities extinguished "all current and future exposures" for any claims that those entities might develop and for which they might seek reimbursement from Global under various contracts that Global had issued to AIG and/or Home. A true and correct copy of Global's February 4, 2004 letter is attached hereto as Exhibit 1.

4.      On or about December 30, 2004, Global demanded arbitration against Argonaut, pursuant to the terms of the retrocessional agreements between Global and Argonaut (or their predecessors in interest) (the "Quota Share Arbitration"). *See* Exhibit 2. This demand was amended by Global on or about January 10, 2005. *See* Exhibit 2. Global's arbitration demand stated it was seeking to arbitrate "all disputed issues relating to the U.S. Branch's claims for payments of outstanding retrocessional balances owed it by Argonaut in connection with U.S. Branch's commutations with its cedents, the American International Group Companies ("AIG") and Home Insurance Company ("Home")." The arbitration demand listed five contracts, three of which became the subject of another arbitration. The retrocessional contracts at issue in the arbitration from which Argonaut is seeking to confirm the Final Award were:

- Quota Share QS31/4158

- First Surplus QS73/6103

Copies of the contracts are attached hereto as Exhibits 3 and 4, respectively.

5.      In addition to the Quota Share Arbitration, Argonaut and Global are or have been engaged in four other arbitrations in which Global is seeking the recovery of

amounts that Global ceded to Argonaut in connection with commutation agreements entered into with AIG, Home, and other of Global's reinsureds. Global has named Richard L. White as its party-appointed arbitrator in each of these five arbitrations, including the Quota Share Arbitration.

6.     Each of the retrocessional agreements at issue in the Quota Share Arbitration contains a written provision expressing the parties' agreement to submit disputes under the contracts to binding arbitration. *See* Exhibit 3 at Article IX and Exhibit 4 at Article XIII.

7.     On or about March 9, 2006, Argonaut and Global had an Organizational Meeting before the Arbitration Panel consisting of Mr. Edmond F. Rondepierre, Mr. Richard L. White, and Mr. Arthur Brotter ("the Arbitration Panel," "the Quota Share panel," or "the Panel"). The Panel in the Arbitration was agreed to be duly constituted by stipulation of the parties.

8.     The Panel issued a limited Confidentiality Order in the arbitration. A true and correct copy of that order is attached hereto as Exhibit 5.

9.     Under the Panel's supervision, the parties conducted discovery and presented briefs and evidentiary exhibits to the Panel in furtherance of the resolution of their dispute.

10.     At a four and a half day hearing held in New York, New York, on December 11-15, 2006, both parties submitted argument, exhibits, as well as fact and expert witness testimony to the Panel.

11.     The issue of future billings on potential future claims was discussed and argued at the Quota Share hearing. Exhibit 6 hereto is a true and correct copy of pages from the hearing transcript which contain examples of such discussion and argument.

12.     On or about January 10, 2007, after deliberation, the umpire on behalf of a majority of the Panel issued a written final Arbitration Award. Arbitrator White issued a dissenting opinion. A true and correct copy of the Panel's January 10, 2007 Arbitration Award and Mr. White's dissent is attached hereto as Exhibit 7.

13.     On or about February 12, 2007, Global submitted a motion to "clarify" the Panel's January 10, 2007 Award. The majority of the Panel responded on March 1, 2007 stating that there was no mistake or ambiguity in the award and that the order clearly and accurately states the conclusions reached by the Panel. Richard L. White issued a dissenting opinion to the Panel's response to the motion to clarify. A true and correct copy of the Panel's March 1, 2007 response to Global's motion to clarify and Mr. White's dissent are attached hereto as Exhibit 8.

14.     The January 10, 2007 Final Arbitration Award has not been vacated or modified. As of the date of this Affidavit, Global has not served Argonaut with a court filing seeking to vacate, modify, or correct the January 10, 2007 Final Arbitration Award.

15.     On March 14, 2007, Global again demanded arbitration seeking to recover from Argonaut a portion of the payments it had made to AIG and Home in its commutations with those entities. A true and correct copy of Global's arbitration demand is attached hereto as Exhibit 9.

16.     On April 11, 2007, Argonaut specifically reserved its rights to contest the arbitrability of the issues in Global's March 14, 2007 demand, but appointed Paul C.

Thomson, III as its party-appointed arbitrator in order to preserve its rights. A true and correct copy of Argonaut's April 11, 2007 letter is attached hereto as Exhibit 10.

17.     On April 26, 2007, Global appointed Richard L. White as its arbitrator for the second Quota Share arbitration. A true and correct copy of Global's April 26, 2007 letter is attached hereto as Exhibit 11.

