Exhibit A

## GERLING GLOBAL REINSURANCE CORPORATION
### U. S. BRANCH
### 717 FIFTH AVENUE
### NEW YORK 22, NEW YORK
#### TELEPHONE: PLAZA 2-8900

# REINSURANCE AGREEMENT

WITH

### GUARANTY REINSURANCE CO.
### Chicago, Illinois

COVERING **Quota Share Retrocessions Agreement for Facultative Casualty Business**

EFFECTIVE **July 26, 1963**

AGREEMENT NO. **4158**

GL ARG 003312

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH
NEW YORK, N. Y.

QUOTA SHARE RETROCESSIONS AGREEMENT FOR
FACULTATIVE CASUALTY BUSINESS

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH (hereinafter called the "Reinsurer"), of the one part, and

GUARANTY REINSURANCE COMPANY, CHICAGO, ILLINOIS

(hereinafter called the "SUBSCRIBING RETROCESSIONAIRE"), of the other part, that the SUBSCRIBING RETROCESSIONAIRE shall have a 10 % share in the interests and liabilities of the "RETROCESSIONAIRES" as set forth in the document attached hereto, entitled "QUOTA SHARE RETROCESSION AGREEMENT FOR FACULTATIVE CASUALTY BUSINESS." The share of the SUBSCRIBING RETROCESSIONAIRE shall be separate and apart from the share of the other RETROCESSIONAIRES and shall not be joint with those of the other RETROCESSIONAIRES and the SUBSCRIBING RETROCES- SIONAIRE shall in no event participate in the interests and liabilities of the other RETROCESSIONAIRES.

This Agreement shall become effective July 26, 1963
and is cancellable in the manner set forth in ARTICLE XII of the attached Retrocession Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement in duplicate, as of the dates under-mentioned.

At New York, N. Y., this 15th    day of August,    19 63
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
by
GERLING GLOBAL OFFICES INC. - U. S. MANAGER

_____
Stig Winberg, President
and at                              this         day of                    19

_____

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003313

# TABLE OF CONTENTS

| Reinsurance Clause | Article I | Page 1 |
|---|---|---|
| Exclusions | Article II | Page 4 |
| General Provisions | Article III | Page 5 |
| Excess of Loss for Joint Account | Article IV | Page 6 |
| Premium and Commissions | Article V | Page 6 |
| Accounts and Statistics | Article VI | Page 8 |
| Loss Settlements | Article VII | Page 8 |
| Access to Records | Article VIII | Page 9 |
| Arbitration | Article IX | Page 9 |
| Insolvency | Article X | Page 10 |
| Alterations | Article XI | Page 11 |
| Term and Cancellation | Article XII | Page 11 |

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003314

### QUOTA SHARE RETROCESSION AGREEMENT
### FOR FACULTATIVE CASUALTY BUSINESS

between

### GERLING GLOBAL REINSURANCE CORPORATION
### U. S. BRANCH, New York, N. Y.
(hereinafter called the "Reinsurer")

and

the Companies specified in the respective Interests and Liabilities
Agreement to which this Agreement is attached (hereinafter called
the "Retrocessionaires").

### ARTICLE 1

1.  The Reinsurer undertakes to retrocede and the Retrocessionaire
    agrees to accept under this Agreement the quota share percentage
    participation set forth in the Interests and Liabilities Agreement
    of limits totalling up to Two Million Dollars ($2,000,000) in
    respect of any one risk covered under policies issued by the
    Reinsurer coming within the scope of this Agreement. The
    Reinsurer shall retain net for his own account the remaining
    twenty per cent (20%). The Reinsurer undertakes to arrange
    excess of loss protection for account of its Retrocessionaires and
    itself in respect of losses exceeding $500,000 for the following
    $1,500,000 any one event.

2.  The classes of business covered by this Agreement shall be those
    normally written in the Reinsurer's Facultative Casualty Depart-
    ment as hereinafter defined and subject to specified exclusions.
    The reinsurance policies underwritten by the Reinsurer shall be
    reinsurance of other companies operating in the United States of
    America, its territories and possessions, retrocessions shall
    follow the territorial provisions of the policies retroceded.

