# Exhibit E

**Jeffery Siedsma - Global - Argonaut (QS)**

From: &lt;NANANDED@aol.com&gt;
To: &lt;hajost@halloran-sage.com&gt;, &lt;Jschiavone@budd-larner.com&gt;, &lt;blumenthal@halloran-sage.com&gt;, &lt;Jleonard@budd-larner.com&gt;
Date: 1/10/2007 2:02 PM
Subject: Global - Argonaut (QS)
CC: &lt;abrotter@socal.rr.com&gt;, &lt;deputy@iicil.org&gt;

---

In the Matter of the Arbitration Between          Arthur C. Brotter

Global Reinsurance Corporation                    Richard L. White
   - U.S. Branch,
                                                 Edmond F. Rondepierre
                                                 Umpire
               Petitioner,
    - and -

Argonaut Insurance Company,

               Respondent.

---

## AWARD

Having considered the submissions and arguments of Counsel, the testimony of witnesses at the hearing and the record in this arbitration a majority of the Panel rules as follows:

The commutation payments that Gerling seeks to cede to Argonaut are not claims, losses nor settlements within the terms or the meaning of the retrocessional agreements. The agreements make no provision for claims submitted in bulk or blanket form, nor for payments on a non risk – specific basis or an estimated basis. The agreements provide no authority for the unilateral acceleration of the retrocessionaires obligations. Argonaut is not required to pay the amounts sought by Global in this arbitration.

This order does not alter Argonaut's obligations under the retrocessional agreements. Argonaut may be obligated to pay claims submitted in the form required by those agreements.

                                                   Arthur Brotter

Edmond F. Rondepierre
Umpire

10 January 2007

### DISSENT OF ARBITRATOR RICHARD L. WHITE

Re: Quota Share Retrocession Agreement for Facultative Casualty Business #4158/QS31 ("Quota Share") and First Surplus Facultative Casualty Retrocession Contract #6103/QS73 ("Surplus") [collectively the "Retrocessional Agreements"]

With this Award the majority affirms that the commutation payments which Global seeks to cede to Argonaut are not settlements within the terms or the meaning of the Retrocessional Agreements; I disagree. In my view, the majority's ruling is incorrect because it does not comport with (1) the nature, i.e., the characteristics, of quota share reinsurance generally, (2) the language of the Retrocessional Agreements specifically, in particular the Quota Share agreement, and (3) reinsurance custom and practice.

Quota share reinsurance is proportional reinsurance in which the reinsurer assumes an agreed percentage of each risk insured. Because these parties are reinsurers, the agreed percentage would apply to each facultative risk reinsured. Absent some provision in the contract to the contrary, the loss experience of the reinsurer and retrocessionaire is intended to be proportionally identical.

So congruent is quota share reinsurance that such contracts need only have an accounts and reporting provision to effect payment between contracting parties. In contrast, these Retrocessional Agreements include a Loss Settlements provision which underscores the parties' intention that this reinsurance protection will be something more than the standard "follow the liability of the reinsured" coverage.

Indeed, the coverage augmentation of these loss settlement clauses provides: that the reinsurer (here, the retrocedent, Global), "...**alone** will settle all claims and such settlements shall **under all circumstances** be binding on the Retrocessionaires in accordance with the terms of this Agreement." (Quota Share Article VII, 1.) and "**All** payment of claims made by the Company [Global] will be binding upon the Retrocessionaires." (Surplus Article VIII, B.) [Emphasis added]

Now it is true that unlike the typical commercial contract, reinsurance contract provisions often rely for their understanding on the trade usage and practice of the reinsurance industry. Such custom and practice, however, may amplify contract provisions but it may not contradict those provisions. Consider the Retrocessional Agreements in this dispute. Argonaut presented evidence at the Hearing (albeit disputed by Global) that notice of the commutations was not provided, or if arguably provided, such notice was insufficient. This lack (or insufficiency) and the related retrocessionaire concurrence, it was argued, was fatal to Global's ability to cede the commutation payments.

Evidence was provided that at least twenty-two retrocessionaires reinsured Global on the affected contracts. The majority's ruling doesn't indicate whether a substantial concurrence, say, 25% would have been sufficient to permit billing or if a majority or indeed a supermajority concurrence would have done the job. A fair reading of our Award is that unanimity would be required for Global to successfully bill the commutation payments. This principle of collegiality, as it were, is nowhere in the Retrocessional Agreements. Moreover, there is nothing in the record that remotely suggested custom and practice embraced such unanimity. Indeed, independent of the record in this dispute, it is difficult to imagine a situation where trade usage for a ceded commutation transaction, would require the unanimity of retrocessionaire concurrence and the inevitable Babel-like communication of so many voices.

The commutation payments in this arbitration, paid in connection with an arms length transaction between Global and certain ceding companies, relieved Global and its retrocessionaires of all liability pursuant to the subject facultative certificates. Despite this extraordinary relief and the explicit loss settlement provisions of the Retrocessional Agreements, our Award sanctions Argonaut's refusal to pay its proportion of the commutation payments. Notwithstanding the high personal regard I have for my co-panelists, I respectfully dissent.

_____
Richard L. White, Arbitrator

Dated: January 10, 2007