# Exhibit G



# HALLORAN & SAGE LLP
ATTORNEYS AT LAW

**THERESA W. HAJOST**  Direct 202 263-4971  hajost@halloran-sage.com
Admitted in Maryland and Washington, DC

February 15, 2007

**Via Email and Federal Express**

Richard L. White
Integrity Insurance Company
58 Pine Boulevard
Cedar Knolls, NJ  07927
deputy@iicil.org
deputydawg.integrity@gmail.com

Edmond F. Rondepierre, Esquire
8 Linda Lane
Darien, CT  06820
nananded@aol.com

Arthur Brotter
11601 Baird Avenue
Northridge, CA  91326
abrotter@socal.rr.com

Re:   Global/Argonaut Quota Share Arbitration

Dear Panel Members:

The Panel should decline to entertain the letter that Global has characterized as a "Motion for Clarification."

## Introduction

This arbitration has been concluded.  The Panel has decided the case put before it; it has completed the matter for which it was empanelled and issued a final award.  There is no need for a "clarification" of the award, which ruled on the issues the parties put before the Panel – whether Global's billings to Argonaut arising from Global's commutations with AIG and Home were covered by the contracts at issue.  The Panel held that they were not.

Global's letter is not really a motion for clarification; rather it is a request for new, post-award relief from the Panel -- relief that Global never requested during the arbitration proceedings.  Moreover, the entire premise of Global's request for additional relief is based on a mischaracterization of Ms. Ijams' testimony.  The testimony on which Global purports to rely addressed hypothetical arrangements that the parties could have or might have made had Global given Argonaut notice of and opportunity to

Messrs. Brotter, Rondepierre and White
February 15, 2007
Page 2

evaluate the commutations prior to Global's completion and allocation of same. However, Global never sought Argonaut's input or consent and instead opted for arbitration.

Global requests that the Panel apply the motion procedure that had been used during the pendency of the arbitration. This arbitration is over. Global has requested that the Panel modify its award. Argonaut disagrees that any clarification is warranted and opposes Global's request for the reasons set forth herein. Global should not be allowed yet another "bite at the apple" by way of a reply.

### Global's Letter Requests New Post-Award Relief – Not Clarification

The dispute submitted to the Panel by the parties was whether Argonaut had to pay the amounts Global billed that arose from its commutations with Home and AIG. In both of the pre-hearing briefs filed by Global it requested the same relief: "that the Panel require Argonaut to pay the balances at issue in the arbitration, which currently total $482,176.90, and award Global interest, attorneys' fees and punitive damages." [Global Reply Brief at 36; see also Global Opening Brief at 44.] Argonaut similarly requested that the Panel order that it did not have to pay "Global's commutation billings." [Argonaut Reply Brief at 45; see also Argonaut Opening Brief at 21.] Global did not amend its request for relief to include the "protocol" it now seeks to have the Panel rule on for the first time. Global cannot request post-award relief no matter how it tries to characterize its request.

What Global's letter actually seeks from the Panel is a reconsideration of its decision not to allow Global to reform the contracts at issue to cover its commutations. The Panel held: "The commutation payments that Global seeks to cede to Argonaut are not claims, losses nor settlements within the terms or the meaning of the retrocessional agreements." Although Global tries to read an ambiguity into the award, the award is enforceable as written. The dissenting opinion demonstrates that Mr. White understands (but disagrees with) the majority opinion to relieve Argonaut of any obligation to pay the commutation claims: "our Award sanctions Argonaut's refusal to pay its proportion of the commutation payments." The Panel went on to note that its holding did not reform the contracts: "This order does not alter Argonaut's obligations under the retrocessional agreements." Global now seeks to have the Panel reform the contracts to cover its commutation payments in a different way – packaged as a "protocol" for "non-commutation" balances. This clearly was not before the Panel.

