UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In the Matter of the Arbitration Between | : Docket No. 07 CV 6222(SHS) |
| | : |
| Argonaut Insurance Company, | : |
| | : |
| Petitioner, | : |
| | : |
| - against - | : |
| | : |
| GLOBAL Reinsurance Corporation - U.S. Branch, | : **FILED UNDER SEAL** |
| | : |
| Respondent/ Counter-Petitioner, | : |
| | : |
| - against - | : |
| | : |
| Argonaut Insurance Company and Ronald S. Gass, | : |
| | : |
| Respondents on Counter-Petition. | : |
| | : |

MEMORANDUM OF LAW OF RESPONDENT/COUNTER-PETITIONER GLOBAL
REINSURANCE CORPORATION - U.S. BRANCH IN SUPPORT OF AMENDED
COUNTER-PETITION AND IN OPPOSITION TO PETITIONER'S "MOTION" TO STAY OR
FOR ALTERNATIVE RELIEF

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

    A.  The Contracts and Arbitration Clauses .......................................................... 3

    B.  The QS Commutation Arbitration and 10 January 2007 Award ................... 4

    C.  The Motion for Clarification .......................................................................... 6

The March 2007 Arbitration Demand .............................................................................. 7

PROCEDURAL HISTORY ............................................................................................... 8

ARGUMENT .................................................................................................................... 9

    I.    THE FEDERAL ARBITRATION ACT, INCLUDING THE NEW YORK
        CONVENTION, APPLY TO THIS DISPUTE ............................................ 9

    II.   BECAUSE THE DEFENSES OF RES JUDICATA AND ESTOPPEL
        MUST BE DETERMINED BY AN ARBITRATION PANEL RATHER
        THAN THE COURT, ARGONAUT SHOULD BE ORDERED TO
        PROCEED WITH THE ARBITRATION ................................................... 10

    III.  ASSUMING ARGUENDO THAT THE RES JUDICATA AND
        COLLATERAL ESTOPPEL DEFENSES WERE FOR A COURT TO
        DECIDE, THEY ARE INAPPLICABLE HERE ....................................... 13

    IV.  AN ARBITRATOR'S FITNESS TO SERVE CANNOT BE
        CHALLENGED PRIOR TO THE FINAL AWARD .................................. 18

    V.   THERE IS NO REQUIREMENT OF IMPARTIALITY FOR A PARTY-
        APPOINTED ARBITRATOR AND EVEN IF THERE WERE, THERE
        HAS BEEN NO SHOWING OF EVIDENT PARTIALITY AS TO
        GLOBAL'S PARTY-APPOINTED ARBITRATOR ............................... 21

    VI.  ALTERNATIVELY, GLOBAL TIMELY APPOINTED WHITE AND
        SHOULD BE ALLOWED REASONABLE TIME TO APPOINT A
        REPLACEMENT IF HE IS DISQUALIFIED ......................................... 22

CONCLUSION ............................................................................................................... 25

ii

## TABLE OF AUTHORITIES

**Page**

Allstate Insurance Co. v. Administratia Asigurarilor De Stat, 875 F.Supp. 1022
 (S.D.N.Y. 1955).................................................................................................................3

Alter v. Englander, 901 F.Supp. 151 (S.D.N.Y. 1995) ........................................................20

American Centennial Insurance Co. v. Commonwealth Insurance Co., 1987 WL 17649
 (S.D.N.Y. 1987)   ...................................................................................19, 22, 23, 24

Argonaut Midwest Insurance Co. v. General Reinsurance Corp., 1998 WL 474142
 (N.D. Ill. 1998) ................................................................................................................23

Astoria Medical Group v. Health Insurance Plan of Greater New York, 11 N.Y.2d
 128, 227 N.Y.S.2d 401 (1962)........................................................................................22

Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892 (2d Cir. 1997) ......................................19, 24

Bergensen v. Joseph Muller Corp., 710 F.2d 928 (2d Cir. 1983) ........................................10

Burmah Oil Tankers, Ltd. v. Trisun Tankers Ltd., 687 F.Supp. 897 (S.D.N.Y. 1988)......................12

Certain Underwriters at Lloyd's, London v. Argonaut Insurance Co., 264 F.Supp.2d
 926 (N.D.Cal.2003) .......................................................................................10, 19, 20

Certain Underwriting Members of Lloyd's v. CIGNA Worldwide, Inc., 1993 WL 258739
 (S.D.N.Y. 1993)...............................................................................................................24

Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126 (9th Cir. 2000)................................12

Cox v. Piper, Jaffray & Hopwood, Inc., 848 F.2d 842 (8th Cir. 1988).................................20

Crystal City Police Benevolent Assoc. v. City of Corning, 91 A.D.2d 843, 458
 N.Y.S.2d 401 (4th Dept. 1982).......................................................................................22

David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd., 923 F.2d 245 (2d Cir. 1991) ................11

Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 105 S. Ct. 1238 (1985) .......................11

Evanston Insurance Co. v. Kansa General International Insurance Co. Ltd., 1995 WL 23063
 (N.D. Ill 1995) ................................................................................................................23, 24

Florasynth, Inc. v. Pickholz, 750 F.2d 171 (2d Cir. 1984).................................................20

Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 123 S. Ct. 2402 (2003)...........................................13

Gulf Guaranty Life Ins. Co. v. Connecticut General Life Ins. Co., 304 F.3d 476
    (5th Cir. 2002) ............................................................................................................................20

Howsam v. Dean Witter Reynolds, 537 U.S. 79, 123 S. Ct. 588 (2002) ...........................................13

John Hancock Mutual Life Ins. Co. v. Olick, 151 F.3d 132 (3d Cir. 1998).......................................12

Johnson v. New York Hosp., 1998 U.S. Dist. LEXIS 19099 (S.D.N.Y. 1998) .................................14

Lito Shipping Corp. v. Pioneer Petroleum Products, Inc., 1997 WL 160321 (S.D.N.Y. 1997) ..12, 13

Marc Rich & Co. v. Transmarine Seaways Corp., 443 F.Supp. 386 (S.D.N.Y. 1978) ......................20

McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825
    (2d Cir. 1988) .............................................................................................................................11

Michaels v. Mariforum Shipping, S.A., 624 F.2d 411 (2d Cir. 1980) ...............................................20

Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S. Ct. 927
    (1983).........................................................................................................................................11

NLRB v. United Technologies Corp., 706 F.2d 1254 (2d Cir. 1983).................................................16

Nationwide Mut. Ins. Co. v. First State Ins. Co., 213 F. Supp.2d 10 (D. Mass. 2002)......................21

