UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In the Matter of the Arbitration : Docket No. 07 CV 6222(SHS)
Between:                          :
                                  :
ABC CORPORATION,                  :
                                  :
                                  :
      Petitioner/Respondent       :
        on Counter-Petition,      :
                                  :
                                  :
- against -                       :
                                  :
XYZ CORPORATION,                  :
                                  :  **FILED UNDER SEAL**
      Respondent/Counter-Petitioner :
_____:

_____

REPLY BRIEF OF XYZ CORPORATION IN FURTHER SUPPORT OF
AMENDED COUNTER-PETITION
_____

BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
(973) 379-4800
Attorneys for Respondent/Counter-Petitioner XYZ Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Arbitration Between | : Docket No. 07 CV 6222(SHS) |
| | : |
| Argonaut Insurance Company, | : |
| | : |
|     Petitioner/ Respondent on Counter Petition, | : |
| | : |
| - against - | : |
| | : |
| GLOBAL Reinsurance Corporation - U.S. Branch, | : **FILED UNDER SEAL** |
| | : |
|     Respondent/ Counter-Petitioner. | : |
| | : |

---

## REPLY BRIEF OF GLOBAL REINSURANCE CORP. - U.S. BRANCH IN FURTHER SUPPORT OF AMENDED COUNTER-PETITION

---

Budd Larner, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey  07078
(973) 379-4800
Attorneys for Respondent/
Counter-Petitioner

On the Brief

Joseph J. Schiavone, Esq.
Jeffrey S. Leonard, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

SUPPLEMENTAL STATEMENT OF FACTS..........................................................................1

ARGUMENT.................................................................................................................................3

    I.  The New York Convention and FAA Apply Here, Not New York Law........................3

    II.  The Court Should Not Decide Defenses of Res Judicata And Collateral Estoppel.......6

    III. An Arbitrator's Fitness to Serve Cannot be Challenged Pre-Award, Nor Has
        Argonaut Demonstrated Evident Partiality on the Part of Richard White ...................9

CONCLUSION ...........................................................................................................................10

## Table of Authorities

**Page**

Aviall, Inc. v Ryder System, Inc., 110 F.3d 892, 895 (2d Cir. 1997) ............................................9

Borden, Inc. v. Meiji Milk Products, Inc., 919 F.2d 822 (2d Cir. 1990), cert. denied, 500 U.S. 953 (1991).......................................................................................................................................5

Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co., 264 F.Supp.2d 926 (N.D. Cal. 2003) .......................................................................................................................4

Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126 (9th Cir. 2000) ...........................6

Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238 (1985)...............................6

Federated Rural Electric Ins. Co. v. Nationwide Mut. Ins. Co., 134 F. Supp.2d 923 (S.D. Ohio 2001)...............................................................................................................................8, 9

Filanto, S.P.A. v. Chilewich Intern. Corp., 789 F.Supp. 1229 (S.D.N.Y. 1992)...........................4

In the Matter of Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp., 793 N.Y.S.2d 831, 834 (2005).....................................................................................................8

John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132 (3d Cir. 1998).......................................6

JSC Surgutneftegaz v. President and Fellows of Harvard College, 2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005), aff'd, 167 Fed.Appx. 266 (2d Cir. 2006).................................................4

Litco Shipping Corp. v. Pioneer Petroleum Prod., Inc., 1997 WL 160321 (S.D.N.Y. 1997) .........6

Marie v. Allied Home Mort. Corp., 402 F.3d 1 (1st Cir. 2005) ......................................................8

Metropolitan Prop. and Cas. Ins. Co. v. J. C. Penney Cas. Ins. Co., 780 F.Supp. 885 (D. Conn. 1991)...............................................................................................................................9

National Union Fire Ins. Co. v. Belco Petroleum Co, 88 F.3d 129, 135 (2d Cir. 1996).................6

North River Ins. Co. v. Allstate Ins. Co., 866 F. Supp. 123 (S.D.N.Y. 1994) ...........................7, 9

Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525 (1987)...............................................5

Sphere Drake Ins. Co. v. American Life Ins. Co., 307 F.3d 617 (7th Cir. 2002), cert. denied, 538 U.S. 961 (2003)........................................................................................................9

