UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Arbitration Between: | : |
| | : |
| ARGONAUT INSURANCE COMPANY, | : Civil Action No. |
| Petitioner, | : 07 cv 6222(SHS) |
| | : |
| -against- | : |
| | : |
| GLOBAL REINSURANCE CORPORATION – U.S. BRANCH, | : |
| | : |
| Respondent/Counter-Petitioner, | : |
| | : |
| -against- | : |
| | : |
| ARGONAUT INSURANCE COMPANY, | : |
| | : |
| Respondent on Counter-Petition | : |
| | : |

## MEMORANDUM OF LAW OF RESPONDENT GLOBAL REINSURANCE CORPORATION – U.S. BRANCH IN RESPONSE TO ORDER TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE UNSEALED

BUDD LARNER, P.C.
150 John F. Kennedy Parkway, CN 1000
Short Hills, New Jersey 07078-0999
(973) 379-4800
Attorneys for Respondent/Counter-Petitioner
GLOBAL Reinsurance Corporation -
U.S. Branch

On the Brief:
Jeffrey S. Leonard
Virginia A. Pallotto (admitted *pro hac vice*)

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...................................................................................................................3

POINT I ...........................................................................................................................3

Because The Court Did Not Rely On The
Hearing Transcripts That Global Now
Seeks To Keep Sealed, The Transcripts
Are Not Judicial Documents ..........................................................................................3

POINT II ..........................................................................................................................8

The Countervailing Reasons For Sealing The
Transcripts Outweigh Any Presumed Access ................................................................8

CONCLUSION ...............................................................................................................12

# TABLE OF AUTHORITIES

**PAGE**

Cases

Commercial Union Insurance Co. v. Lines, 239 F. Supp.2d 351, 358-9
(S.D.N.Y. 2002), vacated and remanded on other grounds, 378 F.3d 204 (2d Cir. 2004) ..............6

DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 826 (2d Cir. 1997) ...................................5

Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Management, Inc.,
2005 WL 1522783 at *3 (E.D.N.Y. June 28, 2005) .........................................................9

Gambale v. Deutsche Bank AG, 377 F.3d 133, 143 (2d Cir. 2004).............................................9

Global Reinsurance Corp. – U. S. Branch v Argonaut Insurance Co.,
2008 WL 1805459 *2 (S.D.N.Y. April 24, 2008) .............................................................6

Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir.2004) ........................................4

In re Omnicom Group, Inc. Securities Litigation, 2006 WL 3016311
(S.D.N.Y. Oct. 23, 2006) .............................................................................7

In Re Zyprexa Injunction, 474 F.Supp.2d 385, 394 (E.D.N.Y. Feb. 13, 2007) ...........................10

Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.,
2005 WL 1216292 (S.D.N.Y. May 23, 2005) ...........................................................5, 6

Lugosch v. Pyramid Co. of Onondaga, 435 F.3 110, 119 (2d Cir. 2006)..................................4, 8

Mitchell v. Metropolitan Life Ins. Co., Inc., 2004 WL 2439704
(S.D.N.Y. Nov. 2, 2004) ............................................................................10

Securities & Exchange Comm. v. TheStreet.com, 273 F.3d 222, 233 (2d Cir. 2001). .................7

Standard Investment Chartered, Inc. v. National Assoc. of Securities Dealers, Inc.,
2007 WL 2790387 (S.D.N.Y. Sept. 26, 2007)..............................................................7

United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)("Amodeo I") ....................................3

United States v. Amodeo, 71 F. 3d 1044 (2d 1995)("Amodeo II)....................................................4

Rules and Other Authorities

ARIAS-U.S., Practical Guide, Chapter III: The Organization Meeting,
3.8 Confidentiality, Comment C ..................................................................................11

683412.w

## PRELIMINARY STATEMENT

This case involves an underlying arbitration in which the parties and the arbitrators agreed that the proceedings would be conducted privately, pursuant to a confidentiality order. That fact and the harm that would flow from unfettered public access weigh in favor of the modified relief that Respondent now seeks with respect to sealing. Specifically, Respondent does not oppose unsealing the entirety of the court record with the exception of three hearing transcripts from the underlying arbitration that were exhibits to the parties' papers. There are important competing interests here of the public's right to access versus the parties' privacy expectations and the court's paramount public policy goal of fostering and encouraging arbitration.

