UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARGONAUT INSURANCE COMPANY,  :  Docket No. 07 CV 6222 (SHS)
:
         Petitioner,  :  DECLARATION OF
:  BARRY KEOGH
- against-  :
:
GLOBAL REINSURANCE  :
CORPORATION – U.S. BRANCH,  :
:
         Respondent/  :
         Counter-Petitioner  :
:

---

I, BARRY KEOGH, declare the following to be true under penalty of perjury and pursuant to 28 U.S.C. § 1746:

1. I am a Senior Vice President of Respondent/Counter-Petitioner GLOBAL Reinsurance Corporation – U.S. Branch and am fully familiar with the facts set forth herein. I submit this Declaration to set before the Court certain facts in response to Court's July 7, 2008 Order to Show Cause.

2. Argonaut as Global's retrocessionaire in the underlying arbitration was given access to documents, including privileged and proprietary documents and information, from Global as well as from Global's cedents. As such, and as is customary in the reinsurance business, the parties conducted the underlying arbitration pursuant to a Confidentiality Order that was previously supplied to the Court (as Exhibit A to the Declaration of Jeffrey S. Leonard dated July 5, 2007). Attached hereto as Exhibit 1 is another copy of the Confidentiality Order entered by the Panel in the underlying arbitration.

3. The Confidentiality Order is based on a form provided by an insurance and reinsurance organization, ARIAS. As explained on the ARIAS website, "the AIDA Reinsurance

and Insurance Arbitration Society, ARIAS·U.S. is a not-for-profit corporation that promotes the improvement of the insurance and reinsurance arbitration process for the international and domestic markets. Founded in 1994, ARIAS·U.S. provides initial training and continuing in-depth conferences and workshops in the skills necessary to serve effectively on an insurance/reinsurance arbitration panel. In addition, ARIAS·U.S. certifies a pool of qualified arbitrators and serves as a resource for parties involved in a dispute to find the appropriate persons to resolve the matter in a professional, knowledgeable and cost-effective manner." See "About ARIAS" at http://www.arias-us.org.

4. The Confidentiality Order, which is common place in the industry, requires that Arbitration Information be kept confidential. The definition of Arbitration Information includes the hearing transcripts that Global seeks to remain under seal. See Exh. 1, ¶ 2. In entering the Confidentiality Order, the panel found that "the Parties recognize that serious injury could result to any Party and its business if the other Party breaches its obligation under this Order." Id. at ¶ 6.

5. The information and documents disclosed and discussed in these three hearing transcripts include confidential and sensitive business information (as well as documents) concerning Global's commutations, its commutation program, exposure projections, negotiations and strategy concerning commutations and what Global (or others) thought about those negotiations, commutation targets, as well as discussions concerning privileged and confidential information and documents from Global and/or its cedents concerning particular claims.

6. Global relied on the Sealing Order of July 5, 2007 (and the Panel's Confidentiality Order) when it submitted these exhibits in the record. The three transcripts are located in the court record as follows:

- Exhibit 6 to the Affidavit of Christopher Hollender ("Hollender Aff.") containing excerpts from the hearing testimony of Barry Keogh (the Hollender Affidavit was originally filed in New York state court by Petitioner Argonaut Insurance Company ("Argonaut") and was later attached as part of Exhibit C to Global's Notice of Removal dated July 5, 2007);

- Exhibit D to Global's Answer/Verified Counter-Petition dated July 16, 2007 containing excerpts from the hearing testimony of Rhonda Ijams (of Argonaut); and

- Exhibit B to the Declaration of Jeffrey S. Leonard dated July 23, 2008 filed by Global containing the hearing testimony of Argonaut's Nadine Stuhr.

7. Some examples are as follows. My own testimony at the hearing concerned confidential negotiations with Home, Global's commutation program, and discussion of internal, proprietary documents that were created by Global and/or internal, proprietary information developed by Global relating to its commutations. Some of the testimony concerned confidential exposure studies by one of Global's cedents.

8. Argonaut's witness, Rhonda Ijams, testified about confidential, internal and proprietary Global documents provided by Global during discovery in the arbitration, even though she had no first hand knowledge of these documents. Argonaut's witness, Nadine Stuhr, also testified about her knowledge of Global's commutations and claims that she learned during a confidential audit at Global and by her review of Global's documents.

9. Global will be harmed if these transcript pages do not remain sealed in the record. Global is continuing to commute with other cedents. Release of such information regarding Global's commutation program, the negotiations with its cedents (which are subject to a separate Confidentiality Agreement with those cedents), the pricing and allocation methodology of the

3

commutation, the analysis of financials in relation to the commutations and the like will harm Global in its efforts to commute with its other cedents. For example, the cedents would have an advantage over Global by knowing such information in negotiations.