18.     On May 14, 2007, Argonaut sent a letter to Global continuing to reserve its rights as to the arbitrability of Global's second arbitration demand, advising that Richard L. White was not an appropriate selection, and demanding that Global name a new arbitrator within thirty days. A true and correct copy of Argonaut's May 14, 2007 letter is attached hereto as Exhibit 12.

19.     On May 16, 2007, Argonaut received a statement of account from Global demanding payment for some of the same billings that were reported to Global after the commutation. A true and correct copy of this statement of account is attached hereto as Exhibit 13. Global relied upon documentation of losses relating to these billings that was provided to Global after the commutation and before the Quota Share award. Argonaut has declined to pay these billings. Argonaut's letter declining payment is attached hereto as Exhibit 14.

20.     Global did not appoint a replacement arbitrator. On June 15, 2007, Argonaut appointed Ronald S. Gass to serve as Global's arbitrator. A copy of Argonaut's June 15, 2007 letter is attached hereto as Exhibit 15.

I declare under penalty of perjury, pursuant to New York Penal Law Article 210, that the foregoing is true and correct.

Executed on June 15th, 2007

Christopher Hollender
Senior Vice President
Insurance Run-Off Consultants,
A Division of Argonaut Insurance Company

OFFICIAL SEAL
GENEVIEVE B CORPUZ
Notary Public - State of Illinois
My Commission Expires May 31, 2010

Notary Public
My Commission Expires:    6/31/2010

**EXHIBIT 1**

Lawrence M. Lutzak

Assistant Vice President
Claims

**COPY**

GERLING GLOBAL
REINSURANCE CORPORATION OF AMERICA

717 Fifth Avenue
Floor 12A
New York, NY 10022-8101
Telephone:     212-745-0739
Facsimile :     212 267-8197
Facsimile :     212-821 0469
E-Mail: Lawrence_Lutzak@GGRCA.com

February 4, 2004

PRIVILEGED AND CONFIDENTIAL

Argonaut Insurance Company
8750 West Bryn Mawr Ave., Suite 1300
Chicago, IL  60631-3508

Re:  Gerling Global U.S. Branch Retrocessional Loss Billing
     Cedent:  The Home Insurance Company
     Facultative Casualty / First Surplus

Dear Sir/Madam:

     We enclose our reinsurance loss advices dated February 4,
2004 for the above-referenced claim matters.  These loss advices
include your retrocessional share of the commutation that we
recently entered into with The Home Insurance Company that
resulted in Gerling settling all current and future exposures for
eighty-five cents on the dollar on an NPV basis.  The settlement
was allocated on an insured by insured and claim by claim basis
across all of our The Home Insurance Company exposures, based on
a detailed exposure analysis.  The commutation fully resolves
exposures of Gerling Global U.S. Branch and its retrocessionaires
in connection with The Home Insurance Company.  With your payment
of the enclosed billings, all reserves in connection with The
Home Insurance Company exposures through Gerling Global U.S.
Branch may be adjusted to nil.

     We ask that payment be made as soon as possible.

                                   Very truly yours,

                                   Lawrence M. Lutzak
                                   Assistant Vice President

478378.W1

**EXHIBIT 2**

**BUDD LARNER**
A PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

150 JOHN F. KENNEDY PARKWAY, CN 1000
SHORT HILLS, NJ 07078-0999
973.379.4800
FAX 973.379.7734
www.buddlarner.com

Direct Dial: 973-315-4434
E-mail: JLeonard@budd-larner.com

RECEIVED

JAN 0 3 2005

ARGONAUT INSURANCE

December 30, 2004

DEMAND FOR ARBITRATION

BY TELECOPIER AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Argonaut Insurance Co.
c/o Insurance Runoff Consultants
8750 West Bryn Mawr, Suite 1300
Chicago, Illinois  60631

Attention:  Mr. Donald J. Buyck

Re:  In the Matter of the Arbitration Between Gerling
     Global Reinsurance Corp. - U.S. Branch and
     Argonaut Insurance Co.
     Retrocessional billings in respect of AIG and
     Home Commutations
     Excess Per Risk Facultative Casualty Contract
     First Excess Facultative Casualty Contract
     Fourth Excess Facultative Casualty Contract
     First Surplus Contract
     Quota Share Contract

Dear Mr. Buyck:

This firm is counsel to Gerling Global Reinsurance Corp. -
U.S. Branch ("U.S. Branch"), located at 1345 Avenue of the
Americas, New York, New York.  U.S. Branch hereby gives notice of
its intent to arbitrate against Argonaut Insurance Co. ("Argonaut")
all disputed issues relating to U.S. Branch's claims for payments
of outstanding retrocessional balances owed to it by Argonaut in
connection with U.S. Branch's commutations with its cedents, the
American International Group Companies ("AIG") and Home Insurance