3.  The Reinsurer will issue reinsurance policies covering excess
    limits in respect of:

    a.  Bodily Injury and/or Personal Injury Liability and Property
        Damage Liability, and

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003315

-2-

b.   Employers' Liability and/or Workmen's Compensation Insurance, and

c.   Liabilities assumed by the Reinsurer under so-called "Umbrella" policies,

of every description with various limits of liability, but no policy shall be ceded under this Agreement where the underlying amounts are less than:

$10,000 any one person      }     In respect of Liability
$20,000 any one accident    }     for Bodily Injury
        or occurrence       }

$ 5,000 any one accident    }     In respect of Liability
        or occurrence       }     for Property Damage

<u>or</u>

$25,000 combined single limit over both Liability for Bodily Injury and Liability for Property Damage.

Where Employers' Liability and/or Workmen's Compensation is written separately no risk shall be ceded under this Agreement where the underlying limits in respect of Employers' Liability and/or Workmen's Compensation are less than:

a.   $25,000 each employee, $25,000 any one disaster, Workmen's Compensation and/or Employers' Liability;

b.   $25,000 each employee, occupational diseases, with respect to multiple limit policies;

c.   $25,000 any one disaster, Workmen's Compensation and/or Employers' Liability and/or each employee, occupational diseases, with respect to combined single limit policies.

Where the Reinsurer writes excess of a combined single limit retention covering Property Damage, Bodily Injury and/or Personal Injury, Workmen's Compensation and/or Employers' Liability, this reinsurance Agreement shall provide for a combined minimum retention of $50,000.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003316

-3-

Where any policy of the underlying insurers, or any policy of another insurance carrier reinsured by the Reinsurer contains an aggregate limit, the coverage provided by the Reinsurer's policy is understood to be in excess of such aggregate limit, and an aggregate limit shall be applied to the amount of excess coverage provided under this Agreement.

4.  This Agreement shall apply up to the limits stated in Article I, 1, irrespective of whether the Reinsurer issues its reinsurance policies covering:

    a.  Liability for Bodily Injury and/or Personal Injury Liability only, or

    b.  Liability for Property Damage only, or

    c.  Liability for Bodily Injury and/or Personal Injury and Liability for Property Damage with separate limits, or

    d.  Liability for Bodily Injury and/or Personal Injury and Liability for Property Damage with one combined single limit, or

    e.  Liability for Employers' Liability and/or Workmen's Compensation Insurance, or

    f.  Liability for Employers' Liability and/or Workmen's Compensation Insurance written in conjunction with Bodily Injury and/or Personal Injury Liability and/or Property Damage with one combined single limit.

5.  The Reinsurer shall be the sole judge as to what constitutes one risk.

6.  The Reinsurer shall have the right to place facultative retrocessions outside of this Agreement when in the judgment of the Reinsurer such retrocessions will be in the interest of Retrocessionaires and such facultative retrocessions shall be deducted from the amount of reinsurance written by the Reinsurer for the purpose of determining the amount of liability which the Reinsurer is obligated to retrocede hereunder.

GEELING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003317

-4-

## ARTICLE II

1.  This Agreement shall specifically exclude coverage in respect of policies of reinsurance issued by the Reinsurer in respect of the following classes or classifications:

    a.  Aviation Liability risks, except in cases where such Aviation Liability risks are incorporated in a policy covering comprehensive or general liability.

    b.  Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only.  It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, policies issued by the Reinsurer in respect of railroads covering contractual liability or railroads' protective, or owners' protective, or owners' and contractors' protective insurance.

    c.  Excess catastrophe reinsurance treaties of insurance companies.

    d.  Ocean Marine business when written as such.

    e.  Nuclear risks as per attached wording.

    f.  Underground Coal Mining - but only as respects Excess Workmen's Compensation.

    g.  Operation of Aircraft - but only as respects Workmen's Compensation.

    h.  Fireworks Manufacturers - but only as respects Excess Workmen's Compensation.

    i.  Fuse Manufacturers - but only as respects Excess Workmen's Compensation.

    j.  Explosive Risks - but only as respects Excess Workmen's Compensation.

    k.  Risk of War, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause.

-5-

2.  In the event the Reinsurer becomes interested in a prohibited risk
    as described above, without his knowledge, in respect of which no
    other reinsurance arrangements are available to the Reinsurer,
    either by an existing insured extending its operations or by an
    inadvertent acceptance by an agent or otherwise of a reinsured
    company, this Agreement shall attach in respect to such prohibited
    risks but only until discovery by the Reinsurer and for not exceeding
    thirty (30) days thereafter.