No doubt the Panel is familiar with the doctrine of *functus officio* as applied to arbitration panels. The Supreme Court described it as follows:

> Arbitrators exhaust their power when they make a final determination on the matters submitted to them. They have no power after having made an

Messrs. Brotter, Rondepierre and White
February 15, 2007
Page 3

>   award to alter it; the authority conferred on them is then at an end. *Bayne v. Morris*, 68 U.S. (1Wall.) 97, 99 (1863).[1]

This well-recognized doctrine is routinely applied today. *See, e.g., Colonial Penn Ins. Co. v. The Omaha Indem. Co.*, 943 F.2d 327, 331 (3d Cir. 1991)(noting the routine application of the *functus officio* doctrine and finding "[a]s a general rule, once an arbitration panel renders a decision regarding the issues submitted, it becomes *functus officio* and lacks any power to re-examine that decision); *Trade & Transport v. Natural Petro. Charters*, 931 F.2d 191, 195 (2d Cir. 1991)(noting that the submission by the parties determines the scope of the arbitrators' authority; citing *functus officio* in support of its holding that once the final award is issued, arbitrators have no further authority absent agreement of the parties.)

   Although some courts have made narrow exceptions to the doctrine allowing for clarification, such as miscalculations of amounts due or other minor clarifications, the doctrine bars the type of reconsideration and new relief sought by Global. Although Global characterizes its letter to the Panel as a motion for "clarification," in fact it is a request for reconsideration which Global hopes will lead to a change in the final award, including new post-award relief. As a recent article in the ARIAS Quarterly noted:

>   Unlike clarification, reconsideration of final awards expressly violates the [*functus officio*] doctrine (and its narrow exceptions) by requiring panels to revisit the merits of adjudicated issues. Further, allowing such review would be in sharp contrast to the "final and binding" award provided for in most arbitration agreements and would weaken the implications of finality afforded to arbitral decisions in general.[2] Absent any other agreement providing for the right to seek reconsideration, following an award, parties may either accept the panel's decision or seek relief in the form of vacatur of modification in the appropriate federal or state court. *See* Allen, Thomas A. and Herman, Robyn D., "Clarification, Reconsideration and the Doctrine of *Functus Officio*," ARIAS-US Quarterly, Second Quarter 2004, Volume 11 Number 2 at p. 7.

In order for the Panel to go further than merely correcting a miscalculation or other small mistake, as Global proposes both parties must consent to the matter being re-opened. As noted above, Argonaut does not agree that the award needs to be clarified, nor does Argonaut consent to reconsideration. Global's unilateral request is insufficient to confer new jurisdiction.

---

[1] Cases and authorities cited will be provided in hard copy to the Panel members.
[2] Both of the contracts adjudicated provide that the panel's award is "final and binding" on the parties. [See Article IX Contract 4158 and Article XII Contract 6103.] Contract 4158 further provides that the award is "not subject to appeal."

Messrs. Brotter, Rondepierre and White
February 15, 2007
Page 4

The Panel can, and should, end its analysis of Global's letter here. The award is final and capable of enforcement as issued; the Panel has fulfilled its commission.

### Global's Proposed Post-Award Relief Is Based on a Misinterpretation of Ms. Ijams' Testimony

As discussed above, not only is Global seeking post-award relief from the Panel, to which it is not entitled, but the entire premise for Global's post-award relief is faulty in a number of respects.

As clearly testified to by Ms. Ijams, Argonaut's position was that Global behaved in derogation of the contract terms and in bad faith in ceding the commutations to Argonaut:

> Q: Now, switching to Global has accused Argonaut of bad faith in this matter, but do you consider that Global acted in bad faith with regard to its cessions of the commutation payments?
> A: I think that, as a starting point, Gerling put their own self-interests ahead of everyone else's, and I think that's an indication of bad faith in the reinsurance relationship. It is meant to be a relationship, a partnership, a business relationship, but I believe that is what happened here. It was all about Gerling, "and then we'll let everybody else in on it later."
> Q: Well, is part of your basis for believing that the way in which the notice was handled or not in this matter?
> A: Yes. My opinion is, based on what I have seen and heard this week and prior, that Gerling gave priority to their own self-interest. They did not plan on giving any notice whatsoever to their reinsurers, either before these deals were done, after they were done, to the point that Navigant did their re-al – their allocation. They intended to give notice after all of that was put in place, then they were going to, you know, unveil it. That, to me, I don't think is certainly not a good business partnership or good faith.
> Q: Now, were you also concerned, in relationship with bad faith, about the reclassification of – in the presentation of claims as paid claims when it was actually IBNR?
> A: Absolutely. And that's why I think it's important – it's important at any point in time. Business needs to be accurate. You don't need Sarbanes to tell you that. Sarbanes put in more procedures and more documentation requirements and so on and so forth, but your business records should be accurate, and I don't believe that's what they did.
> Q: Now, on methodology, do you have concerns as to how and why they adopted the methodology they did in allocating?