National Shipping & Trading Corp. v. Buck Shipping Inter. Ltd., 1985 WL 495
    (S.D.N.Y. 1985)..........................................................................................................................13

National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129 (2d Cir. 1996) ...........11, 12, 13

North River Insurance Co. v. CIGNA Reinsurance Co., 52 F.3d 1194 (3d Cir. 1995) ........................3

Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88
    (2d Cir. 1999) ...............................................................................................................................9

Sphere Drake Insurance Ltd. v. All America Life Insurance Co., 307 F.3d 617
    (7th Cir. 2002) ............................................................................................................................22

United States Fire Ins. Co. v. National Gypsum Co., 101 F.3d 813 (2d Cir. 1996)...............10, 12, 13

Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co., 933 F. Supp. 1170
    (S.D.N.Y. 1996).........................................................................................................................14

**Page**

**Rules**

9 U.S.C. §1 <u>et seq.</u> ..........................................................................................................1

9 U.S.C. §§4 and 206 ..................................................................................................18

9 U.S.C. §5 ..................................................................................................................18

9 U.S.C. §10 (a)(2) ......................................................................................................19

9 U.S.C. §201 <u>et seq.</u> ..................................................................................................9

9 U.S.C. § 208 ............................................................................................................10

CPLR Article 75 ........................................................................................................8, 9

**Other Authorities**

Hall, Robert M., <u>Res Judicata and Collateral Estoppel Effect of Prior Arbitration Orders:</u>
<u>What Impact on Subsequent Arbitrations?</u>, Mealey's Litig. Rep. Reinsurance,
Vol. 17, No. 17 (2007)............................................................................................18

Porter and Poag, <u>Pre-Award Attempts to Disqualify Arbitrators and Umpires – A Fitting</u>
<u>End to A Dilatory Practice</u>, Mealey's Litigation Report: Reinsurance, Vol. 13, No. 13
(Nov. 2002).............................................................................................................20

Staring, Graydon S., <u>Law of Reinsurance</u> §14.6 (April 2007 update) .................................4

## PRELIMINARY STATEMENT

This proceeding under the Federal Arbitration Act, 9 U.S.C. §1 et seq. ("FAA"), concerns (i) the failure of Petitioner Argonaut Insurance Company ("Argonaut") to proceed with an arbitration duly commenced by Respondent GLOBAL Reinsurance Corporation – U.S. Branch ("Global") and (ii) the unilateral determination by Argonaut that Global's party-appointed arbitrator is "biased" and Argonaut's purported appointment of a replacement arbitrator. The underlying reinsurance arbitration involves Global's effort to collect from Argonaut amounts due under two retrocessional reinsurance contracts.

There is no dispute that the broad arbitration clauses contained in the contracts require that all disputes arising out of the contracts be resolved by arbitration before a panel comprised of two arbitrators, one chosen by each party and an umpire selected by the two arbitrators. The clauses provide that if a party does not appoint its arbitrator within thirty days of being requested, the other party may appoint both arbitrators.

Following its demand for arbitration, Global duly appointed Richard L. White as its arbitrator, and Argonaut appointed Paul C. Thomson, III as its arbitrator. Argonaut objected to White, asserting that he was somehow biased because he had served as Global's party-appointed arbitrator in a prior separate arbitration between the parties that has concluded with an Award. Argonaut then purported to appoint Ronald S. Gass as Global's arbitrator in place of White, filed a Petition to confirm the prior arbitration award, and filed a "Motion" to permanently stay the current separate arbitration or, alternatively, to require that the arbitration proceed before Gass as Global's arbitrator.

The parties agree that the prior arbitral award should be confirmed, but that must take place under the FAA, which applies to this international reinsurance dispute. However, the

parties disagree over what that award means. Through this litigation, Argonaut hopes to force upon Global -- and the Court -- its misguided view as to how the award should be construed, without ever having to endure a proceeding that would decide what the award means and whether Global is entitled to recover on its current billings under the contracts and prior award, all of which arise out of the contracts.

Argonaut's efforts to thwart the arbitration as well as Global's right to appoint its own arbitrator should not be tolerated. Argonaut's claim that the arbitration is precluded by res judicata is wholly without merit, and is based on outdated cases that are no longer viable. It is well-established that issues relating to the res judicata effect of a prior arbitration award on a subsequent arbitration is an issue to be resolved by the arbitration panel, not a court. In the alternative, even if this court were to hold that it and not the arbitrators should address Argonaut's res judicata defense, the requirements for res judicata have not been satisfied. Unlike the prior arbitration, the pending arbitration involves current billings based on actual claims that have been resolved by Global's cedents, not billings relating to Global's commutations. Indeed, the award in the prior arbitration provides that Argonaut may be obligated to pay future billings in the form required by the Contracts, such as the billings that are the subject of the present arbitration.

Likewise, the court should reject Argonaut's extra-judicial, self-help remedy of purporting to appoint Global's arbitrator. Nothing in the FAA authorizes a court to hear pre-award challenges to an arbitrator, and challenges to an arbitrator's fitness cannot be entertained until after the issuance of a final arbitration award.

Further, Argonaut is mistaken in the basis for its challenge. The simple fact that White was Global's arbitrator in connection with the award that both parties now wish to confirm does

not demonstrate any improper bias. There is no requirement that party-appointed arbitrators be impartial in tripartite arbitrations such as this. In arbitrations before a tripartite panel, it is expected that each party will appoint an arbitrator sympathetic to its position. Argonaut itself has appointed the same arbitrator and nominated the same umpire to serve in multiple arbitrations against Global. Argonaut appointed Thomson as its arbitrator in at least two other arbitrations involving Global. Gass has served as a party-appointed arbitrator adverse to Global many times over the last few years. Argonaut's self-help remedy of appointing Gass should be seen for what it is — an improper attempt to "stack" the Panel against Global.