Uniformed Firefighters v. City of Long Beach, 762 N.Y.S. 2d 819 (A.D. 2d Dept. 2003)............5

United States Fire Ins. Co. v. National Gypsum Co., 101 F.3d 813 (2d Cir. 1996),
  cert. denied, 521 U.S. 1120 (1997)................................................................................6

Venconsul, N.V. v. Tim Intern, N.V., 2003 WL 21804833 (S.D.N.Y. Aug. 5, 2003)...................5

## **Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq*...............................................................3

New York Convention, 9 U.S.C. § 201 *et seq.* .............................................................3

## **Other Authorities**

Practice Comm. (McKinney's), CPLR 7501:13............................................................5

Staring, Graydon S., Law of Reinsurance § 21.2 (April 2007) ......................................4

## PRELIMINARY STATEMENT

This case is about Argonaut's effort to manufacture a forfeiture out of the 10 January 2007 Award and to deny Global its contractual right — reaffirmed in the third paragraph of the Award — to arbitrate its demand for payment on claims that have actually developed, been paid by Home and AIG, and been presented to Argonaut in the form required by the Contracts. In an effort to avoid the arbitral forum to which Argonaut is bound, and in which it would surely lose, Argonaut seeks to by-pass the arbitral process and have this court decide the merits of its spurious res judicata and collateral estoppel arguments. Alternatively, it seeks to stack the arbitration panel. This court should, in accordance with well-developed federal case law, decline to accept Argonaut's invitation to decide the merits of this dispute. Res judicata and collateral estoppel, which rarely are enforced in reinsurance arbitrations, are in any event defenses that must be decided by the arbitrators, not a court. The Court also should reject Argonaut's resort to the self-help remedy of unilaterally disqualifying Global's duly-appointed arbitrator and purporting to appoint a replacement. A court has no jurisdiction to entertain a pre-award challenge to an arbitrator.

Argonaut suggests that New York law controls here, or that if the FAA and New York Convention apply as well, there is no conflict with state law. However, federal and state law are not the same, and there is no reason why the Court should turn to state law rather than apply federal law, which governs this international reinsurance dispute. Argonaut, for the most part, ignores the cases cited in Global's opening Brief and asks this court to apply distinguishable cases decided outside of this Circuit or under New York law. Those cases are not germane here, and even if they were, they cannot be reconciled with clear Second Circuit precedent that precludes a court from interfering in the arbitral process by deciding defenses like res judicata and collateral estoppel, and from hearing challenges to an arbitrator prior to a final award.

## SUPPLEMENTAL STATEMENT OF FACTS

Argonaut incorrectly argues that Global "lost" the prior arbitration and that the 10 January 2007 Award precludes any new bills based on the actual development of claims from Global's

cedents, AIG and Home, as opposed to "estimated" liabilities based on allocation of the commutation payments. But, this argument ignores the third paragraph of the Award, which clearly provides that Argonaut may be required to pay claims in the future: "This order does not alter Argonaut's obligations under the retrocessional agreements. Argonaut may be obligated to pay claims submitted in the form required by those agreements." Verified Amended Counter-Petition, Exh. E at ¶3.

Contrary to Argonaut's arguments on pages 4-6 of its Brief, Rhonda Ijams was not answering "hypothetical" questions about whether Argonaut would pay for claims as they actually developed in the future; rather, she affirmatively swore that Argonaut would pay those claims, as did Nadine Stuhr, Argonaut's claims examiner. Id. at Exh. D at 1500-1510:14; Declaration of Jeffrey S. Leonard dated July 23, 2007 ("Leonard Decl."), Exh. B at 958:19-960:10. Argonaut's citation to Ijams's self-serving opinions on direct about Global's alleged "bad faith" says nothing about forever precluding Global from billing Argonaut for actual claims as they develop in the future, as opposed to estimated bills based on an allocation of the commutation payments. The testimony shows that Argonaut did not agree to "support" the commutation, that instead, it "would require continued billing," and that in Argonaut's view, an award rejecting the commutation billings would result in no "windfall" because Argonaut would pay in the future through "continued billing." Verified Amended Counter-Petition; Exh. D at 1507:18-1508:23. The testimony at pages 1509:17-1510:14, cited by Argonaut, discusses a "hypothetical or an assumption" about what would happen if the cedents (Home and AIG) did not continue to report claims as they developed in the future, but it mentions nothing about barring future claims. In fact, Ijams testified at those pages that Global may have some other method of getting the information necessary to bill Argonaut if either Home or AIG failed to report claims as they developed.