Accordingly, in response to the Court's July 7, 2008 Order to Show Cause why this action should not be unsealed, Respondent/Counter-Petitioner GLOBAL Reinsurance Corporation – U.S. Branch ("Global") does not oppose unsealing the court record, with the exception of the three transcripts from the underlying arbitration that should remain under seal. Those three hearing transcripts are as follows:

- Exhibit 6 to the Affidavit of Christopher Hollender ("Hollender Aff."), which contains excerpts from the hearing testimony of Global's Barry Keogh (the Hollender Affidavit was originally filed in New York State court by Petitioner Argonaut Insurance Company ("Argonaut") and was later attached as part of Exhibit C to Global's Notice of Removal dated July 5, 2007);

- Exhibit D to Global's Answer/Verified Counter-Petition dated July 16, 2007, which contains excerpts from the hearing testimony of Rhonda Ijams (of Argonaut); and

- Exhibit B to the Declaration of Jeffrey S. Leonard dated July 23, 2008, filed by Global, which contains the hearing testimony of Argonaut's Nadine Stuhr.

These transcripts were neither cited to nor, apparently, relied on by the Court in its July 7, 2008 Opinion and Order ("Order"). In short, that Order denied Argonaut's motion to remand the case to state court; denied Argonaut's motion to disqualify Global's party-appointed arbitrator, Richard White; denied Argonaut's motion to stay the March 14, 2007 arbitration demand and found that the arbitrators, not the court, must decide any preclusive effect of the prior arbitration award, and granted both parties' requests to confirm the January 10, 2007 arbitration award. Because the Court found that arbitrators, not the courts, must rule on Argonaut's defenses of res judicata and collateral estoppel, it is clear that the excerpts from the hearing transcripts were not relied on by the Court in rendering its Order. Those transcripts cannot, therefore, be considered to be "judicial documents" to which a presumption of public access might apply.

Those hearing transcripts are incomplete and do not contain the entire testimony before the arbitration Panel. Nonetheless, those transcripts contain, for example, testimony of highly sensitive business documents of Global along with other confidential and sensitive testimony about Global's commutation efforts and negotiations with its cedents. Rather than review the voluminous pages of the transcripts and redact what is or is not confidential business information on a line by line basis, Global proposes that the three transcripts should simply remain under seal. Global's commutation program is on-going today, and Global would be harmed if the transcripts were to be released.

Submitted herewith is the Declaration of Barry Keogh ("Keogh Decl."), detailing the sensitive and confidential nature of the information contained in the transcripts and the harm that would befall Global if the transcripts were to be released. Global relied on the confidentiality

order issued by the Panel when it participated in the arbitration. The arbitration dealt with the details of highly sensitive and confidential commutations that Global entered into with its cedents. Global, which is in run-off, will be harmed in its dealings and commutation negotiations with other cedents (as well as its retrocessionaires) if the Court were to give no effect to the confidentiality order of the Panel as well as the prior order from the Court sealing this case. Reinsurance arbitrations are normally done pursuant to confidentiality orders and agreements and industry participants rely on them in their dealings. The public has no legitimate interest in excerpts from the hearing transcripts. Those transcripts should remain under seal.

Argonaut has indicated that it does not oppose Global's request to have the three hearing transcripts remain under seal, and to unseal the remainder of the court's file.

## **ARGUMENT**

### **Point I**

**Because the Court Did Not Rely On the Hearing Transcripts That Global Now Seeks to Keep Sealed, the Transcripts are Not Judicial Documents**

In <u>United States v. Amodeo</u>, 44 F.3d 141, 145 (2d Cir. 1995)("Amodeo I"), the Second Circuit held that the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." In order to be classified as a "judicial document," the filed document "must be relevant to the performance of the judicial function and useful in the judicial process." <u>Id.</u>

Once the court has determined that a document is a judicial document to which a common law presumption of access attaches, the next step is to determine the weight of that presumption:

> [T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of <u>Article III</u> judicial power and the

3

resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

Lugosch v. Pyramid Co. of Onondaga, 435 F.3 110, 119 (2d Cir. 2006), quoting U.S. v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II"). After determining the "weight of the presumption of access, the court must 'balance competing considerations against it.'" Lugosch, 435 F.3d at 120, citing Amodeo II, 71 F.3d at 1050. Such countervailing factors include, but are not limited to, the "danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." Id.

In addition to a common law right of access, the public may also have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents. Id., citing Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir.2004). Even if a court concludes that a qualified First Amendment right of access to certain judicial documents exists, the documents may be sealed if specific, on the record, findings are made "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 120.