10. Importantly, Global's cedents will also be reluctant to share with Global their own claim exposures and analysis for commutations, which will put Global at a disadvantage in negotiations. Global, which is in run-off, has a commutation program, which is on-going and important to its finances and business. The release of the transcripts would harm Global in its continued efforts to commute with its cedents.

11. Likewise, for individual claims, Global's cedents will be reluctant to share their claim exposures, projections, and privileged work product and communications from the attorneys defending the underlying coverage actions or claims, if such sensitive and confidential information concerning the claims is released every time a party seeks confirmation of an arbitration award. A confidentiality order from an arbitration should not become meaningless simply because the parties seek the court's relief in confirming an award.

12. These transcript exhibits contain highly confidential and proprietary information that would be difficult, time consuming and expensive to redact. Global had, and continues to have, an expectation of privacy related to its own internal documents, and testimony concerning them, that was provided in the confidential arbitration proceeding. Global will be harmed if the sensitive, confidential and proprietary information contained in the hearing transcripts is disclosed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 10, 2008.

BARRY KEOGH

683310.w

4

# Exhibit 1

**Bailey, Rebecca**

**From:** NANANDED@aol.com
**Sent:** Wednesday, March 29, 2006 4:47 PM
**To:** Hajost, Theresa W.; Jleonard@budd-larner.com; Vpallotto@budd-larner.com
**Cc:** abrotter@socal.rr.com; deputy@iicil.org
**Subject:** (no subject)

In the Matter of the Arbitration Between

Global Reinsurance Corporation - U.S. Branch,

        Petitioner,

  - and -

Argonaut Insurance Company,

        Respondent.

The Panel, having considered the submissions and arguments of Counsel hereby adopts the following Order:

## CONFIDENTIALITY ORDER

1. The parties bound by this Order are:

    a. Global Reinsurance Corporation - U.S. Branch ("Global") and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

    b. Argonaut Insurance Company ("Argonaut") and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

2. Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, the Panel orders that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Order will remain in effect even after conclusion of the arbitration proceedings.

3. Disclosure of Arbitration Information may be made: (a) to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings and/or in connection with other arbitrations between the parties; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. Any disclosures pursuant to subparagraphs (a) or (c) shall be accompanied by a copy of this Confidentiality Order and an instruction to any recipient to maintain the confidentiality of all Arbitration Information. In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed. If any party is requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other as soon as possible after the subpoena, discovery request or court order is received. In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4. For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

    a. the arbitration panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

    b. counsel for a party or employees of counsel's law firm who are assisting counsel;

    c. employees and agents of the parties for purposes consistent with this order;

    d. any party's deposition or trial witness;

    e. any person retained by counsel for a party to assist in this arbitration; provided, however that such person shall agree to be bound by the terms of this Confidentiality Order as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A; or

   f. any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Order as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A.

5. If a party is requested or required to disclose Arbitration Information, subject to applicable legal restrictions, that Party will: 1) notify the other party in writing as soon as possible after the subpoena, request or court order is received, to permit the other party to seek legal protection against any such disclosure; and 2) tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand. Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or court order to the extent required by law. If requested by any other party, the obligated party will cooperate (at the expense of the requesting other party) in the defense of a demand.

6.  The Parties recognize that serious Injury could result to any Party and its business if the other Party breaches its obligation under this Order. Therefore, each Party will be entitled to seek a restraining order, injunction or other equitable relief if another Party breaches its obligations under this Order in addition to any other remedies and damages that would be available at law or equity.

Members of the Panel:

Arbitrator:  <u>Arthur Brotter</u>

Arbitrator:  <u>Richard L. White</u>

Umpire:  <u>Edmond F. Rondepierre</u>

Dated: 29 March 2006

4/3/2007

EXHIBIT A

In the Matter of the Arbitration Between

Global Reinsurance Corporation - U.S. Branch,

                Petitioner,

- and -

Argonaut Insurance Company,

                Respondent.

**AFFIDAVIT**

_____, being duly sworn, deposes and says:

1. I live at _____

2. I am employed as (position) by (name and address of employer), _____

3. I am aware that the Panel in the Matter of the Arbitration Between Global Reinsurance Corporation – U.S. Branch and Argonaut Insurance Company has entered a Confidentiality Order dated _____. I have received and read a copy of that Confidentiality Order.

4. I agree to review or otherwise use the material produced in the instant arbitration by _____ only under supervision of a party's counsel and only in connection with arbitration(s) between these parties.

5. I agree that I am bound by the terms of the Confidentiality Order as though I were a party to the arbitration, and I will not disclose or discuss material produced by _____ or _____ to or with any person other than those permitted access to such material under the Confidentiality Order.

(Signature) _____

Sworn to before me this \_\_\_\_\_ day of _____, 20\_\_\_.

                                                    _____

                                                        Notary Public (SEAL)

4/3/2007