NEW YORK         CHERRY HILL         SHORT HILLS         PHILADELPHIA         ATLANTA

ARGO XOL 10005

**BUDD LARNER**
A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
December 30, 2004
Page 2

Company ("Home").  The outstanding balances owed to U.S. Branch by
Argonaut in respect of the AIG commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $491,048.99 |
| First Excess Facultative Casualty Contract | $302,863.55 |
| Fourth Excess Facultative Casualty Contract | $ 37,270.63 |
| First Surplus Contract | $  96,118.81 |
| Total in respect of AIG Commutation | $927,301.98 |

The outstanding balances owed to U.S. Branch by Argonaut in respect
of the Home commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $   692,471.64 |
| Quota Share Contract | $   239,022.79 |
| First Excess Facultative Casualty Contract | $1,402,970.52 |
| Fourth Excess Facultative Casualty Contract | $   26,729.75 |
| First Surplus Facultative Casualty Contract | $   159,457.48 |
| Total in respect of Home Commutation | $2,520,652.18 |
| Grand total in respect of both commutations | $3,447,954.16 |

U.S. Branch will also seek pre-hearing security for the full amount
due and an award of interest, attorney's fees and other appropriate
relief.

Unless Argonaut applies to stay this arbitration within twenty
(20) days after service of this demand, Argonaut shall thereafter
be precluded from objecting that a valid agreement was not made or
has not been complied with and from asserting in court the bar of a
limitation of time.

**ARGO XOL 10006**

**BUDD LARNER**
A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
December 30, 2004
Page 3

U.S. Branch hereby demands that Argonaut appoint and identify
its arbitrator within thirty (30) days. In the event that Argonaut
fails to appoint and identify its arbitrator within that time, U.S.
Branch will appoint Argonaut's arbitrator on its behalf.

Very truly yours,

Jeffrey S. Leonard

JSL/pl:531592w

cc:  Joseph J. Schiavone, Esq.
     Marc I. Bressman, Esq.

**ARGO XOL 10007**

## BUDD LARNER
#### A PROFESSIONAL CORPORATION
#### COUNSELLORS AT LAW

150 JOHN F. KENNEDY PARKWAY, CN 1000
SHORT HILLS, NJ 07078-0999
973.379.4800
FAX 973.379.7734
www.buddlarner.com

Direct Dial: 973-315-4434
E-mail: JLeonard@budd-larner.com

**RECEIVED**

JAN 19 2005

ARGONAUT INSURANCE

January 10, 2005

<u>AMENDED DEMAND FOR ARBITRATION</u>

BY TELECOPIER AND CERTIFIED MAIL
<u>RETURN RECEIPT REQUESTED</u>

Argonaut Insurance Co.
c/o Insurance Runoff Consultants
8750 West Bryn Mawr, Suite 1300
Chicago, Illinois  60631

Attention:  Mr. Donald J. Buyck

Re:  In the Matter of the Arbitration Between Gerling
     Global Reinsurance Corp. - U.S. Branch and
     Argonaut Insurance Co.
     Retrocessional billings in respect of AIG and
        Home Commutations
     Excess Per Risk Facultative Casualty Contract
     First Excess Facultative Casualty Contract
     Fourth Excess Facultative Casualty Contract
     First Surplus Contract
     <u>Quota Share Contract</u>

Dear Mr. Buyck:

     This firm is counsel to Gerling Global Reinsurance Corp. -
U.S. Branch ("U.S. Branch"), located at 1345 Avenue of the
Americas, New York, New York.  U.S. Branch hereby gives notice of
its intent to arbitrate against Argonaut Insurance Co. ("Argonaut")
all disputed issues relating to U.S. Branch's claims for payments
of outstanding retrocessional balances owed to it by Argonaut in
connection with U.S. Branch's commutations with its cedents, the
American International Group Companies ("AIG") and Home Insurance

NEW YORK          CHERRY HILL          SHORT HILLS          PHILADELPHIA          ATLANTA

ARGO XOL 09974

**BUDD LARNER**
A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
January 10, 2005
Page 2

Company ("Home").  The outstanding balances owed to U.S. Branch by
Argonaut in respect of the AIG commutation are as follows:

| Contract | Amount |
|----------|--------|
| Excess Per Risk Facultative Casualty Contract | $491,048.99 |
| First Excess Facultative Casualty Contract | $302,863.55 |
| Fourth Excess Facultative Casualty Contract | $ 37,270.63 |
| First Surplus Contract | $ 96,118.81 |
| Total in respect of AIG Commutation | $927,301.98 |