## ARTICLE III

1.  It is the intention of this Agreement that the Retrocessionaires
    shall share to the extent of their interest in this Agreement the
    fortunes of the Reinsurer.

2.  The liability of the Retrocessionaires on any one risk retroceded
    under this Agreement shall commence and expire simultaneously
    with that of the Reinsurer, it being understood that all retrocessions
    shall be subject to the same clauses and conditions as the original
    reinsurances.

3.  Any inadvertent errors or omissions on the part of the Reinsurers
    shall not relieve the Retrocessionaires of any liability hereunder
    but shall be rectified immediately upon discovery.

4.  The Reinsurer shall have the right at any time to reduce, increase,
    revise, cancel or alter in any manner he may deem advisable
    any retrocession to the Retrocessionaires under this Agreement
    provided that the share of the Retrocessionaires remains within
    the limits stipulated in Article I, 1., of this Agreement and to
    credit or debit the Retrocessionaires with their appropriate share
    of premiums.

- 6 -

## ARTICLE IV

The Reinsurer undertakes to maintain the excess of loss reinsurance for the joint account of itself and the quota share Retrocessionaire mentioned in Article I above and to give the Retrocessionaire all particulars concerning this reinsurance when so requested. Further, the Reinsurer shall consult the Retrocessionaire prior to effecting any change in this reinsurance protection.

The Reinsurer will credit the Retrocessionaire with its pro rata share of all recoveries under this reinsurance and the Retrocessionaire agrees to reimburse the Reinsurer for its pro rata share of the reinsurance premium payable for the said reinsurance.

## ARTICLE V

1. The consideration paid by the Reinsurer to the Retrocessionaires shall be the gross net written premiums (i. e., gross premiums less return premiums) applicable to the share retroceded less the Retrocessionaire's pro rata share of the reinsurance premiums payable by the Reinsurer for the excess of loss reinsurance arranged for joint account of the Reinsurer and the Retrocessionaires as set out in Articles I and IV, less reinsurance premiums ceded in accordance with Article I, 6., and less commission and taxes as follows:

   a. Commissions payable by the Retrocessionaires to the Reinsurer shall be the amount of commission allowed by the Reinsurer plus an over-riding commission of seven and one-half (7 1/2%) percent of the gross net written premiums. Such commissions include provision for all commissions, brokerages, premium taxes, Board Exchange or Bureau assessments and for all other expenses of whatever nature excepting loss adjustment expenses.

2. In addition to the foregoing commission, the Retrocessionaires shall pay the Reinsurer a contingent commission of twenty-five per cent (25%) of the net annual profit resulting from this Agreement, such profit being arrived at as follows:

   a. Net Premiums Earned to be:

      (1) The unearned premium reserve at the close of the previous year.

      (2) Plus the net premiums ceded during the current year.

- 7 -

(3)   Less the unearned premium reserve at the close of the current year.

b.  Net Losses Incurred to be:

(1)   Losses and loss adjustment expenses paid during the current year less recoveries under excess of loss protection for common account.

(2)   Plus the reserve for outstanding losses and loss adjustment expenses at the close of the current year

(3)   Less the reserve for outstanding losses and loss adjustment expenses at the close of the previous year.

(4)   Plus fifteen per cent (15%) of the reserve for outstanding losses at the close of the current year.

(5)   Less fifteen per cent (15%) of the reserve for outstanding losses at the close of the previous year.

c.  Net Expenses Incurred to be:

(1)   Commissions allowed as computed in Article V, 1. a.

(2)   Retrocessionaires' management expenses of seven and one-half per cent (7 1/2%) of net written premium ceded

(3)   Pro rata share of premium for excess of loss protection for common account

(4)   Deficit, if any, from the preceding year's contingent commission statement.  No deficit to be carried forward for more than three years.

The amount by which the net premiums earned under a. exceed the total amount of net losses incurred and net expenses incurred under b. and c. shall be the net profit.

This calculation shall be made annually on a calendar year basis.   The calculation of the contingent commission shall be prepared by the Reinsurer

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003321

- 8 -

as soon as possible after year-end and shall be forwarded to the
Retrocessionaires without delay.

In case of cancellation of this Agreement in accordance with Section 4 a.
of Article XII, no contingent commission statement shall be rendered
until after the expiration of all risks and the settlement of all losses
applying to this Agreement .

## ARTICLE VI

1. The Reinsurer shall furnish the Retrocessionaires as soon as practic-
able after the close of each quarter with accounts in original currency
summarizing:

   (a)  Gross net written premiums.