Messrs. Brotter, Rondepierre and White
February 15, 2007
Page 5

> A: I believe that the intent was to overcome the issues that Vince Potts identified, at least the second one. Not only are you going to get challenged on acceleration by the retrocessionaires, you're going to get challenged on moving IBNR into claims. I believe that's wrong. That's bad faith. [Day 5 1484:24-1487:4.]

Ms. Ijams was also very clear in her testimony that Argonaut was asking the Panel to rule that Argonaut did not have to pay Global's commutation claims. [Day 5 1500:4-8.] All of the testimony quoted by Global in its letter to the Panel are Ms. Ijams' responses to hypothetical questions regarding arrangements that might have been worked out between the parties had Global given Argonaut notice and an opportunity for input. Her testimony on that is very clear:

> The point here isn't a windfall, the point is that Gerling has made its own business decision and taken the business risk associated with retrocessional recovery, and it's done so without notice and without an opportunity for Argonaut to participate. It didn't find out the answer to whether Argonaut would support or whether Argonaut would require continued billing. [Counsel/Panel colloquy.] My answer is – my answer is no, I don't believe it's a windfall. [Day 5 1507:18-1508:23.]

She again stated her point of view with regard to this entire hypothetical line of questioning:

> Q: And my question to you, very simply, is whether it would be a windfall to Argonaut if Home and AIG were not willing to continue to bill Global and Argonaut, therefore, avoided – was able to avoid any liability for its share of the Home and AIG books of business that it reinsured through Global?
>
> A: I don't view windfalls. I'm not behind that word. I'm not getting why you think that's a windfall. Business is business, and – you know, you're giving me a hypothetical or an assumption or something; what if they wouldn't do it? Why didn't you ask me? We could have asked them at the time. You know – you're looking at windfalls, and I'm looking as "Wait a minute, we have a relationship here." I don't view this as a windfall. I don't know whether because they wouldn't continue to report or not, Gerling would have some other manner of continuing to present, I don't know. All I know is I didn't get an opportunity to talk about it. [Day 5 1509:17-1510:14.]

Far from laying out some sort of approach that would allow Global to repackage cessions for which recovery had already been denied, Ms. Ijams' testimony went to the basic unfairness of Global's approach to its retrocessionaires in the method it handled and ceded the commutations.

Messrs. Brotter, Rondepierre and White
February 15, 2007
Page 6

In suggesting its protocol, Global would like the Panel to wrongly presume that Argonaut was given the opportunity to make a decision whether or not to participate in the commutations at issue. As is clear from the evidence, Argonaut was not given that opportunity. Global's letter to the Panel is a belated recognition that it should have approached the commutations differently. However, that is water under the bridge; Global cannot now go back and rethink its strategy. The parties can never be put back into the situation that would have existed had Global given Argonaut notice and the opportunity to make a decision prior to the commutations to participate in the commutations, participate under certain conditions, not participate with conditions or any other of the myriad approaches that could have been taken, but were not. Global knowingly and willfully excluded its retrocessionaires from the commutation process and pursued arbitration to force payment of its billings; it cannot now adopt some alternative approach after the fact.

## Conclusion

The Panel has ruled on the matters submitted to it for decision. The award is enforceable as issued. There is no practical or legal basis for the Panel to reconsider or modify its decision to provide the post-award relief that Global now seeks. Argonaut respectfully requests that the Panel deny Global's invitation to modify its award.

Very truly yours,

Theresa W. Hajost

TWH/tc

Cc:   Daniel A. Blumenthal, Esq.
      Jeffrey S. Leonard, Esq.
      Joseph J. Schiavone, Esq.
      Virginia A. Pallotto, Esq.