STATEMENT OF FACTS

A. The Contracts and Arbitration Clauses

Argonaut and Global entered into quota share retrocessional reinsurance contract no. 4158, effective July 26, 1963 through December 31, 1965 ("Quota Share Contract"), and a first surplus retrocessional contract No. 6103, effective July 1, 1973 through December 31, 1975 ("First Surplus Contract")(collectively, the "Contracts") under which Argonaut provides retrocessional reinsurance coverage to Global. Verified Amended Counter-Petition, Exhs. A, B.[1]

The Quota Share Contract contains a broad arbitration clause that provides in part that "[a]s a precedent to any right of action hereunder if disputes arise out of this Agreement, ... the dispute shall be referred to two arbitrators, one to be chosen by each party." Id. at Exh. A, Article IX. The First Surplus Contract also contains a broad arbitration clause that provides in

---

[1] Reinsurance enables an insurance company to insure its liability under insurance policies that it issues to its insureds. North River Insurance Co. v. CIGNA Reinsurance Co., 52 F.3d 1194,1199 (3d Cir. 1995). A retrocessional contract is reinsurance that reinsures a reinsurer. The reinsurer in this context is sometimes referred to as the "retrocedent," while the reinsurer is sometimes referred to as the "retrocessionaire." Allstate Insurance Co. v. Administratia Asigurarilor De Stat, 875 F.Supp. 1022, 1024 (S.D.N.Y. 1955).

part that "[a]s a condition precedent to any right of action hereunder, in the event of any dispute or difference of opinion hereafter arising with respect to this Contract, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration." Id., Exh. B Article XIII.

Under both Contracts, arbitration takes place before two arbitrators, one appointed by each of the parties, and an umpire selected by the two party-appointed arbitrators.  Both arbitration clauses call for each party to appoint its arbitrator within thirty days of being requested to do so, failing which the other party may appoint an arbitrator on its behalf. Id., Exh. A at Article IX, Exh. B at Article XIII.

B.  The QS Commutation Arbitration and 10 January 2007 Award

By letters dated December 30, 2004 and January 10, 2005, Global demanded arbitration (the "QS Commutation Arbitration") against Argonaut of "all disputed issues relating to [Global's] claims for payments of outstanding retrocessional balances owed to it by Argonaut in connection with [Global's] commutations[2] with its cedents, the American International Group Companies ("AIG") and Home Insurance Company ("Home")." Id. at ¶16, Exh. C.

A five-day arbitration hearing took place in December 2006 before a three-member panel comprised of Arthur Brotter and Richard L. White, as the party-appointed arbitrators for Argonaut and Global, respectively, and Edmond F. Rondepierre, as the umpire.  This arbitration concerned only Global's commutation billings under the Contracts in respect of AIG and Home.

---

[2]Generally speaking, a "commutation is an agreement between the parties bringing to an end the liabilities of the reinsurer under the contract, usually a treaty, although possibly a long-term facultative contract.  In its simplest form, a lump sum payment by the reinsurer is substituted for the unknown future liabilities on ceded risks ...." Staring, Graydon S., Law of Reinsurance §14.6 (April 2007 update), attached to Declaration of Jeffrey S. Leonard dated July 23, 2007 ("Leonard Decl.") as Exh. A.  In this instance, Global commuted all of its treaties and facultative certificates with two of its cedents, Home and AIG.

Id., ¶17-19. Global's other cedents were not at issue in this arbitration, and Argonaut did not assert or request that the Contracts be rescinded. Id.

Argonaut went to great lengths to convince the Arbitration Panel that an award denying Global recovery for the commutation billings at issue would not be unfair or result in a windfall for Argonaut. Rhonda Ijams, Argonaut's president, testified on the last day of hearing that Global could continue to bill Argonaut for Argonaut's share of future losses emanating from Home and AIG as those losses actually developed, and that Argonaut would pay those billings. Id. at ¶20, Exh. D at 1500:4-1510:14. Ijams testified that if Global did not recover from Argonaut on its commutation payments, Global would have to continue to issue billings to Argonaut as claims developed. Id. at 1504:8-23. She agreed that if Global continued "to report claims to Argonaut as adverse development takes place," Argonaut would then pay those claims. Id. at 1500:9-15, 1505:20-1506:13. Ijams's testimony made clear that while Argonaut was unwilling to pay the commutation billings, which it characterized as "estimated" or "accelerated" claims, Argonaut was prepared to pay AIG and Home claims as they actually developed. Id. at 1502:19-1503:11, 1504:4-23; 1505:20-1506:13. Argonaut's other witnesses, including Nadine Stuhr, also testified that Argonaut would pay claims as they were resolved and came due in the normal course. Leonard Decl., Exh. B at 958:19-960:10.

On January 10, 2007, the Panel issued its Award, which stated in part that Argonaut was not required to pay the commutation payments sought by Global:

> The commutation payments that Gerling [Global] seeks to cede to Argonaut are not claims, losses nor settlements within the terms or the meaning of the retrocessional agreements. The agreements make no provision for claims submitted in bulk or blanket form, nor for payments on a non risk-specific basis or an estimated basis. The agreements provide no authority for the unilateral acceleration of the retrocessionaires obligations. Argonaut is not required to pay the amounts sought by Global in this arbitration.

Verified Amended Counter-Petition, Exh. E at ¶2.

However, apparently recognizing the testimony and arguments that Argonaut had presented on the windfall question, the Panel further stated in the Award that Argonaut may be required to pay Global's on-going billings submitted in compliance with the contracts:

> This order does not alter Argonaut's obligations under the retrocessional agreements. Argonaut may be obligated to pay claims submitted in the form required by those agreements.

Id., Exh. E at ¶3.

Nothing in the 10 January 2007 Award states or implies that Global is barred from billing Argonaut in the future for losses emanating from Home and AIG as those losses actually develop. Given the context of the arbitration as well as Argonaut's efforts to eschew a windfall, this paragraph of the Award can only reasonably mean that Argonaut may be obligated to pay its share of on-going, actual Home and AIG losses that are billed to it by Global. The Panel had no need to affirm the Contracts because Argonaut never sought (and had no basis to seek) rescission. Because no issues relating to cedents other than Home and AIG were ever before the Panel, the paragraph cannot have been intended to address future billings on other cedents.

Nevertheless, in early February 2007, Argonaut informed Global that it would not "pay claims submitted in the form required by those agreements" with respect to Home and AIG, despite the language of the award and Ijams's testimony. Id., ¶24. This is in direct contrast to the Award and Argonaut's position at the hearing, where its witnesses testified that although it did not have an obligation to pay estimated claims or accelerated liabilities, it would pay Home and AIG losses as they developed over time.

C. The Motion for Clarification

Faced with Argonaut's misguided reading of the Award, Global submitted a motion to the Panel on February 12, 2007, requesting clarification. Id. at ¶¶ 25, 27, Exhs. F, H. Argonaut opposed the motion, asserting that Global was asking for new relief that had not been requested in the arbitration, and that the Panel was without power to act on the motion under the functus officio doctrine. Id. at ¶26, Exh. G.

On March 1, 2007, the Panel majority concluded that it was without authority to act on Global's motion because the majority found no mistake or ambiguity in the Award. Id. at ¶28, Exh. I.