Argonaut implies at page 2 of its Brief that it was Global's joinder of Mr. Gass to this action that prompted him to withdraw his name, and Argonaut requests permission to name

another arbitrator in his place. Apparently not satisfied to wait for the court to act, Argonaut again has chosen the self-help remedy of purporting to appoint another arbitrator for Global, Peter H. Bickford, by letter dated August 21, 2007. Declaration of V. Pallotto, dated August 29, 2007, at ¶3. This self-help remedy was improper when Argonaut attempted it the first time with Gass; it is even more egregious now that Argonaut is fully aware through Global's Brief of the case law barring pre-award challenges to an arbitrator and criticizing a party's resort to self-help remedies.

Argonaut also incorrectly suggests that Global is "confused" about its citizenship. Argonaut implies that Global's U.S. Branch is somehow a separate legal entity. It is not, nor has Global ever said that it was. Global is a German company, with its principal place of business in Cologne, Germany. See Verified Answer to Petition; Verified Amended Counter-Petition; Brief in Opposition to Argonaut's Motion to Remand and supporting Declarations. For example, in Exhibit 3 to Argonaut's Motion to Remand, (i.e. Global's Complaint against Equitas, Ltd.), Global clearly stated that it is a German company with its principal place of business in Cologne, Germany. See Affidavit of Dan Labelle in Support of Argonaut's Motion to Remand, Exh. 3, ¶7. It is ironic that Argonaut focuses on trying to distort Global's pleadings in other matters when Argonaut, in the context of its pleadings in this action, is itself "confused" about its citizenship, pleading that it is citizen of Illinois at the same time that it asserts in another pleading that it is a citizen of California. Compare Argonaut's "Motion" to Stay at ¶3, with Argonaut's Petition to Confirm Arbital Award at ¶4.

## ARGUMENT

### I. The New York Convention and FAA Apply Here, Not New York Law

Argonaut cites to no clear support for its proposition that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") and the New York Convention, 9 U.S.C. § 201 et seq., do not apply here. Instead, it seems to argue that there is no conflict between federal and state law and that New York law therefore should be applied. This turns the law on its head. Where, as here, federal law applies, there is no reason to consider applying state law instead, even if there were no

3

conflict. Both the New York Convention and FAA apply because Global is a citizen of Germany, where it is incorporated and where it has its principal place of business, and Argonaut is a citizen of Illinois.

As Global explained in its opening Memorandum, because reinsurance is a commercial matter and this dispute is not entirely domestic in scope, it is governed by the New York Convention and the FAA. See Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co., 264 F.Supp.2d 926, 931-32 (N.D. Cal. 2003); Staring, Graydon S., Law of Reinsurance § 21.2 (updated April 2007) ("[since] reinsurance is 'commerce,' an arbitration clause … in any non-marine contract between parties in different states or territories of the United States, or in a state or territory and a foreign state, is enforceable under the [Federal Arbitration] Act …. [while] it [the New York Convention] provides for the enforcement of arbitration agreements, as well as awards, between parties of different nations …. [I]t applies to commercial transactions only and overrides state laws generally …."). Decl. of V. Pallotto, Exh. A. Staring goes on to state, "it may be fairly assumed that most reinsurance contracts to which companies in the United States are parties cross state lines or international borders, and therefore that their arbitration clauses will fall under the FAA or under the New York Convention and the FAA together." Id.