In discussing the continuum or weight of the presumption of access, "where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches." Lugosch, 435 F.3d at 121. Documents that have been held to be "judicial documents" that have a "strong" presumption of access under the common law and First Amendment include summary judgment papers. Id. "Moving down the continuum, away from 'matters that directly affect an adjudication' and towards 'matters that come within a court's purview solely to insure their irrelevance,' we explained that 'the weight of the presumption declines.' …[and] [a]t the low end of the continuum, '[w]here testimony or documents play only a negligible role in the

4

performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.'" Id. (internal cites omitted, emphasis added).

In the context of contested court proceedings to either confirm or vacate arbitration awards, federal courts have generally respected the parties' confidentiality agreements or orders issued in the underlying arbitration. For example, in DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 826 (2d Cir. 1997), *decided post-Amodeo*, and involving a contested confirmation proceeding, the Second Circuit upheld the district court's decision to seal the entire file, except for the court's orders and opinions, because the district court found that it was "not feasible to attempt a partial unsealing within the context of the parties' confidentiality agreement." There, the Second Circuit did not reach the issue of whether, as argued by the defendants, most of the documents did not play a role in or were "on the periphery of the adjudicatory process." The Second Circuit indicated it need not reach the issue because, even assuming some presumption of access attached to the documents, the district court did not abuse its discretion in entering the final sealing order. Id. at 827.

In Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co., 2005 WL 1216292 (S.D.N.Y. May 23, 2005), the court, in the context of a confirmation proceeding and an opposing motion to stay and remand to the panel for clarification, upheld the parties' request to seal the entire court record, except for the court's orders and decisions. In so finding, the court balanced the parties' confidentiality agreement and the federal policy of fostering arbitration:

> The parties argue that their strong interest in confidentiality coupled with the federal policy of encouraging arbitration justify sealing the entire Court record. With respect to the documents the parties submitted to this Court that do not form the basis of our opinion, we agree. Applying the standard discussed above [presumption of public access in Amodeo II], the presumption of public access in

these background documents is minimal, while the parties have an interest in keeping the detailed record of their arbitration from public view.

In the case of this Court's opinion, however, the strong presumption of public access to judicial decisions outweighs the parties' interests in privacy.

Id. at *6.

Similarly, in another contested arbitration proceeding, Commercial Union Insurance Co. v. Lines, 239 F. Supp.2d 351, 358-9 (S.D.N.Y. 2002), vacated and remanded on other grounds, 378 F.3d 204 (2d Cir. 2004), the district court granted in part the respondents' motion to maintain the court record under seal but noted that they had not demonstrated why the entire court record should be sealed and found that, at a minimum, the court's orders and decisions should be available for public view. The Commercial Lines Court ordered the parties to meet and confer in good faith to determine which materials were subject to the parties' confidentiality agreement.[1]

Recent decisions within this District that have addressed the issue of what is a judicial document have looked to the context of why the document was filed and whether the court could look to those documents in making a judicial decision. Judge Castel, in unsealing two arbitration awards in uncontested confirmation proceedings between Global and Argonaut, found that Global had not demonstrated sufficient harm from release of the final arbitration awards which, once confirmed, would be incorporated by reference into a judgment of the court. See Global Reinsurance Corp. – U. S. Branch v Argonaut Insurance Co., 2008 WL 1805459 *2 (S.D.N.Y. April 24, 2008). However, no hearing transcripts had been submitted by the parties in those uncontested proceedings, and Judge Castel was dealing only with the release of two arbitration

---

[1] The parties had executed two confidentiality agreements, the first of which, unlike the one at issue here, did not require the party to file documents with the court under seal. The second confidentiality agreement, which did require sealing of court papers by the parties, only applied to "redomestication" documents. Commercial Union, 239 F. Supp.2d at 358, n.8.

6

awards, not confidential arbitration testimony discussing proprietary documents and information.
Here, Argonaut does not oppose Global's request to have the three hearing transcripts remain
under seal.

In matters not involving confidential arbitrations, the courts have taken a similar
approach.  For example, in Standard Investment Chartered, Inc. v. National Assoc. of Securities
Dealers, Inc., 2007 WL 2790387 (S.D.N.Y. Sept. 26, 2007), Judge Kram found that exhibits
submitted in connection with a Rule 12(b)(6) motion, which were not considered by the court, as
the motion was not converted to a summary judgment motion, were not judicial documents.  On
the other hand, documents submitted in connection with a Rule 12(b)(1) motion, where the court
could take such documents into consideration, were judicial documents for which the public had
a presumptive right to access. Id. at *7.