The outstanding balances owed to U.S. Branch by Argonaut in respect
of the Home commutation are as follows:

| Contract | Amount |
|----------|--------|
| Excess Per Risk Facultative Casualty Contract | $ 692,471.64 |
| Quota Share Contract | $ 239,022.79 |
| First Excess Facultative Casualty Contract | $1,402,970.52 |
| Fourth Excess Facultative Casualty Contract | $ 26,729.75 |
| First Surplus Facultative Casualty Contract | $ 159,457.48 |
| Total in respect of Home Commutation | $2,520,652.18 |
| Grand total in respect of both commutations | $3,447,954.16 |

U.S. Branch will also seek pre-hearing security for the full amount
due and an award of interest, attorney's fees and other appropriate
relief.

Unless Argonaut applies to stay this arbitration within twenty
(20) days after service of this demand, Argonaut shall thereafter
be precluded from objecting that a valid agreement was not made or
has not been complied with and from asserting in court the bar of a
limitation of time.

U.S.  Branch  hereby  appoints  Richard  L.  White  as  its
arbitrator.  Mr. White's CV is attached.

**ARGO XOL 09975**

**BUDD LARNER**

A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
January 10, 2005
Page 3

U.S. Branch hereby demands that Argonaut appoint and identify
its arbitrator within thirty (30) days.  In the event that Argonaut
fails to appoint and identify its arbitrator within that time, U.S.
Branch will appoint Argonaut's arbitrator on its behalf.

Very truly yours,

Jeffrey S. Leonard

JSL/pl:531592w
Enclosure
cc:   Joseph J. Schiavone, Esq.
      Marc I. Bressman, Esq.
      Mr. Richard L. White

**EXHIBIT 3**

## GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

### 717 FIFTH AVENUE
NEW YORK 22, NEW YORK
TELEPHONE: PLAZA 2-8900

# REINSURANCE AGREEMENT

WITH

### GUARANTY REINSURANCE CO.
Chicago, Illinois

COVERING **Quota Share Retrocessions Agreement for Facultative Casualty Business**

EFFECTIVE **July 26, 1963**

AGREEMENT NO. **4158**

TR 00145



### GERLING GLOBAL REINSURANCE CORPORATION
### U. S. BRANCH
### NEW YORK, N. Y.

## QUOTA SHARE RETROCESSIONS AGREEMENT FOR
## FACULTATIVE CASUALTY BUSINESS

## INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL
REINSURANCE CORPORATION, U. S. BRANCH (hereinafter called the
"Reinsurer"), of the one part, and

GUARANTY REINSURANCE COMPANY, CHICAGO, ILLINOIS

(hereinafter called the "SUBSCRIBING RETROCESSIONAIRE"), of the other
part, that the SUBSCRIBING RETROCESSIONAIRE shall have a 10 % share
in the interests and liabilities of the "RETROCESSIONAIRES" as set forth in
the document attached hereto, entitled "QUOTA SHARE RETROCESSION
AGREEMENT FOR FACULTATIVE CASUALTY BUSINESS." The share of
the SUBSCRIBING RETROCESSIONAIRE shall be separate and apart from
the share of the other RETROCESSIONAIRES and shall not be joint with
those of the other RETROCESSIONAIRES and the SUBSCRIBING RETROCES-
SIONAIRE shall in no event participate in the interests and liabilities of the
other RETROCESSIONAIRES.

This Agreement shall become effective July 26, 1963
and is cancellable in the manner set forth in ARTICLE XII of the attached
Retrocession Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Agreement in duplicate, as of the
dates under-mentioned.

At New York, N. Y., this 15th          day of August,              19 63
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
by
GERLING GLOBAL OFFICES INC. - U. S. MANAGER

_____
Stig Winberg, President
and at                          this        day of              19

_____

TR 00146

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Reinsurance Clause | Article I | Page 1 |
| Exclusions | Article II | Page 4 |
| General Provisions | Article III | Page 5 |
| Excess of Loss for Joint Account | Article IV | Page 6 |
| Premium and Commissions | Article V | Page 6 |
| Accounts and Statistics | Article VI | Page 8 |
| Loss Settlements | Article VII | Page 8 |
| Access to Records | Article VIII | Page 9 |
| Arbitration | Article IX | Page 9 |
| Insolvency | Article X | Page 10 |
| Alterations | Article XI | Page 11 |
| Term and Cancellation | Article XII | Page 11 |