   (b)  Commissions applicable as mentioned in Article V - 1. a.

   (c)  Overriding commission as mentioned in Article V - 1. a.

   (d)  Loss and loss expense paid.

   The balance due by either party shall be paid within sixty (60) days
   of the close of the account quarter

2. When rendering the quarterly accounts as per March 31, June 30 and
September 30, the Reinsurer shall also report the Retrocessionaires'
portion of the unearned premiums and outstanding losses as far as
available from original ceding companies

3. As soon as possible after the end of each calendar year, the Reinsurer
shall also furnish the Retrocessionaires with the statistical informa-
tion necessary for their annual statements, e. g. premiums, premiums
in force by term and year of expiration, losses paid, loss adjustment
expenses, estimate of outstanding losses and unearned premiums by
major class.

## ARTICLE VII

1. The Reinsurer alone will settle all claims and such settlements shall
under all circumstances be binding on the Retrocessionaires in accord-

- 9 -

ance with the terms of this Agreement.

2. The Retrocessionaires shall likewise pay their pro rata share of all expenses connected with the settlement of losses and any resistance to an negotiations concerning them.  The Retrocessionaires shall participate in any sums which may be recovered either as salvage or otherwise and shall benefit proportionately in all discounts.

3. In the event that any loss recoverable by the Reinsurer under this Agreement is in excess of Ten Thousand Dollars  ($10,000), the Retrocessionaires shall upon demand forthwith remit their share of such loss.

## ARTICLE VIII

The Retrocessionaires shall at all reasonable times have the right to inspect at the offices of the Reinsurer the records, documents and reports referring to any business transacted under this Agreement.

## ARTICLE IX

1. As a precedent to any right of action hereunder if disputes arise out of this Agreement, as well as differences, concerning the validity of this Agreement, the dispute shall be referred to two arbitrators, one to be chosen by each party   In the event of either party failing to appoint its arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate both arbitrators.

2. Prior to entering into arbitration, the two arbitrators shall appoint an umpire within thirty (30) days of their nomination.  In the event of the two arbitrators failing to agree upon the appointment of an umpire within the prescribed thirty (30) days, each of them shall then name three, of whom the other shall decline two and the decision shall be made by drawing lots.  The arbitrators, as well as the umpire, must be active or retired, disinterested executive officers of Insurance or Reinsurance Companies.

3. The arbitrator and/or the umpire shall consider this contract as an honorable agreement rather than merely as a legal obligation and they

- 10 -

are relieved of all judicial formalities and may abstain from following the strict rules of law and shall make their decision according to the practice of reinsurance business only. Each party shall submit its case to the arbitrators within thirty (30) days after their appointment. The arbitrators shall make their decision within four (4) months after the appointment of the umpire. The decision of the arbitrators shall be final and binding on both parties and not subject to appeal; but failing to agree, they shall call in the umpire and the decision of the majority shall be final and binding on both parties and not subject to appeal.

4. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other the expense of the arbitration. Arbitration shall take place in New York, N. Y., unless some other location is mutually agreed upon

### ARTICLE X

1. In the event of insolvency of the Reinsurer, retrocessions under this Agreement shall be payable by the Retrocessionaires on the basis of the liability of the Reinsurer under the policies retroceded without diminution because of the insolvency of the Company, to the Reinsurer or its liquidator, receiver, or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of the insolvency of the Reinsurer, and (b) where the Retrocessionaires, with the consent of the ceding company or companies, has assumed such policy obligations of the Reinsurer as direct obligations of the Retrocessionaires to the payees under such policy and in substitution for the obligations of the Reinsurer to such payees

2. It is further understood and agreed that in the event of the insolvency of the Reinsurer, the liquidator, receiver or statutory successor of the Reinsurer shall give written notice to the Retrocessionaires of the pendency of a claim against the insolvent Reinsurer on the policy retroceded within a reasonable time after such claim is filed in the insolvency proceeding and that during the pendency of such claim the Retrocessionaires may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Reinsurer or its liquidator, receiver or statutory successor. The expense thus incurred by the Retrocessionaires shall be chargeable, subject to court approval, against

- 11 -

the insolvent Reinsurer as part of the expense of the liquidation to
the extent of a proportionate share of the benefits which may accrue
to the Reinsurer solely as a result of the defense undertaken by the
Retrocessionaires.