D. The March 2007 Arbitration Demand

Actual claims have developed, been resolved by Home and AIG, and been billed to Argonaut subsequent to the 10 January 2007 Award. Argonaut has refused to pay these new billings. See Affidavit of Christopher Hollender, sworn to on June 15, 2007 (submitted by Argonaut), Exhs. 13, 14.

By letter dated March 14, 2007, Global commenced a separate arbitration ("March 2007 Arbitration") to collect present amounts due under the Contracts in respect of claims emanating from Home and AIG, in accordance with the QS Commutation Panel's Award. Verified Amended Counter-Petition. Exh. J. In light of Argonaut's position on the effect of the 10 January 2007 Award, the issues to be resolved in this arbitration include the following: (a) whether Global is entitled to bill Argonaut under the Contracts as specific claims actually develop and are resolved by Home and AIG; (b) whether Argonaut must process and pay such billings in accordance with certain protocols adopted from the sworn testimony of its president; and (c) whether Argonaut acted in bad faith. Id. at ¶¶29-30.

Argonaut designated Thomson as its party–appointed arbitrator by letter dated April 11, 2007. Id. at ¶31, Exh. K. Thomson has served as Argonaut's party-appointed arbitrator adverse to Global on at least two other occasions within the past year, including one arbitration concerning the recoverability of commutation-related billings under retrocessional reinsurance contracts by which Argonaut reinsured Global. Id. at ¶31.

Although Argonaut did not demand that Global appoint its arbitrator, Global in good faith designated White as its party-appointed arbitrator by letter dated April 26, 2007. Id. at ¶31, Exh. L. On May 14, 2007, Argonaut objected to White's appointment and demanded that Global appoint a replacement within 30 days. Id., Exh. M. By letter dated June 15, 2007, Argonaut purported to appoint Gass as Global's arbitrator. Gass has served as a party-appointed arbitrator adverse to Global on at least 12 occasions over the last four years. Id. at ¶33, Exh. M.

Argonaut's arbitrator, Thomson, has failed to cooperate with White in proceeding with the selection of the umpire for the March 2007 Arbitration. Id., ¶34. Argonaut persists in its refusal to proceed with umpire selection and the arbitration before a panel that includes White, and continues to assert that Gass is Global's arbitrator.

### PROCEDURAL HISTORY

On or about June 15, 2007, Argonaut filed in New York State court a Petition to confirm the 10 January 2007 Award under CPLR Article 75. It also filed what it styled as a "Motion to Stay Arbitration or For Alternative Relief," to permanently stay the March 2007 Arbitration or to require that it proceed before Gass as Global's arbitrator. On July 5, 2007, Global removed the action to this Court because the two arbitrations that were the subject of Argonaut's Petition and "Motion" were between Argonaut, an Illinois citizen, and Global, a Germany corporation with its principal place of business in Cologne, Germany.

8

On July 16, 2007, Global filed its Answer and Verified Counter-Petition to confirm the 10 January 2007 Award under the FAA and for relief in aid of the March 2007 Arbitration, to order Argonaut to proceed with the March 2007 arbitration before White as Global's arbitrator. Global also filed a Response to Argonaut's "Motion" on that same date.

On July 20, 2007, Global served a Verified Amended Counter-Petition, which added that Global, as a German citizen, is also entitled to relief under 9 U.S.C. §201, et seq., as these arbitration disputes are subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention").

ARGUMENT

I.    THE FEDERAL ARBITRATION ACT, INCLUDING THE NEW YORK
      CONVENTION, APPLY TO THIS DISPUTE

Although Global and Argonaut dispute its interpretation, the parties agree that the 10 January 2007 Award in the QS Commutation Arbitration should be confirmed. However, contrary to Argonaut's assertion, the Award should be confirmed under the Federal Arbitration Act and not CPLR Article 75, because this arbitration dispute involving national and international reinsurance and commerce is governed by the FAA, including the New York Convention, 9 U.S.C. §201 et seq.

The New York Convention has four basic requirements: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope. Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 92 (2d Cir. 1999).

Here, the New York Convention applies because Global is a German citizen with its principal place of business in Cologne, Germany, while Argonaut is a citizen of Illinois.

9

Verified Amended Counter-Petition at ¶¶3-4. The Contracts at issue are written agreements that provide for arbitration in New York, New York. Id. at ¶8, Exhs. A, B. Reinsurance is a commercial matter and this matter is not entirely domestic in scope. See, e.g., Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co., 264 F.Supp.2d 926, 931-932 (N.D.Cal.2003).

The FAA and the Convention have "overlapping coverage" to the extent they do not conflict. See Bergensen v. Joseph Muller Corp., 710 F.2d 928, 934 (2d Cir. 1983); 9 U.S.C. § 208 (FAA applies to actions brought under the Convention "to the extent that chapter [i.e., the FAA] is not in conflict with this chapter [9 U.S.C. §§ 201-208] or the Convention as ratified by the United States").

Accordingly, the parties' dispute must be resolved under the FAA and New York Convention.

II.   BECAUSE THE DEFENSES OF RES JUDICATA AND ESTOPPEL MUST BE DETERMINED BY AN ARBITRATION PANEL RATHER THAN THE COURT, ARGONAUT SHOULD BE ORDERED TO PROCEED WITH THE ARBITRATION

Argonaut's illogical interpretation of the 10 January 2007 Award is completely unfounded. Once Argonaut made clear it refusal to pay on-going claims in respect of Home and AIG, Global properly demanded arbitration under the broad arbitration clause of the Contracts. The Court should not give any credence to Argonaut's efforts to thwart the arbitration process by its baseless "Motion," which seeks not only to permanently stay the March 2007 Arbitration, but the alternative relief of ousting Global's duly appointed arbitrator.

As a threshold matter, there is a "strong presumption of arbitrability" under the FAA. United States Fire Ins. Co. v. National Gypsum Co., 101 F.3d 813, 816 (2d Cir. 1996). This strong presumption "applies with greater force when an arbitration clause is a broad one."

McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988).

In a dispute over arbitrability, only two questions should concern a court: (1) whether there is a valid agreement to arbitrate; and (2) whether the particular dispute sought to be arbitrated is within the scope of the arbitration agreement. National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir. 1996).

Neither Argonaut nor Global contests the validity of the arbitration clauses contained in the Contracts. The clauses are very broad, requiring arbitration of all disputes "arising out of" or "arising with respect to" the Contracts. This squarely encompasses the dispute embraced by the March 2007 Arbitration: whether Argonaut must pay Global's on-going billings in respect of Home and AIG in accordance with the Contracts and the 10 January 2007 Award, which itself applied the Contracts to resolve the parties' prior dispute over the recoverability of commutation billings under the Contracts.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238 (1985). The FAA establishes that, as a matter of federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941-42 (1983); David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd., 923 F.2d 245 (2d Cir. 1991)("arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an

11

interpretation that covers the asserted dispute")(internal quotes and citation deleted).  Because the arbitration clauses in the parties' Contracts are broad enough to encompass their dispute over whether Argonaut must pay Global's current billings, the Court should order the parties to proceed with the March 2007 Arbitration.