Where the New York Convention or FAA apply, inconsistent state law is displaced, and a court must apply the "federal substantive law of arbitrability" in determining whether the disputes are arbitrable under the FAA; under federal substantive law, there is a presumption in favor of arbitration, which requires that "any doubts concerning the scope of arbitrable issues" be resolved in favor of arbitration. See JSC Surgutneftegaz v. President and Fellows of Harvard College, 2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005), aff'd, 167 Fed.Appx. 266 (2d Cir. 2006)(in removed case, court denied petition to stay arbitration under the New York Convention, recognizing that court's role is limited to whether a valid arbitration agreement exists and whether one party has improperly failed or refused to arbitrate); Filanto, S.P.A. v. Chilewich Intern. Corp., 789 F.Supp. 1229 (S.D.N.Y. 1992) (New York Convention, not New York law controlled dispute); see also

<u>Perry v. Thomas</u>, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525 (1987) (FAA created a body of federal substantive law of arbitrability that is applicable to any agreement within the Act's coverage, regardless of whether the party seeking to resolve an enforceability issue brings the case to federal or state court).

There is conflict between New York law and the FAA (as well as between New York law and the New York Convention). Indeed, the commentary to CPLR 7501 recognizes these differences: "To the extent differences exist between New York and federal arbitration law, such differences are based, in the main, on broader arbitrability under the FAA." Practice Commentary CPLR 7501:13. In an apparent effort to dismiss those differences, Argonaut cites to <u>Venconsul, N.V. v. Tim Intern, N.V.</u>, 2003 WL 21804833 (S.D.N.Y. Aug. 5, 2003), for the proposition that seeking equitable remedies in connection with arbitration is consistent with the Convention's spirit. The <u>Venconsul</u> case is not on point; it had nothing to do with a motion to "permanently stay" an arbitration or disqualify an arbitrator pre-award. The <u>Venconsul</u> court found that a minority shareholder was not entitled to a preliminary injunction in aid of arbitration to enjoin the other party from consummating the capital reintegration of the corporation. Argonaut's citation to <u>Borden, Inc. v. Meiji Milk Products, Inc.</u>, 919 F.2d 822 (2d Cir. 1990), <u>cert. denied</u>, 500 U.S. 953 (1991), is likewise inapposite because that case did not deal with the issues of "permanently staying" an arbitration or disqualifying an arbitrator; instead, the court's focus was on a forum non conveniens issue.

There also is a conflict between federal and New York law on the question of whether an arbitrator may be challenged before a final award is rendered. Argonaut cites <u>Uniformed Firefighters v. City of Long Beach</u>, 762 N.Y.S. 2d 819 (A.D. 2d Dept. 2003), in support of its argument that Global's arbitrator may be challenged prior to a final award, but that case was decided under New York law and permitted a pre-award challenge. As shown in Point III below, Second Circuit law prohibits pre-award challenges to an arbitrator.

In an effort to avoid the federal case law cited by Global in its Brief, Argonaut suggests at page 10 of its Brief that its pre-arbitration/pre-award request to remove Mr. White somehow "dovetails" with "effectuating the award in any subsequent arbitration." This argument presupposes that Argonaut's construction of the 10 January 2007 Award is correct. For the reasons shown in Global's July 23, 2007 Brief, Argonaut is wrong; nothing in the Award precludes Global from billing Argonaut in the future as claims emanating from Home and AIG actually develop. This is exactly what Global did, and it commenced the March 2007 Arbitration to recover those billings under the Contracts. Both parties agree that the 10 January 2007 Award should be confirmed and is final. They disagree as to its effect. Whether the Award bars Global from recovery on its post-Award billings to Argonaut, as Argonaut contends, is a defense for the arbitrators to decide. Argonaut should not be permitted to force its misguided construction of the Award on Global and the Court, avoiding an arbitration that will decide, among other things, whether Argonaut's or Global's interpretation of the Award is correct.

## II. The Court Should Not Decide Defenses of Res Judicata and Collateral Estoppel.

The Court has no discretion here. Once the FAA (or New York Convention) applies, the only question to be considered is whether there is an agreement to arbitrate, but a court does not get involved in the merits of the dispute. Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238 (1985). Under federal law, the arbitrators, not the court, decide the defenses of res judicata and collateral estoppel. Argonaut pays no real attention to the cases cited by Global in its opening Brief, holding that the arbitrators, not the court, must decide defenses of res judicata and collateral estoppel: National Union Fire Ins. Co. v. Belco Petroleum Co, 88 F.3d 129, 135 (2d Cir. 1996); United States Fire Ins. Co. v. National Gypsum Co., 101 F.3d 813 (2d Cir. 1996), cert. denied, 521 U.S. 1120 (1997); Litco Shipping Corp. v. Pioneer Petroleum Prod., Inc., 1997 WL 160321 (S.D.N.Y. 1997); John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132 (3d Cir. 1998); Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126 (9th Cir. 2000).