In a similar vein, documents submitted in support of or in opposition to a discovery
motion have been held to be judicial documents.  See In re Omnicom Group, Inc. Securities
Litigation, 2006 WL 3016311 (S.D.N.Y. Oct. 23, 2006). Conversely, discovery documents that
are not filed with the court are not considered to be judicial documents because they do not
directly affect an adjudication or "significantly determine litigants' substantive rights." See
Securities & Exchange Comm. v. TheStreet.com, 273 F.3d  222, 233 (2d Cir. 2001).

In the case of non-judicial documents that have been placed under seal pursuant to a
protective order, there is a "strong presumption *against* public access" where the party claiming
privacy has reasonably relied on the protective order. Id. at 234.   In TheStreet.com, the
deponents, whose discovery depositions had been taken, did not have a presumption *against*
public access because they could not have reasonably relied on the protective orders.  Interested
third parties, who had not been bound by the order, attended the deposition or the testimony had

7

been given prior to the entry of the protective order. Id. at 233-4.   Here, Global filed its documents pursuant to a sealing order, and the transcripts were generated in a private arbitration conducted pursuant to a strict Confidentiality Order issued by the arbitrators.   As discussed herein, those factors should be given substantial consideration.

Argonaut does not oppose Global's request to have the three hearing transcripts remain under seal.   It appears that the Court did not rely on these transcripts in rendering its July 7, 2008 Order, because it found that the arbitrators, not the Court, must interpret the effect of a prior arbitration award.   The transcripts could not, therefore, be considered to be judicial documents to which a public right of access might attach.   Moreover, as discussed below, Global has demonstrated specific harm that it would suffer if the transcripts were to be released.   See Keogh Decl., ¶¶ 5-12.

## Point II

### The Countervailing Reasons for Sealing the Transcripts Outweigh Any Presumed Access

Alternatively, should the Court consider the three hearing transcripts to be judicial documents, the weight to be attached to the presumption of public access should be minimal. Because these documents "play[ed] only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." Lugosch, 435 F.3d at 121.

The countervailing interests are important.   Global will be harmed in its on-going efforts to commute with other cedents if those other cedents are able to gain insight into Global's past commutations and commutation program.   The testimony concerns Global's relationships with its cedents, its negotiations with cedents, and its commutation program, allocations and methodology. See Keogh Decl., ¶¶ 5-12.  The Confidentiality Order issued by the Panel requires

that the parties, subject to court approval, file under seal all Arbitration Information, which is defined to include the hearing transcripts. The Confidentiality Order further provides that "in all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information." See, e.g., Keogh Decl., Exh. 1, ¶ 5. Global has proposed a very limited sealing order relating to only the hearing transcripts themselves that were neither cited to nor relied on by the Court in its July 7, 2008 Order.

As found in Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Management, Inc., 2005 WL 1522783 at *3 (E.D.N.Y. June 28, 2005), there is a strong policy interest in protecting the expectations of confidentiality belonging to parties who have chosen alternative dispute resolution such as arbitration. Id., citing Gambale v. Deutsche Bank AG, 377 F.3d 133, 143 (2d Cir. 2004).[2] "Federal policy, as evidenced by the enactment of the Alternative Dispute Resolution Act of 1998 and the Federal Arbitration Act, favors alternative dispute resolution ('ADR') and particularly arbitration." Fireman's Fund, at *3. Thus, protecting confidentiality agreements "promotes the federal policy and encourages ADR by ensuring that parties in an arbitration proceeding get the protections for which they contracted." Id.

In addition, the arbitration involved confidential commutation agreements entered into between Global and two of its cedents. Global is in run-off and is no longer writing new business and its commutation program, which is on-going, is an important aspect of Global's finances and business. Keogh Decl. ¶ 10. As part of its commutation process, Global and its

---

[2]    In Gambale, which involved a confidential settlement agreement, not arbitration, the Second Circuit found that the amount of the settlement agreement was confidential and should remain confidential. The "weak" presumption of access to the transcript, where the settlement amount was disclosed in casual questioning by the court during a hearing, was not considered part of the adjudication of the litigation. 377 F.3d at 144.

cedents typically exchange highly confidential and proprietary information and exposure projections concerning past, current and future liabilities. See Keogh Decl., ¶ 5. Global's commutations are discussed throughout the transcripts, and include matters such as the negotiations that occurred, what Global's personnel thought of the negotiations, the financial aspects of the commutations, and commutation "targets." Id. Global's commutation program will be severely harmed if cedents are able to gain insight into Global's commutation program, negotiation strategy, and other confidential and proprietary business information. Id. at ¶¶ 5-12.