3. Where two or more Retrocessionaires are involved in the same claim
and a majority in interest elect to interpose defense to such claim, the
expense shall be apportioned in accordance with the terms of the Retro-
cession Agreement as though such expense had been incurred by the
Reinsurer.

### ARTICLE XI

Alterations to this Agreement shall be made by correspondence or Addendum.
The correspondence or Addendum relating to such alterations shall be taken
as forming part of this Agreement and become equally binding.

### ARTICLE XII

1. This Agreement shall take effect on the date set forth in the Interests
and Liabilities Agreement of which this Agreement forms part and is
concluded for an indefinite period

2. This Agreement may be cancelled at Midnight any December 31st by either
party giving the other at least three (3) months notice in advance by
registered mail.

3. The Retrocessionaires shall continue to participate in retrocessions
falling within the terms of this Retrocession Agreement during the said
period of three (3) months. .

4. In the event of cancellation of this Agreement, the Reinsurer shall have
the option of terminating the liability in force at the date of cancellation
as follows:

a.    The Retrocessionaires shall remain liable for all retrocessions
in force at date of termination of this Retrocession Agreement
until their natural expiry date and for all outstanding losses at
date of termination until their final settlement.

– 12 –

    b.    The Retrocessionaires shall be relieved of all liability hereunder and in consideration of this shall return their proportionate shares of the unearned premiums less commissions and taxes in accordance with Section 1 of Article V to the Reinsurer.

5. Either party may cancel this Treaty forthwith by giving notice in writing by registered letter, should the other party at any time;

    a.    Lose the whole or any part of its paid-up capital.

    b.    Go into liquidation, whether voluntary or compulsory, or suffer a receiver to be appointed.

    c.    Amalgamate with or pass under the control of any other Company or Corporation.

In addition, should any law or regulation become operative which may prohibit or render illegal any part of the arrangements made under this Treaty, the Reinsurer may forthwith terminate this Treaty insofar as it relates to the business to which such law or regulation may apply

GL ARG 003326

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE.

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

   I. Nuclear reactor power plants including all auxiliary property on the site, or

   II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

   III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

   IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

   (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

   (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

   (a) substantial quantities, and

   (b) the extent of installation, plant or site.

Note.—Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

   (a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

   (b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

GL ARG 003327

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.**

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or
(b) become effective before that date and contain the Limited Exclusion Provision set out above;
provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affording the following coverage:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverage, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.**

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

GL ARG 003328

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1 separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations: "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Broad Exclusion Provision set out above;

provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Company (ies) on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Company (ies), for those classes of policies

(a) described in Clause II of paragraph (2) effective before 1st June, 1958, or

(b) described in paragraph (3) effective before 1st March, 1958,

shall be free until their natural expiry dates or 1st June, 1963, whichever first occurs, from the application of the other provisions of this Clause.

(5) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Company(ies); provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provisions.

3/4/60
#1255

GL ARG 003329

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH
NEW YORK, N. Y.

QUOTA SHARE RETROCESSIONS AGREEMENT FOR
FACULTATIVE CASUALTY BUSINESS

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL
REINSURANCE CORPORATION, U. S. BRANCH (hereinafter called the
"Reinsurer"), of the one part, and

GUARANTY REINSURANCE COMPANY, CHICAGO, ILLINOIS

(hereinafter called the "SUBSCRIBING RETROCESSIONAIRE"), of the other
part, that the SUBSCRIBING RETROCESSIONAIRE shall have a 10 % share
in the interests and liabilities of the "RETROCESSIONAIRES" as set forth in
the document attached hereto, entitled "QUOTA SHARE RETROCESSION
AGREEMENT FOR FACULTATIVE CASUALTY BUSINESS." The share of
the SUBSCRIBING RETROCESSIONAIRE shall be separate and apart from
the share of the other RETROCESSIONAIRES and shall not be joint with
those of the other RETROCESSIONAIRES and the SUBSCRIBING RETROCES-
SIONAIRE shall in no event participate in the interests and liabilities of the
other RETROCESSIONAIRES.

This Agreement shall become effective July 26, 1963
and is cancellable in the manner set forth in ARTICLE XII of the attached
Retrocession Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Agreement in duplicate, as of the
dates under-mentioned.