It is well established in this Circuit that a res judicata defense based on a prior arbitration proceeding is "a component of the dispute on the merits" that must be resolved by the arbitrator, not the court.  Belco Petroleum, 88 F.3d at 135-136 (alleged preclusive effect of prior arbitration award is for arbitrator to decide); Lito Shipping Corp. v. Pioneer Petroleum Products, Inc., 1997 WL 160321 at *2 (S.D.N.Y. 1997)(whether res judicata based on earlier arbitration decision over Charter Party claim bars current claim for demurrage "must be decided by the arbitrators, not the district court").  Other circuits have reached the same conclusion.  See, e.g., John Hancock Mutual Life Ins. Co. v. Olick, 151 F.3d 132 (3d Cir. 1998) (res judicata defense based on prior arbitration award is issue to be arbitrated); Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126 (9th Cir. 2000) (arbitrator, not court, decides whether res judicata defense based on prior arbitration bars subsequent arbitration).  Indeed, even where the prior determination was made by a court, the question of whether it precludes a subsequent arbitrable claim is for the arbitrator to decide.  National Gypsum, 101 F.3d at 816-17 (issue preclusion or collateral estoppel, like other defenses to arbitrability, is for arbitrator to decide).

The cases cited by Argonaut are inapposite either because they were overruled by the Second Circuit's decisions in Belco and National Gypsum, or because they purport to follow New York law, which does not apply to this international reinsurance dispute.  For example, Burmah Oil Tankers, Ltd. v. Trisun Tankers Ltd., 687 F.Supp. 897 (S.D.N.Y. 1988), upon which Argonaut places great reliance, was rejected by this Court in Lito Shipping because it pre-dated

12

the Second Circuit's holdings in <u>Belco</u> and <u>National Gypsum</u>. <u>Lito Shipping</u>, 1997 WL 160321

at *2 fn. 2. Similarly, <u>National Shipping & Trading Corp. v. Buck Shipping Inter. Ltd.</u>, 1985

WL 495 (S.D.N.Y. 1985), also relied upon by Argonaut, was decided more than ten years before

<u>Belco Petroleum</u> and <u>National Gypsum</u>.

The decisions of the Second Circuit and this Court over the last ten years, including

<u>Belco Petroleum</u>, <u>National Gypsum</u>, and <u>Lito Shipping</u>, holding that res judicata and collateral

estoppel are issues for the arbitrators to decide, comport with the "strong presumption in favor of

arbitration" under the FAA, and are also in harmony with recent decisions of the Supreme Court

Cases, holding that a wide range of issues are for arbitrators to decide, not the courts. <u>See, e.g.</u>,

<u>Howsam v. Dean Witter Reynolds</u>, 537 U.S. 79, 85; 123 S. Ct. 588, 592 (2002)(holding that

defense based on NASD time limit is for arbitrator to decide, and favorably citing comment to

Revised Uniform Arbitration Act of 2000 ("RUAA") that issues such as time limits, notice,

laches, and estoppel are for arbitrators to decide); <u>Green Tree Financial Corp. v. Bazzle</u>, 539

U.S. 444, 123 S. Ct. 2402 (2003) (arbitrators to decide whether class arbitration permissible).

Argonaut's "Motion" to stay the arbitration should be denied, and Argonaut should be

ordered to proceed with the March 2007 Arbitration.

III. ASSUMING ARGUENDO THAT THE RES JUDICATA AND
COLLATERAL ESTOPPEL DEFENSES WERE FOR A COURT TO
DECIDE, THEY ARE INAPPLICABLE HERE.

Assuming <u>arguendo</u> that it were within the province of a court to decide whether an

award in one arbitration precludes a subsequent arbitration, the Court would have to reject

Argonaut's preclusion defenses. At best for Argonaut, there is a dispute over what the 10

January 2007 Award means. Argonaut claims that it imposes a forfeiture, not only denying

Global recovery on its commutation billings, but also prohibiting it from billing Argonaut in the

13

future as actual claims develop and are resolved by Home and AIG. This would allow Argonaut to obtain the benefit of Global's commutations with Home and AIG without ever having to pay for them. It would result in an enormous windfall for Argonaut, because Home and AIG face a legion of asbestos, environmental, and other claims that have yet to be asserted. Global, on the other hand, asserts that the Award says nothing about a forfeiture, and explicitly provides that Argonaut may be required to pay claims "submitted in the form required by the Contracts." This, then, is one of the issues to be decided in the March 2007 Arbitration over Global's claim for recovery on its current non-commutation billings -- whether Global's or Argonaut's interpretation of the Award is correct.

Argonaut's preclusion defenses are a sham. Its strained reading of the 10 January 2007 Award is absurd and ignores the argument it advanced on the final day of hearing through the testimony of its President, and it fails to prove that res judicata (or collateral estoppel) are applicable here. It is well-established that the "proponent of res judicata must demonstrate that: (1) the court rendered a final judgment on the merits in the prior case; (2) the prior suit involved the same parties or their privies; and (3) the opponent bases the subsequent suit on the same causes of action." Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co., 933 F. Supp. 1170, 1175-1176 (S.D.N.Y. 1996). See also Johnson v. New York Hosp., 1998 U.S. Dist. LEXIS 19099 (S.D.N.Y. 1998) (burden on the proponent of res judicata to demonstrate elements are satisfied).

Other than showing that the parties are the same in both arbitrations, Argonaut has not satisfied the first and third prongs of the res judicata test. The 10 January 2007 Award does nothing to preclude the March 2007 Arbitration claims and billings; in fact, it authorizes them. The Award denied Global recovery only of the commutation billings that were before the Panel.

14

The Award stated that "Argonaut is not required to pay the amounts sought by Global in this arbitration." Verified Amended Counter-Petition, Exh. E (emphasis added). The Panel denied Global this recovery because the commutation billings were "submitted in bulk or blanket form, ... on a non risk-specific basis or an estimated basis." Id. However, the final paragraph of the Award also expressly provided that "Argonaut may be required to pay claims in the form required by the Agreements." Id. Global has now done that, as specific claims have been resolved for fixed (rather than estimated amounts) amounts by Home and AIG.