In the reinsurance context, it is even more appropriate that defenses of res judicata and

collateral estoppel be left to the arbitrators, not the court, because reinsurance contracts typically include broad arbitration provisions and clauses expressly relieving the arbitrators from following the strict rules of law. A case squarely on point is <u>North River Ins. Co. v. Allstate Ins. Co.</u>, 866 F. Supp. 123 (S.D.N.Y. 1994), a pre-<u>Belco</u> case, which held that the issue of whether the court or an arbitration panel should determine the preclusive effect of an earlier arbitration decision in a reinsurance dispute was to be determined by federal, not state law, and that under the broad arbitration clause in the parties' contract, the preclusive effect of an earlier arbitration on a pending arbitration was for the arbitrators to decide, not the court. There, as here, the contract contained a "broad" arbitration clause: "[i]f any dispute shall arise between the reinsured and the reinsurer with reference to the interpretation of this contract or their rights with respect to any transaction involved, the dispute shall be referred to arbitration." <u>Id.</u> at 127. The <u>North River v. Allstate</u> court cited several cases holding that the a prior arbitration decision generally is not necessarily binding on a subsequent arbitration panel. <u>Id.</u> at 128. The court then found that the honorable engagement clause in the contract, which relieved the arbitrators from following the strict rules of law, also gave the option to the arbitrators to either adopt or reject a prior award. <u>Id.</u> at 129.

Like the contract in <u>North River v. Allstate</u>, Global and Argonaut have a "broad" arbitration clause in their Contracts, requiring any disputes "arising out of" or "arising with respect to" the Contracts to be arbitrated. The Contracts also include honorable engagement clauses, something that Argonaut does not even address its opposition. Verified Amended Counter-Petition, Exh. A at Art. IX ¶3, Exh. B at Art. XIII ¶B. Accordingly, the arbitrators in the March 2007 Arbitration have the option of rejecting the alleged preclusive effect of the prior Award on the new claims. As set forth in Global's opening Memorandum, Argonaut has not met its burden of proving the elements of these defenses, which are for the arbitrators to decide, not the Court.

Even New York's highest court, applying the FAA, recognized that under federal law, the presumption is that "questions concerning whether prerequisites such as time limits, notice,

laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are [generally] for the arbitrators to decide." In the Matter of Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp., 793 N.Y.S.2d 831, 834 (2005)(statute of limitations for arbitrators to decide under FAA).

Ignoring all of these precedents, Argonaut instead cites to a First Circuit decision, Marie v. Allied Home Mort. Corp., 402 F.3d 1 (1st Cir. 2005), and argues that this matter is "more analogous to the line of cases following Marie [full cite omitted], which decided that courts were the more appropriate forum for determining whether a party had waived its right to arbitrate based on its conduct in litigation." Argonaut Brief at 14.  Argonaut's reliance is misplaced, because the Marie "line of cases" concerns the issue of waiver of the right to arbitrate based on a party's participation in litigation.  Waiver of arbitration is not at issue here.  This Court is being asked by Argonaut to decide not only what the 10 January 2007 Award means, but also to apply it to Global's new billings and to determine the preclusive effect of that Award, if any, i.e., the defenses of res judicata and collateral estoppel.  There is no "abuse" here as argued by Argonaut, nor is there an issue of waiver of the right to arbitrate.  It is Argonaut that is trying to "abuse" the arbitral and litigation process through its efforts to bootstrap Global and the Court to its tortured reading of the Award, avoiding a proceeding that will determine whether the Award somehow imposes the forfeiture that Argonaut disavowed prior to the 10 January 2007 Award but now so fervently desires.