If Global's cedents cannot be assured by way of confidentiality orders entered into by arbitration panels and sealing orders that the information they disclose to Global will remain confidential, Global's cedents will be unlikely to share such information. Id. Although Global is permitted to share certain information with its retrocessionaires regarding its confidential commutations, that is done pursuant to confidentiality agreements. If cedents believe that Global cannot maintain confidentiality when it goes to court to confirm its arbitration awards against its own retrocessionaires, then cedents will be unlikely to share confidential business information with Global or to enter into commutation agreements with Global. This, in turn, will severely harm Global. Id.

Financial analyses, business plans and other sensitive company information are entitled to be protected from disclosure from competitors and others that have no legitimate need for the documents. See, e.g., Mitchell v. Metropolitan Life Ins. Co., Inc., 2004 WL 2439704 (S.D.N.Y. Nov. 2, 2004)(permitting Met Life to redact personal identifying information of employees from documents sought in discovery, and designating as confidential and protected from the public's view earnings and expense analyses and business plans of Met Life); In Re Zyprexa Injunction, 474 F.Supp.2d 385, 394 (E.D.N.Y. Feb. 13, 2007) ("sealing of documents are designed to permit

10

litigants and courts to examine a party's internal records which may include . . . valuable business secrets and commercial data, without unnecessarily exposing them to the public's and competitor's views").

In the reinsurance industry, arbitrations are typically conducted pursuant to confidentiality agreements -- one of the prime reasons parties chose to arbitrate, rather than litigate their disputes. See Keogh Decl., ¶ 3; see also ARIAS-U.S., Practical Guide, Chapter III: The Organizational Meeting, 3.8. Confidentiality, Comment C ("It is generally agreed throughout the industry that reinsurance arbitrations are and should be confidential in most circumstances, even absent the parties' complete agreement").[3]  A party should not lose the confidentiality that a panel has ordered solely because the party files a confirmation proceeding in court.

Both parties recognized the "serious injury" that could result if a breach of the Confidentiality Order occurred, by permitting an aggrieved party to seek equitable relief in court to prohibit further breaches.  Keogh Decl., Exh. 1, ¶ 4. In this instance, Argonaut has indicated that it does not oppose the relief requested.

If this Court were to permit disclosure of the transcripts, Global would lose the expectation of privacy that it had pursuant to the Panel's Confidentiality Order and the court's prior Sealing Order pursuant to which Global submitted these documents.  Allowing the public access to arbitration hearing transcripts that were not cited to or relied on by the Court simply because a party has sought to confirm an arbitration award would provide enormous leverage a party aggrieved by the arbitration results; the party desiring confirmation would fear going into court to confirm the award if the courts were to release confidential Arbitration Information such

---

[3] Available at www.arias-us.org.

as hearing transcripts. The balancing of the parties' privacy rights in these hearing transcripts against the public's right of access, coupled with the harm to Global if they were released, weighs in favor of allowing these transcripts to remain under seal.

Accordingly, Global has demonstrated good cause — by way of specific harm — that may befall it if the three hearing transcripts are not kept under seal. Global has also narrowly tailored the scope of what it now seeks to remain under seal.

## CONCLUSION

For the foregoing reasons, Global does not oppose unsealing the entire record with the exception of the three transcripts from the confidential arbitration, which should remain under seal. These transcripts are Exhibit 6 to the Hollender Affidavit (part of Exhibit C to Global's Notice of Removal), Exhibit D to Global's Verified Counter-Petition filed by Global, and Exhibit B to the Declaration of Jeffrey Leonard dated July 23, 2008, all of which should remain under seal.

Dated:  July 10, 2008
        Short Hills, New Jersey

                        BUDD LARNER, P.C.
                        150 John F. Kennedy Parkway, CN 1000
                        Short Hills, New Jersey 07078-0999
                        (973) 379-4800
                        Attorneys for Respondent/Counter-Petitioner
                            GLOBAL Reinsurance Corporation - U.S.
                            Branch

                        BY: _____
                            Joseph J. Schiavone
                            Jeffrey S. Leonard
                            Virginia A. Pallotto (admitted *pro hac vice*)

683256w

12