At New York, N. Y., this 15th         day of August,              19 63
GERLING GLOBAL REINSURANCE CORPORATION .. U. S. BRANCH
by
GERLING GLOBAL OFFICES INC. .. U. S. MANAGER

Stig Winberg, President

and at Chicago, Illinois    this 30th day of August,              1963
GUARANTY REINSURANCE COMPANY

John J. Hagerty, President

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003330

## ADDENDUM NO. 1

## DEPOSIT AGREEMENT

entered into this 23rd day of December 1964, between GUARANTY REINSURANCE
COMPANY, Chicago, Illinois (hereinafter called the "Retrocessionaire") and
GERLING GLOBAL REINSURANCE CORPORATION - U.S. BRANCH, New York, N. Y. (here-
inafter referred to as the "Reinsurer").

The provisions contained in this Deposit Agreement shall prevail over any
contrary provisions or clauses found in the Quota Share Retrocessions Agree-
ment for Facultative Casualty Business, effective July 26, 1963.

### A R T I C L E    I

It is agreed that the Retrocessionaire shall deposit an amount not less than
the reserve for unearned premiums and outstanding losses (including incurred
but not reported losses) for its proportionate share of all cessions of the
Reinsurer to the abovementioned Retrocessionaire.  This deposit shall be made
at the Retrocessionaire's option in cash or in securities satisfactory to the
Reinsurer.

The deposit shall be considered as collateral security to indemnify the Rein-
surer for all losses, costs and expenses resulting from failure(s) of the
Retrocessionaire to perform fully any of its obligations to the Reinsurer under
the above Agreement.

### A R T I C L E    II

The foregoing deposit shall be adjusted as follows:

The Reinsurer shall furnish the Retrocessionaire as soon as possible after the
first day of the last month of each calendar quarter with an estimate of the
unearned premiums and outstanding losses as at the end of the calendar quarter
concerned.  The Retrocessionaire is then obliged to adjust immediately the
deposit to equal the amount of unearned premiums and outstanding losses as at
the end of the calendar quarter concerned.

In the event a loss occurs and is not included in the estimated reserve for
outstanding losses forwarded to the Retrocessionaire, in accordance with para-
graph two of this Article, the Retrocessionaire shall upon request immediately
increase the deposit by an amount equal to the Retrocessionaire's share of such
loss.

### A R T I C L E    III

In the event of termination of the abovementioned Agreement, the deposit shall
be readjusted quarterly and refunded to the Retrocessionaire or augmented by
the Retrocessionaire in proportion to the outstanding liability of the Retro-
cessionaire at the end of any given quarter.  It shall be entirely refunded to
the Retrocessionaire after all liabilities of the Retrocessionaire have been
extinguished.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003331

-2-

## A R T I C L E   IV

The purpose of the present Agreement shall be to safeguard the surplus position of the Reinsurer in relation to the jurisdiction in the United States in which it is licensed to do business.  As soon as it has been established that the Retrocessionaire is duly licensed or approved as Reinsurer in the relative jurisdictions, it is the intention that the present Agreement shall be cancelled and all deposits refunded to the Retrocessionaire.


IN WITNESS WHEREOF this Agreement has been drawn up in duplicate and executed in due form by each of the contracting parties.

Date:                          GUARANTY REINSURANCE COMPANY
Chicago, Illinois

                               By_____

Date: December 23, 1964        GERLING GLOBAL REINSURANCE CORPORATION - U.S. BRANCH
New York, N. Y.                By GERLING GLOBAL OFFICES INC., U. S. MANAGER


                               _____
                                                            SENIOR VICE PRESIDENT

                               _____
                                                                      SECRETARY

TERMINATION ADDENDUM
to the
QUOTA SHARE RETROCESSIONS AGREEMENT
FOR FACULTATIVE CASUALTY BUSINESS
between
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
and
GUARANTY REINSURANCE COMPANY
("Retrocessionaire")



IT IS HEREBY UNDERSTOOD AND AGREED the the Retrocessionaire's participation of ten (10%) percent in attached contract is terminated as of Midnight, December 31, 1965.

In accordance with ARTICLE XII, paragraph 4 b., the Retrocessionaire shall be relieved of all liability thereafter and in consideration of this shall return its proportionate share of the unearned premiums less commissions and taxes.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Termination Addendum in duplicate.

At New York, N. Y., this 19th day of February, 1965.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH
By GERLING GLOBAL OFFICES INC.,
U. S. MANAGER

_____
Senior Vice President

_____
Secretary

and at Chicago, Illinois, this 19th day of March 1965.

GUARANTY REINSURANCE COMPANY

By _____

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003333