Argonaut is now required to pay Global's current billings for Argonaut's share of those amounts in accordance with the Contracts and the Award. The final paragraph of the Award cannot reasonably be construed to mean anything else. It would make no sense to construe it to relate only to Global's other cedents, because no cedents other than Home and AIG were ever implicated in the arbitration. Global was always at liberty to submit billings to Argonaut in connection with non-commutation-related claims involving other cedents; the Panel's rejection of Global's commutation billings could have no impact on that. Similarly, the Award's final paragraph cannot simply be a reaffirmation of the Contracts, because Argonaut sought only the denial of Global's commutation-related claims, not a rescission of the Contracts.

Not only does this construction of the Award comport with its terms and with the context of what the QS Commutation Arbitration was about, but it also is consistent with the testimony of Ijams, Argonaut's President, on the last day of hearing. In an effort to persuade the Panel that denial of Global's commutation billings would not be unjust and would not produce a windfall for Argonaut, she testified that Global could continue to bill Argonaut for its share of Home and AIG claims as those losses developed and were resolved, and that Argonaut would pay those actual, non-estimated billings. Id. at ¶20. The last paragraph of the Award does nothing more

15

than require Argonaut to do that which it swore it was prepared to do. If anyone should be precluded under the Award, it is Argonaut, not Global.

The new billings do not comprise the same cause of action that was denied in the QS Commutation Arbitration. To have preclusive effect, the court must look to "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." NLRB v. United Technologies Corp., 706 F.2d 1254, 1259-1260 (2d Cir. 1983).

The billings or transactions that were at issue in the QS Commutation Arbitration were the Home and AIG commutation-related billings issued in 2003 and 2004. In contrast, the dispute in the March 2007 Arbitration concerns subsequent billings that have developed in the normal course, that are neither accelerated nor estimated, and that are in the "in the form required by [the Contracts]," as provided by the 10 January 2007 Award. The evidence to support the billings in the two arbitrations is also different, as are the amounts at issue. For example, the QS Commutation Arbitration concerned Global's commutations with Home and AIG, and the methodology it used to allocate its lump sum commutation payment to various claims. None of these transactions are involved in the March 2007 Arbitration. It concerns billings based on actual losses that have developed and been resolved by Home and AIG.

There also is no basis for collateral estoppel to apply. Argonaut asserts that the issues in the March 2007 Arbitration had been or could have been raised in the QS Commutation Arbitration, and cites to thirty-two seemingly random hearing transcript pages with no guidance as to what specific testimony upholds Argonaut's conclusory statement. Argonaut Memorandum at p.10. But, the claims in the March 2007 Arbitration were not raised and could not have been raised in the prior arbitration. Global had no way of knowing that Argonaut would not abide by

what its witnesses swore under oath Argonaut would do, namely, adjust and pay actual bills as the claims came due in the normal course. Global had no way of knowing that Argonaut would try to distort the Award, arguing that it imposes something Argonaut did not ask for from the Panel -- a complete forfeiture and windfall.

Indeed, Argonaut's conduct in this matter is a study in asserting shifting, contradictory positions. It swore to the QS Commutation Panel that denial of Global's commutation-related billings would not be unfair or produce a windfall because Argonaut would pay on-going billings in respect of Home and AIG as claims actually developed and were resolved. Verified Amended Counter-Petition at ¶20. Then, once Argonaut obtained that result through the Award, it informed Global that it would not pay on-going Home and AIG-related claims submitted in the form required by the Contracts. When Global moved the Panel to clarify that the Award obliged Argonaut to pay such on-going claims, Argonaut protested that the motion was "a request for new, post-award relief ... that Global never requested during the arbitration proceedings." Id., Exh. G at 1. Now that the Panel has concluded that it was without authority to act on Global's motion, Argonaut takes the position in this litigation that the relief sought by Global in the March 2007 Arbitration was not new but in fact was at issue in the QS Commutation Arbitration.

The Contracts provide that they are honorable engagements, that the arbitrators should construe them as honorable engagements, and that the arbitrators need not follow the strict rules of law. Id., Exh. A at Art. IX ¶3; Exh. B at Art. XIII ¶B. Because of these clauses and the nature of reinsurance arbitration, it is no wonder why Argonaut wants the Court, as opposed to an arbitration panel, to decide these defenses, or why, if it cannot persuade the Court to permanently stay the March 2007 Arbitration, Argonaut's fallback position is to try to "stack" the panel in its favor. Argonaut knows full well that an arbitration panel, which must be comprised of active or

retired reinsurance executives, would not hesitate to reject Argonaut's res judicata and estoppel defenses. As observed by one industry commentator, "there is seldom a proper context in which to apply res judicata and collateral estoppel in a reinsurance arbitration." Hall, Robert M., <u>Res Judicata and Collateral Estoppel Effect of Prior Arbitration Orders: What Impact on Subsequent Arbitrations?</u>, Mealey's Litig. Rep. Reinsurance, Vol. 17, No. 17, pg. 2 (2007), attached to Leonard Decl. as Exh. C.

## IV.  AN ARBITRATOR'S FITNESS TO SERVE CANNOT BE CHALLENGED PRIOR TO THE FINAL AWARD

If Argonaut cannot prevail on its frivolous request to permanently stay the March 2007 Arbitration, its fallback position is to try to delay the arbitration and stack the panel in its favor.[3] Global's Verified Amended Counter-Petition seeks to enforce the parties' arbitration agreement pursuant to 9 U.S.C. §§4 and 206 by requiring Argonaut to proceed to arbitration in accordance with the Contracts' terms. Argonaut should not be permitted to try to "fix" the arbitration by appropriating to itself the right to disqualify White and appoint a replacement. The Court has jurisdiction to compel Argonaut to proceed with the arbitration before White, Global's duly appointed arbitrator.

Although Section 5 of the FAA, 9 U.S.C. §5, allows for the judicial appointment of arbitrators when the agreement fails to set forth any procedure for designating them or if there is a lapse in either making an appointment or in filling a vacancy, none of these things is present here. Moreover, there is no provision in the FAA that provides for a pre-award judicial challenge to an arbitrator's qualifications. Argonaut's indulgence in the extra-judicial, self-help remedy of purporting to unilaterally disqualify White and appoint a replacement should not be

---

[3] Argonaut's proffered replacement arbitrator, Gass, is an absurd choice. He has served as a party-appointed arbitrator adverse to Global on approximately 12 occasions over the last four years. Verified Amended Counter-Petition at ¶33.

condoned. "No authority sanctions that degree of extra-judicial self-help." American Centennial Insurance Co. v. Commonwealth Insurance Co., 1987 WL 17649 at *3 (S.D.N.Y. 1987).