Argonaut cites to only one case, from outside of this district, for the proposition that a court can decide the issue of res judicata and collateral estoppel, Federated Rural Electric Ins. Co. v. Nationwide Mut. Ins. Co., 134 F. Supp.2d 923 (S.D. Ohio 2001).  However, Federated Rural is neither binding nor persuasive, and is inapposite, as it did not concern the defenses of res judicata and collateral estoppel.  Rather, it involved the request by one party for the return of its payment of a prior arbitration award some four years after it paid it on the basis of a subsequent court decision.  In deciding the issue over the "finality" of the prior award and whether a party could

8

challenge it four years later, the <u>Federated Rural</u> court distinguished the <u>North River v. Allstate</u> case discussed above and noted the differences in the relief sought: "<u>North River Ins. Co</u> is distinguishable because the issue before this court is not whether the 1996 award is entitled to preclusive effect in subsequent separate arbitrations. Instead, Federated seeks a declaration that the 1996 award is final and binding and that it cannot be re-arbitrated or, in effect, appealed." <u>Federated Rural</u>, 134 F.Supp.2d at 928. Thus, <u>Federated Rural</u> does not control here; <u>North River v. Allstate</u> does.

### III. An Arbitrator's Fitness to Serve Cannot be Challenged Pre-Award, Nor Has Argonaut Demonstrated Evident Partiality on the Part of Richard White.

Argonaut relies on another case, again outside of this district, <u>Metropolitan Prop. and Cas. Ins. Co. v. J. C. Penney Cas. Ins. Co.</u>, 780 F.Supp. 885 (D. Conn. 1991), for its argument that the court can entertain Argonaut's baseless pre-award challenge to Global's arbitrator, Richard White. However, <u>Metropolitan</u> is distinguishable because Argonaut has not shown "evident partiality," and it was decided prior to the Second Circuit's decision in <u>Aviall, Inc. v. Ryder Systems, Inc.</u>, 110 F.3d 892, 895 (2d Cir. 1997), holding that pre-award challenges to an arbitrator may not be heard.

Argonaut cannot show "evident partiality." Party-appointed arbitrators are supposed to be advocates for the party appointing them. <u>See</u> Global's July 23, 2007 Brief at 21-22. Argonaut makes the unsupported assumption that because White issued a written dissent in the QS Commutation Arbitration, he somehow is evidently partial. However, in <u>Sphere Drake Ins. Co. v. American Life Ins. Co.</u>, 307 F.3d 617 (7th Cir. 2002), <u>cert. denied</u>, 538 U.S. 961 (2003), the Seventh Circuit found that a party-appointed arbitrator's prior service on another arbitration that was not fully disclosed by him did not demonstrate "evident partiality" and did not "spoil" the award.

Moreover, Argonaut's own party-appointed arbitrator in the March 2007 Arbitration, Paul Thomson, has served on other arbitration panels for Argonaut, against Global, one of which also

dealt with the alleged preclusive effect of the 10 January 2007 Award and the issue of whether Global can bill Argonaut in the future for claims as they develop. For Argonaut to now cry "evident partiality" when it too has named the same arbitrator for some of the multiple arbitrations between the parties is disingenuous. Argonaut even nominated the same candidate for umpire, who served as umpire not only in the QS Commutation Arbitration but also in a later arbitration in which the alleged preclusive effect of the 10 January 2007 Award was at issue.    Accordingly, there simply is no merit to Argonaut's argument that White cannot serve as Global's party-appointed arbitrator. Argonaut's argument is akin to a judge hearing one case between the parties, and then being prohibited from deciding another one because his earlier decision may come into play in the subsequent case. That is not "evident partiality."

## CONCLUSION

Global requests that its Verified Amended Counter-Petition be granted in its entirety. Alternatively, in the event the Court determines that it may entertain a pre-award  challenge to White's qualifications and that White may not serve, Global should be allowed a reasonable time in which to appoint a replacement.

Dated:  August 30, 2007
        Short Hills, New Jersey

Respectfully submitted,

_____
JOSEPH J. SCHIAVONE (JS 7303)
JEFFREY S. LEONARD (JL 5931)
BUDD LARNER, P.C.
Attorneys for GLOBAL   Reinsurance
    Corporation – U.S. Branch
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
(973) 379-4800

650829.w

10