Argonaut's discussion of New York law to uphold its assertion that it may challenge White's fitness to serve prior to the final award is inapposite, because as Argonaut knows, federal law applies to the procedural aspects of this arbitration. See, e.g., Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co., 264 F. Supp.2d at 932-33.

It is firmly established in the Second Circuit that, consistent with the strictly limited role of the courts under the FAA, a court may not entertain an inquiry into an arbitrator's qualifications or partiality until the arbitrators have reached a conclusion and issued an award. Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892 (2d Cir. 1997). In Aviall, the petitioner sought to arbitrate a dispute regarding the allocation of certain pension benefits between it and its former parent, Ryder. Aviall, 110 F.3d at 894. Ryder had consolidated all of its aviation-related businesses in petitioner and then spun it off to Ryder's shareholders. Id. at 893. The "spin-off" documents executed by the parties provided that all disputes between the parties would be submitted to KPMG Peat Marwick ("KPMG"), Ryder's outside auditor, for arbitration. Id. Petitioner filed suit seeking a declaration that KPMG should be disqualified as arbitrator due to bias, because KPMG had been involved in certain business dealings with Ryder and had even helped Ryder prepare for the arbitration. Id. at 894-895.

Holding that an arbitrator's qualifications cannot be challenged prior to the issuance of a final award, the Second Circuit observed that while the FAA permits a court to "vacate an award 'where there was evident partiality or corruption in the arbitrators,' it does not provide for pre-award removal of an arbitrator.'" Id. at 895 (quoting FAA, 9 U.S.C. §10 (a)(2)). A district court "cannot entertain an attack upon the qualifications or partiality of arbitrators until after the

19

conclusion of the arbitration and the rendition of an award." <u>Michaels v. Mariforum Shipping, S.A.</u>, 624 F.2d 411, 414 n. 4 (2d Cir. 1980). Further, the FAA "does not provide for judicial scrutiny of an arbitrator's qualifications to serve, other than in a proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service." <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 174 (2d Cir. 1984); <u>Alter v. Englander</u>, 901 F.Supp. 151, 153 (S.D.N.Y. 1995); <u>Marc Rich & Co. v. Transmarine Seaways Corp.</u>, 443 F.Supp. 386, 387 (S.D.N.Y. 1978); <u>See</u> <u>also</u> <u>Gulf Guaranty Life Ins. Co. v. Connecticut General Life Ins. Co.</u>, 304 F.3d 476, 490 (5th Cir. 2002); <u>Cox v. Piper, Jaffray & Hopwood, Inc.</u>, 848 F.2d 842, 843-44 (8th Cir. 1988); <u>Certain Underwriters at Lloyd's, London v. Argonaut</u>, 264 F. Supp.2d at 935-937.

Argonaut's refusal to proceed with arbitration and attempt to challenge White prior to an award because he sat on other arbitration panels involving the parties is "utterly frivolous." <u>See</u> Porter and Poag, <u>Pre-Award Attempts to Disqualify Arbitrators and Umpires – A Fitting End to A Dilatory Practice</u>, Mealey's Litigation Report: Reinsurance, Vol. 13, No. 13, p. 2 (Nov. 2002)(Leonard Decl., Exh. D), <u>citing</u> <u>Fidelity Security Life Ins. Co. v. John Hancock Life Ins. Co.</u>, No. 02-11663-WGY at 1 (D. Mass. Sept. 27, 2002)(Leonard Decl., Exh. E). Such pre-award challenges delay the arbitral process and run counter to one of the purposes of the FAA, to minimize the involvement of the courts in the arbitration process. <u>Marc Rich & Co.</u>, 443 F.Supp. at 387 (allowing pre-award challenges would frustrate prime FAA objective of "permit[ting] a just and expeditious result with a minimum of judicial interference").

Because the Court cannot entertain Argonaut's challenge to White's qualifications prior to the completion of the arbitration and the issuance of a final award, Argonaut should be required to proceed before a panel that includes Global's duly appointed party-arbitrator, White.

V.   THERE IS NO REQUIREMENT OF IMPARTIALITY FOR A PARTY-
     APPOINTED ARBITRATOR AND EVEN IF THERE WERE, THERE
     HAS BEEN NO SHOWING OF EVIDENT PARTIALITY AS TO
     GLOBAL'S PARTY-APPOINTED ARBITRATOR.

Even if challenges to an arbitrator's qualifications could be entertained prior to the final award, Argonaut has made no showing of "evident partiality" as to White. Argonaut's only point is that White was Global's arbitrator in the QS Commutation Arbitration and in other arbitrations between the parties. But over the past year, Argonaut, like Global, has appointed the same arbitrator in more than one arbitration between the parties regarding Global's commutation billings in respect of various cedents; Thomson was Argonaut's arbitrator in one of those other arbitrations, and he also has served as Argonaut's arbitrator in at least one other recent matter adverse to Global. Further, Argonaut nominated the same umpire candidate for two arbitrations against Global concerning the Home and AIG commutations including the QS Commutation Arbitration, and that candidate ended up serving as the umpire in both arbitrations. If anyone involved in this matter is subject to challenge for evident partiality, it is Gass, who has served as party-appointed arbitrator adverse to Global at least 12 times over the past four years.

White's prior service in the QS Commutation Arbitration does not prove the "evident partiality" required under the Section 10(a)(2) of FAA to disqualify an arbitrator. See Nationwide Mut. Ins. Co. v. First State Ins. Co., 213 F. Supp.2d 10, 20 (D. Mass. 2002)(improper partiality not shown because party-appointed arbitrator, unlike umpire, not required to be neutral and expected to act as advocate). White's prior service on a panel concerning commutation billings does not establish that he has already made up his mind (any more or less than Argonaut's arbitrator, Thomson) that Global is entitled to recover on the different billings at issue in the March 2007 Arbitration.

In reinsurance arbitrations before a tripartite panel, "[p]arty appointed arbitrators are

21

supposed to be advocates for the party that appointed them." <u>Sphere Drake Insurance Ltd. v. All America Life Insurance Co.</u>, 307 F.3d 617, 620 (7th Cir. 2002)(emphasis original). Courts have long recognized that, in a tripartite arbitration, each party will appoint an arbitrator sympathetic to its claim. <u>Crystal City Police Benevolent Assoc. v. City of Corning</u>, 91 A.D.2d 843, 844, 458 N.Y.S.2d 401, 402 (4th Dept. 1982). It is understood that "party designated arbitrators are not and cannot be 'neutral,' at least in the sense that the third arbitrator or a judge is." <u>Astoria Medical Group v. Health Insurance Plan of Greater New York</u>, 11 N.Y.2d 128, 134, 227 N.Y.S.2d 401, 404 (1962). Indeed, parties contract for this type of arbitration to ensure that their respective positions will be represented on the panel by someone sympathetic to those positions. <u>Id</u>. at 135, 227 N.Y.S.2d at 405. Moreover, "arbitration differs from adjudication ... because the 'appearance of partiality' ground of disqualification for judges does not apply to arbitrators; only evident partiality, not appearances or risks, spoils an award." <u>Sphere Drake</u>, 307 F.3d at 621.

### VI.    ALTERNATIVELY, GLOBAL TIMELY APPOINTED WHITE AND SHOULD BE ALLOWED REASONABLE TIME TO APPOINT A REPLACEMENT IF HE IS DISQUALIFIED

In the event the Court decides that Argonaut may challenge White at this early stage and determines that he is not qualified to serve as Global's arbitrator, then Global should be granted reasonable time within which to appoint a replacement. This result is consistent with the parties' intention to have disputes decided by a three-member panel and with case law construing default appointment provisions where a timely appointed arbitrator is subsequently disqualified.

Argonaut and Global contracted to have their disputes heard by a tripartite arbitration panel, where each party appoints an arbitrator of its choice, and the two arbitrators appoint an umpire. Choosing one's own arbitrator is "a 'valuable' contractual right not lightly to be disregarded." <u>Astoria Medical Group</u>, 11 N.Y.2d at 134, 227 N.Y.S.2d at 405. It is well-

22

established in reinsurance arbitration law that the right of each party to appoint an arbitrator is integral to the arbitration process. American Centennial Insurance Co., 1987 WL 17649 at *2 (courts recognize that each party has interest and right in appointing arbitrator of its choice because "appointees from either side ... function as quasi advocates"); Evanston Insurance Co. v. Kansa General International Insurance Co. Ltd., 1995 WL 23063 at *3 (N.D. Ill 1995) ("overriding intent" of the parties was to have disputes resolved by three-member panel comprised of one arbitrator appointed by each party and a neutral umpire). The right is not lost where a party timely appoints an arbitrator who is subsequently challenged, in the absence of an explicit contract provision imposing a forfeiture in that circumstance. Id. at *4 (right to appoint not forfeited where arbitrator resigns following challenge and purported appointment of replacement by challenging party).

A contractual provision allowing a party to appoint the other side's arbitrator upon its failure to timely designate its arbitrator is triggered by inaction at the time of the initial demand. Argonaut Midwest Insurance Co. v. General Reinsurance Corp., 1998 WL 474142 at *3 (N.D. Ill. 1998) (default power of appointment triggered by inaction at the time of the initial request for arbitration); American Centennial, 1987 WL 17649 at *2-3 (party allowed twenty days to appoint replacement after determination that its timely-appointed arbitrator not an active officer). This reflects that the intent and purpose of the default appointment provision is to "prevent a recalcitrant party from entirely frustrating the arbitration machinery by declining to name any arbitrator." Id. at *2.

Where, as here, a party timely appoints an arbitrator who then is successfully challenged (assuming arguendo that such a challenge may be entertained prior to the award) or resigns, the appointing party does not forfeit its right to select an arbitrator and is allowed reasonable time to

23

designate a replacement. <u>American Centennial</u>, 1987 WL 17649 at *2-3.[4]  <u>See also</u> <u>Evanston</u>, 1995 WL 23063 at *3 (court will not "subscribe to the fiction ... that the nomination of [an arbitrator who later withdrew after being challenged] was the equivalent of no nomination at all").

Here, although Argonaut did not demand that Global appoint its arbitrator and its time to do so therefore did not even begin to run, Global appointed White as its arbitrator in good faith. Global has not acted to delay this arbitration.  Indeed, as a cedent seeking to recover amounts owed by Argonaut, Global's interest is to quickly complete the arbitration.  The delay has been caused by Argonaut's willingness to indulge in the delay and self-help remedy that has been criticized by the courts. <u>See</u> <u>American Centennial, supra</u>; <u>Certain Underwriting Members of Lloyd's v. CIGNA Worldwide, Inc.</u>, 1993 WL 258739 at *1 (S.D.N.Y. 1993) (delay resulted from reinsurers' objection to the arbitrator selected by cedent).

Argonaut's strategy not only seeks to evade the <u>Aviall</u> prohibition of pre-award attacks on an arbitrator's impartiality, but also is an attempt to create a "win-win" situation.  Even if Argonaut fails in its bid to name both arbitrators, it will have delayed the March 2007 Arbitration and required Global to bear the expense of opposing its frivolous effort to stack the Panel.  Under the circumstances, if the Court decides that a pre-award challenge is permissible and determines that White is not qualified, Global should be allowed reasonable time in which to appoint a replacement.

---

[4] The case was decided ten years before the Second Circuit's holding in <u>Aviall</u> that a court may not entertain a challenge to an arbitrator's qualifications or impartiality prior to the conclusion of the arbitration.  In addition, the <u>American Centennial</u> court held that one party's "unilateral determination of [an opposing party arbitrator's] lack of qualifications" and attempted appointment of a replacement was unwarranted, because "[n]o authority sanctions that degree of extra-judicial self help." <u>American Centennial,</u> 1987 WL 17649 at *3.

CONCLUSION

For the foregoing reasons, the court should grant the Verified Amended Counter-Petition and issue judgment:

1.    ordering Argonaut to proceed with the March 2007 Arbitration;

2.    upholding Global's appointment of White as its arbitrator, enjoining Argonaut and counter-petition respondent Gass from taking any action to proceed with umpire selection or the arbitration before a panel that includes Gass, and requiring Argonaut to proceed with umpire selection and the arbitration with White as Global's party-appointed arbitrator;

3.    alternatively, in the event the Court determines that it may entertain Argonaut's challenge to White's qualifications prior to the issuance of a final award and decides that White is not qualified, allowing Global reasonable time in which to designate a replacement for White; and

4.    granting Global attorneys' fees, costs, and such other and further relief as is just and proper.

Dated: Short Hills, New Jersey
       July 23, 2007

Respectfully submitted,

Budd Larner, P.C.
150 John F. Kennedy Pkwy.
Short Hills, New Jersey  07078
(973) 379-4800
Attorneys for Respondent/Counter-Petitioner
  Global Reinsurance Corp. - U.S. Branch

BY:    _____

       JOSEPH J. SCHIAVONE (7303)
       JEFFREY S. LEONARD (5931)

646522.w

25